Michael T. Stehle
LAW OFFICE OF MICHAEL STEHLE, P.C.
737 W. Fifth Ave., Suite 206
Anchorage, Alaska 99501
Phone: (907) 677-7877
Fax:    (907) 677-7894
Attorneys for Plaintiff AT Publishing, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| AT PUBLISHING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| A.B. DICK COMPANY and ) | |
| OFC CAPITAL, a division of ) | |
| ALFA FINANCIAL CORPORATION, ) | |
| ) | Case No. A04-0011 CV (JWS) |
| Defendants. ) | |
| _____) | |

**PLAINTIFF'S REPLY TO OFC'S OBJECTIONS TO PLAINTIFF'S EXHIBITS AND OBJECTIONS AND COUNTER DESIGNATIONS TO OFC'S COUNTER-DESIGNATIONS OF TESTIMONY**

Plaintiff responds to OFC's objections to the exhibits proffered by plaintiff as follows:

**Exhibits 1-5:** Pursuant to their agreed upon statement of issues, the parties agree that one of the central issues in this case is whether or not AT Publishing accepted or properly rejected the equipment at issue. The parties further agree that a lessee may reject tendered goods if they fail in any respect to conform to the lease contract, and will be

implied to accept goods only if:

(1) the lessee has had a reasonable opportunity, under the circumstances, to inspect the goods, and (2) either:

    (a) the lessee signifies or acts with respect to the goods in a manner that signifies to the lessor or supplier that the goods are conforming or that the lessee will take or retain them in spite of their nonconformity; or

    (b) the lessee fails to make an effective rejection of the goods.

Finally, the parties agree that a reasonable time to inspect under the UCC "must allow an opportunity to put the product to its intended use, or for testing to verify its capability to perform as intended." *Colonial Pacific Leasing Corp. v. J.W.C.J.R. Corp.,* 977 P.ed 541, 545 (1999).

    Thus, evidence which tends to show whether or not the equipment was conforming is relevant. Similarly, evidence which tends to show whether or not AT Publishing had a reasonable opportunity, *under the circumstances,* to inspect/test the equipment is relevant.

    Plaintiff's exhibits 1-5 are comprised of 2 examples of polyester plates produced by the equipment as well as examples of printed paper kept by AT Publishing from the operation of the equipment.[1]  OFC objects to these exhibits as not relevant and as not having been made available for inspection and copying. OFC is wrong on both counts.

    The exhibits are clearly relevant on the issue of whether or not the equipment was conforming. That is, whether or not it produced the quality product that it was represented

---

[1] Plaintiff's exhibits 6-8 are also examples of paper printed by the equipment.

PLAINTIFF'S REPLY TO OFC'S OBJECTIONS TO PLAINTIFF'S EXHIBITS AND
OBJECTIONS AND COUNTER DESIGNATIONS TO OFC'S COUNTER
DESIGNATIONS
Case No. A01-0011 CV (JWS)
Page 2 of 11

to produce. They are also relevant on the issue of AT Publishing's exercise of its right to inspect/test the equipment. Indeed, OFC has itself designated one of the polyester plates as an exhibit. See OFC's exhibit OO.

The exhibits were made available for inspection and copying in response to OFC's discovery requests. During the course of discovery numerous witnesses testified that the equipment did not produce a quality product and that AT Publishing has numerous boxes of waste that was produced by the equipment. Thus, in its second discovery requests, a copy of the relevant pages from which are attached as exhibit 1, OFC requested AT Publishing to "produce for inspection and copying any and all sheets of paper ATP kept from the operation of the 4995 press during the training Ray Seaward provided in March 2003." See Request for Production 6 in attached Exhibit 1. Plaintiff responded: "Responsive documents are available for inspection and copying at the offices of AT Publishing upon reasonable notice to Michael A. Grisham, Dorsey & Whitney, LLP. 1031 W. 4th Ave., Suite 600 Anchorage, Alaska 99501." The responsive documents comprised thousands of sheets of oversized printed paper. OFC never contacted Mr. Grisham to arrange a time to inspect the documents. But the documents were made available to OFC.

OFC disingenuously attempts to mislead the Court by ignoring this specific request and response, and instead misdirects the Court to a request that sought different information. One of the issues that arose during discovery was whether or not ATP had been able to *sell* any of the product produced by the press as "complete printing jobs" to ATP's customers. Thus, the request referenced by OFC sought "receipts, invoices or other

PLAINTIFF'S REPLY TO OFC'S OBJECTIONS TO PLAINTIFF'S EXHIBITS AND
OBJECTIONS AND COUNTER DESIGNATIONS TO OFC'S COUNTER
DESIGNATIONS
Case No. A01-0011 CV (JWS)
Page 3 of 11

documents *authorizing or otherwise relating to printing jobs . . . "* While ATP properly responded to this request as well, it is not the request which sought waste. Rather, Request for Production 6 referenced above was directed to the issue of waste produced by the press and ATP properly made the responsive documents available to OFC.

**Exhibits 11-25, 36-41:** In 2001 ATP was seeking a new press to try to capture a particular niche market that was growing in the Anchorage printing business; short run, process color work. "Process color" refers to photographic quality color printing. Short run refers to quantities of around 5,000 or less. To capture this market ATP needed a press that could produce short run process color on an economical basis with quick set-up and fast turn around time. ATP had presses capable of doing large run process color but those presses were not capable of quickly and efficiently changing from one job to the next, as is required to economically do short run work. On A.B. Dick's recommendation, ATP initially acquired the Indigo press, leasing the press from A.B Dick Capital. The press did not perform as expected or represented. After six or seven months of trying to get the Indigo press to work as represented, representatives from ATP and A.B. Dick met in Anchorage to again discuss ATP's existing presses, its need for a press to capture the short run process color market, and the problems with the Indigo press. A.B. Dick represented that its more expensive 4995 press would meet the needs expressed by ATP. A.B. Dick agreed to take back the Indigo press, sell it and credit ATP, and roll any balance on the Indigo press into the financing for the 4995 press. Because financing the 4995 press was going to include a roll over from the Indigo press, A.B. Dick suggested that ATP use OFC

Capital, a company with which A.B. Dick had a close relationship, to finance the 4995 press.[1]  ATP had never used nor heard of OFC Capital.  Thus, the financing arrangements with OFC expressly included a roll over from the Indigo press, and OFC's damage claim in this lawsuit includes that roll over from the Indigo press.

While plaintiff does not intend to belabor the point at trial, and may not use all of the exhibits identified by it concerning the Indigo press, evidence concerning the Indigo press is relevant both because it is expressly included in the financing arrangements with OFC, because it forms a part of the damages sought by OFC in this action, and because it sets the background or circumstances under which ATP would be inspecting or testing the 4995 press before accepting the same.  That is, because of the experience with the Indigo press, ATP was not going to accept the 4995 press as conforming without A.B. Dick demonstrating that it could perform as represented.  Under the law ATP had a right to inspect the press before accepting the same.  What that means varies from case to case, depending on the facts and circumstances of each particular situation.  The experience with the Indigo press directly informs what ATP would expect before accepting the 4995 press.

Moreover, OFC has itself identified both exhibits and testimony concerning the Indigo press.  Defendant's exhibits BB, RRR, and SSS all concern the Indigo press.  In addition, plaintiff's exhibits 15 and 24 were originally proffered by OFC as defendant's exhibits BB and DD, copies of which are attached as exhibits 2 and 3 respectively.  During

---

[1]  Unknown to ATP, A.B. Dick and OFC had recently entered into a contract whereby A.B. Dick gave OFC a right of first refusal on its lease finance transactions, in exchange for which OFC agreed to prefund the transactions.

the meeting of the parties to discuss the admissibility of exhibits, plaintiff and defendant agreed that those documents would be admitted. However, they noticed that defendant's copies were unsigned versions, not printed on A.B. Dick's letterhead, which OFC had obtained when one of its witnesses printed them off from a computer. Plaintiff's copies were copies of the original signed letters in ATP's files. (And yes, they had been produced in discovery, as referenced by the bates stamp numbers). Accordingly, OFC agreed to withdraw its exhibits BB and DD and agreed that plaintiff's exhibits 15 and 24 would be admitted.[1] Thus, plaintiff's exhibit list identifies that those documents have already been admitted based upon agreement of the parties. Plaintiff is bewildered by OFC's present argument; is it backtracking on its previous agreement or is it making an oversight? In any event, evidence concerning the Indigo press is relevant and should be admitted.

**Exhibits 6-10, 47-58, 74-81:** In analyzing the evidentiary and other issues presented by this case it is important to remember that as lessor, OFC had an obligation to tender conforming goods to ATP, the lessee. In actuality, however, OFC did not tender any goods at all. Rather, its agent/vendor, A.B. Dick, tendered, installed, demonstrated and tested those goods. But the issue of whether or not the goods were conforming is still an issue that is relevant to the claims between ATP and OFC.

While it was OFC's obligation to deliver conforming goods, OFC is not in the

---

[1] OFC then remarked and renumbered its exhibits to eliminate the blank spaces created by withdrawing its exhibits. Plaintiff notes, however, that the copy of exhibits served on plaintiff is the old version. That is, defendant's exhibit BB is still the 1/25/02 letter concerning the Indigo press and not the 2/28/02 memo concerning the Indigo press as represented by OFC's revised list. In the version of OFC's exhibits served on plaintiff, the 2/28/02 memo concerning the Indigo press, which is identified on OFC's list as BB, is still marked CC. Plaintiff does not know what OFC has served on the Court. Plaintiff requests, however, that

printing business and, frankly, it has no ability to itself tender conforming goods, and no foundation to know if in fact goods delivered by its agent/vendor are conforming. Rather, in all respects, it relied on its agent/vendor. It's agent, A.B. Dick, delivered the goods. OFC delivered nothing and was not present for the delivery. Its agent installed the goods. OFC installed nothing and was not present for the installation. And its agent attempted to get the goods to work properly. Again, OFC did nothing. But the fact that OFC did not itself tender any goods but, rather, tendered through its agent A.B. Dick, does not mean that evidence of that tender is not relevant or admissible. Similarly, the fact that OFC did not install any equipment, but again did so through its agent A.B. Dick, does not mean that evidence concerning the installation is not relevant or admissible. And so too, the fact that OFC did not itself test the goods, or attempt to cure any nonconformity in the goods, but did so through its agent, does not make that evidence any less relevant.

When ATP rejected the equipment as nonconforming, A.B. Dick wrote to express that either the goods were conforming or could be made to be conforming with additional testing or training. See plaintiff's exhibit 55. Under the UCC as adopted in both Georgia and Alaska, if a tender or delivery by the lessor or its agent/vendor is rejected because it is nonconforming and the time for performance has not yet expired, the lessor or the agent/vendor may seasonably notify the lessee of the lessor's or the agent/vendor's intention to cure and may then make a conforming delivery within the time provided in the lease contract. U.C.C. § 2A-513, O.C.G. § 11-2A-513. That is precisely what OFC's

---

OFC provide corrected copies of its exhibits reflecting the letters identified on its exhibit list.
PLAINTIFF'S REPLY TO OFC'S OBJECTIONS TO PLAINTIFF'S EXHIBITS AND
OBJECTIONS AND COUNTER DESIGNATIONS TO OFC'S COUNTER
DESIGNATIONS
Case No. A01-0011 CV (JWS)
Page 7 of 11

agent/vendor did in this case.  While ATP initially took the position that it was too late for A.B. Dick and OFC to attempt to cure, it eventually relented.  Thereafter, A.B. Dick and ATP, the two parties with knowledge of what the press was represented as capable of doing, agreed upon certain parameters or tests to demonstrate whether the press was or was not conforming.  See plaintiff's exhibit 50.  OFC was a recipient of every letter throughout all of the negotiations.  OFC does not object that the documents are not authentic, or on the basis of foundation, or on any other basis other than relevance.  Whether the press was or was not conforming is clearly at issue, and the evidence regarding the test of the press performed by A.B. Dick is squarely addressed to that issue.  The evidence objected to by OFC is relevant on both the issue of conformity as well as on the issue of cure and should be admitted.

      Finally, not all the exhibits identified by OFC in this objection even relate to the test or cure, and OFC has already agreed that some of them are admitted.  Exhibits 6-8 are copies of product produced by the press and, as previously articulated, are relevant on the issue of the press's conformity.  A copy of Exhibit 57 is attached to a letter from OFC's president, Mr. Leas, and has already been admitted.  Exhibit 58 does not relate to testing or cure and OFC had agreed that it was admitted during the meeting of the parties and is marked accordingly on plaintiff's exhibit list.  Similarly, Exhibit 81 does not relate to testing or cure.  Accordingly, OFC's objections regarding this exhibit are misplaced.  Since this exhibit is not related to testing or cure, and OFC has not articulated any particular objections regarding this exhibit, plaintiff's assumes it has no objections and that the

exhibit should be admitted.

## DEPOSITION DESIGNATIONS

With regard to OFC's counter designations of deposition testimony, plaintiff responds as follow:

OFC has not counter designated any testimony in response to plaintiff's designations other than for witness Tad Graham. Plaintiff assumes, therefore, that if plaintiff introduces the testimony it designated for other witnesses such as, for example, Ray Seaward, during its case in chief, that OFC is intending to wait until its case in chief to introduce any testimony that it has designated for such witnesses.

With regard to Mr. Graham, his deposition was not videotaped. Accordingly, plaintiff intends to have a reader sworn and plaintiff will read the questions designated by it, with answers to be read by the reader, which will then be followed by OFC reading the questions it has designated, to be followed by counter designations by plaintiff to be read as redirect. With that procedure in mind, plaintiff objects and counter designates redirect testimony as follows:

## OBJECTIONS

Page 12, line 12 – Page 12, line 25 – leading, vague and ambiguous, and relevance.
Page 13, line 9 – line 24 (plaintiff assumes OFC's designations contain a typographical error referring to page 24 as opposed to line 24 since its designations then go on to page 17, 19 etc.) – leading, relevance.
Page 19, line 3 – Page 20, line 10 – relevance, foundation.
Page 21, line 15 – Page 22, line 1 – leading, mischaracterizes previous testimony.
Page 22, line 3 – line 15 – foundation (If the Court does not sustain this objection, then under the rule of completeness found in Fed. R. Civ. P. 32(a)(4),[1] plaintiff requests

---

[1] Federal civil rule 32(a)(4) provides that "[i]f only part of a deposition is offered in evidence by a party, an

the Court to order that OFC must also offer page 22, line 16 – page 23, line 4 which ought in fairness be considered with the other part offered by OFC.  And in the event the Court does not sustain this request under the rule of completeness, plaintiff includes this portion in its counter designations on redirect).

       Page 23, line 5 – line 21 – relevance
       Page 25, line 2 – line 11 – relevance
       Page 26, line 25 – Page 28, line 1 and page 28, line 15 – page 29, line 21 – foundation, speculation, improper lay opinion and calls for a legal conclusion.  Also, relevance as to the other, two color press that is not at issue.
       Page 30, line 1 – line 9 – relevance
       Page 33, line 6 – Page 34, line, 13 – relevance

## COUNTER DESIGNATIONS FOR REDIRECT

Plaintiff designates the following as redirect:

Page 30, line 19 – Page 31, line 4
Page 31, line 8 – Page 32, line 2
Page 34, line 2

DATED this 11th day of May, 2007, at Anchorage, Alaska.

                                                    s/ Michael T. Stehle
                                                    Michael T. Stehle, ABA No. 9106054

---

adverse party may require the offeror to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts." The second clause of this rule – allowing other parties to themselves offer other parts of the deposition, describes and proscribes the procedure discussed in the beginning of this section where plaintiff offers part of the testimony as direct, to be followed by designations offered by OFC as cross examination etc.  The first clause of the rule, often referred to as the rule of completeness, allows a party to require the other party to include a portion of the deposition at the time of and in the context of offering another part because they must "in fairness" be considered together.

PLAINTIFF'S REPLY TO OFC'S OBJECTIONS TO PLAINTIFF'S EXHIBITS AND OBJECTIONS AND COUNTER DESIGNATIONS TO OFC'S COUNTER DESIGNATIONS
Case No. A01-0011 CV (JWS)
Page 10 of 11

**Certificate of Service**

I hereby certify that on May 11, 2007
a true and correct copy of the foregoing was
electronically mailed to the following:

Patrick Gilmore
acgef@acglaw.com, pbg@acglaw.com, dap@acglaw.com.

Marion Walker
mfwalker@fordharrison.com, mwilkens@fordharrison.com, dbivins@fordharrison.com.

Randy Weddle
rweddle@hwb-law.com,    bfontaine@hwb-law.com,    jekstrand@hwb-law.com,
kwarne@hwb-law.com.

s/ Michael T. Stehle
Michael T. Stehle