Randall J. Weddle, Esq.
HOLMES WEDDLE & BARCOTT, PC
701 W. 8th Avenue, Suite 700
Anchorage, Alaska 99501
Phone: (907)274-0666
Fax: (907)277-4657

Marion F. Walker
FORD & HARRISON LLP
2100 Third Avenue North, Suite 400
Birmingham, Alabama  35203
Phone:      (205) 244-5916
Fax:         (205) 244-5901

Attorney for Defendant OFC Capital, a division of ALFA Financial Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| AT PUBLISHING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:04-cv-0011-JWS |
| | ) | |
| A.B. DICK COMPANY and OFC | ) | |
| CAPITAL, a division of ALFA | ) | |
| FINANCIAL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

OFC CAPITAL'S RESPONSE TO AT PUBLISHING
OBJECTIONS TO OFC TRIAL EXHIBITS

NOW COMES OFC CAPITAL, by and through its attorneys, and for response to AT Publishing's objections to exhibits proffered by OFC Capital, the latter says as follows:

### RESPONSES CONCERNING EXHIBITS

**EXHIBIT O**: This exhibit will be proved up by the testimony of Carolyn McClain.

**EXHIBIT S**: The diagram of finance lease transaction is a demonstrative exhibit that will be described in testimony by Chip Leas.

**EXHIBIT Y**: The calculation of damages due OFC Capital was provided to AT Publishing prior to its being an exhibit, as required by the rules, and will be testified to by Chip Leas at trial. The calculation follows the provision concerning default in the Master Lease Agreement.

**EXHIBIT Z**: This is the notice of taking the deposition of Burt Green and was listed to show Mr. Green showed up at the deposition pursuant to a notice in which he was asked to provide documents. The notice was provided to AT Publishing's counsel at the time it was sent to Mr. Green. Because OFC Capital is going to offer Mr. Green's testimony and documents he produced at trial, the notice is relevant.

**EXHIBIT CC**: The hand-drawn diagram by Burt Green, which is Exhibit 6 to his deposition, is relevant to demonstrate the space in which AT Publishing located the DPM2340 Scan Master that Mr. Green trained AT Publishing employees on. The diagram is further relevant in order to show the distance between the area in which Mr. Green trained and the area the employees continued to return to during the training in comparing the system they had with the new one Mr. Green was training on. The exhibit is not hearsay because it was drawn during the deposition of Mr. Green and shows an area of the plant owned and operated by AT Publishing and subjected to cross-examination by AT Publishing.

**EXHIBIT EE**: Because AT Publishing has accepted the admission of Exhibit M, Exhibit EE is withdrawn.

**EXHIBIT FF**:     The notice of taking the video deposition of Ray Seaward is relevant to the fact that he responded to a notice of taking deposition and that adequate notice was given to AT Publishing. The exhibit is not hearsay because it was provided to AT Publishing at the time and is not an out-of-court statement except in terms of procedural notice.

**EXHIBIT GG**:     The letter of Ray Seaward regarding the summary of experience he had in the printing industry was testified to by Mr. Seaward directly and subjected to cross-examination by AT Publishing in his deposition. It is relevant to show the background Mr. Seaward had in the printing industry because his qualifications to train at AT Publishing on the 4995A press have been called into question by AT Publishing, and also to demonstrate to the jury that Mr. Seaward was more than competent to provide the training A.B. Dick had promised.

**EHXIBIT JJ**:     Seaward testified to this exhibit that he created at page 28, line 4 – line 14. The diagram reflecting how jobs are sent to the DPM which was created by and testified to by Ray Seaward is relevant to explain the process of how a plate was made for the 4995A press. Mr. Seaward complained he consistently had problems getting plates that were appropriate to be printed because of the AT Publishing employees' failure to prepare a plate properly. The exhibit will help the jury understand the operation of the DPM2340, to the extent a discussion of the training offered by Mr. Seaward is at issue.

**EXHIBIT MM**:    This diagram was testified to by Ray Seaward and is directly related to complaints AT Publishing has made about the press and how plates fit on the press. Mr. Seaward's testimony was subjected to cross-examination by AT Publishing and he fully explained what the diagram is and shows, and that it was provided to AT Publishing employees.

**EXHIBIT NN**:    This exhibit is a document that was actually printed at AT Publishing on the 4995A press and Mr. Seaward simply picked it up there and wrapped the plate known as Exhibit OO around it. Thus, this document is not hearsay to AT Publishing, and a proper foundation was laid by Mr. Seaward and subjected to cross-examination. This document also shows that there was in fact commercial printing of jobs

while Mr. Seaward was at the first training at AT Publishing and is relevant to AT Publishing's ability to see how the 4995A press operated.

**EXHIBIT OO**:   Mr. Seaward testified about this exhibit and in fact presented it in response to the notice of deposition which requested he bring any documents relevant to his training at AT Publishing.  The exhibit itself came from AT Publishing so it certainly is not hearsay, and it is relevant to show and frankly demonstrate the problems Mr. Seaward was having during the first training and second training in 2003 at AT Publishing where he was unable to get a plate that could be printed commercially.  Mr. Seaward testified about this exhibit and AT Publishing was allowed to cross-examine.

**EXHIBIT PP**:   This document was one printed by the 4995A press when Mr. Seaward was providing training at AT Publishing and is a book cover that was used commercially by AT Publishing, according to Mr. Seaward.  Mr. Seaward's testimony was subjected to cross-examination by AT Publishing and Mr. Seaward had this document in his control from the time he picked it up, after it was printed by the 4995A press at AT Publishing in March 2003.

**EXHIBIT RR**:   This document contains an email from Greg Martone to A.B. Dick and an email stream that followed to different A.B. Dick employees discussing the causes of problems with AT Publishing and the operation of the press and plans to address complaints of Greg Martone. These emails were kept in the ordinary course of business by Ray Seaward and produced in response to the notice of deposition OFC Capital delivered to Mr. Seaward ahead of the deposition.  He had maintained custody of these emails from the time they were created and produced them when requested. OFC Capital did not know of these emails until they were produced by Mr. Seaward.  The emails were admitted as an exhibit in the form in which they were produced, however, to respond to AT Publishing's objection, OFC Capital is willing to alter the exhibits so that the only email on the exhibit is the April 11, 2003 email from Greg Martone to A.B. Dick regarding the operation of the 4995A press, so long as AT Publishing is willing to drop, and not mention any complaint that A.B. Dick did not do anything about Greg Martone's complaint.  Greg Martone's email is an exception to the hearsay rule and is an admission against interest, where Mr. Martone acknowledges that AT Publishing had a lease with OFC Capital.

**EXHIBIT SS**:     This email from Ray Seaward to Glenn Ashcraft is a synopsis of events that occurred at AT Publishing on the two visits in March and April, 2003, that Mr. Seaward made to provide training for AT Publishing on the 4995A press.  Mr. Seaward said in his deposition that the email fairly well set out what occurred there at AT Publishing, refreshed his recollection and was written August 21, 2003, the date the email shows. This document falls within an exception to hearsay in the form of past recollection recorded and Mr. Seaward testified it is correct.

**EXHIBIT UU**:     This notice of the taking of the video deposition of Glenn Ashcraft is included to show that Mr. Ashcraft responded to a notice for his deposition and brought documents that were requested and that AT Publishing was given timely notice as well.  This exhibit is simply a document showing procedural notice.

**EXHIBIT VV**:     This April 15, 2003 email between a senior officer and the President of A.B. Dick regarding a conference they had with Frank Martone was produced by Mr. Ashcraft and he testified it was kept in the ordinary course of business so it is within an exception to the hearsay rule. Mr. Ashcraft laid a foundation in his deposition for admission of this exhibit and was subjected to cross-examination.  This email shows A.B. Dick's follow-up to Greg Martone's complaint four days before.  OFC Capital maintains the exhibit is not relevant, only so long as any other facts following the March 24, 2003 date of acceptance are not relevant.  However, this email, along with that of Greg Martone which appears below it on the same sheet, reflects what Seaward has testified to and reflects what Seaward testified he observed while training at AT Publishing.  If the entire Exhibit RR is kept in evidence, this email is not necessary.  However, if other emails such as Exhibits WW, XX and YY are kept, these emails, which were kept in the ordinary course of business, along with Exhibit RR, are necessary to show context.

**EXHIBIT YY**:     This April 23, 2003 email from the National Service Manager of A.B. Dick, Randy Garrett, was kept in the ordinary course of business and produced by Mr. Ashcraft and subjected to cross-examination.  It is a memorandum made at the time of his conversations with Frank Martone, President of AT Publishing, and is directly related to the 4995A press, the training provided by A.B. Dick, "service issues" of AT

Publishing, and the plans Mr. Martone had regarding further operation of the press.

**EXHIBIT BBB**:   This is an email from one A.B. Dick employee to Glenn Ashcraft and testified to by Glenn Ashcraft that it was kept in the ordinary course of business.  The email reflects another customer's satisfaction with the 4995A press.  The document is relevant in light of the admission of Exhibit WW, to which AT Publishing agreed, which concerns a competitive sales rep in Colorado and contact made there by Greg Martone.  Exhibit BBB is relevant for context of that exhibit as well as efforts of Greg Martone to contact other 4995A users in order to discover their experience with the 4955A press.

**EXHIBIT CCC**:   This notice of the taking of a video deposition of Ben Taylor is offered to show that notice was given and he was requested to bring any and all documents he had relevant to the dispute between OFC Capital and AT Publishing.  The notice also reflects it was served upon AT Publishing at the time it was served upon Mr. Taylor.  It is offered merely for the procedural notice that it gives and so the jury can see Mr. Taylor responded to the notice to give the deposition.

**EXHIBIT NNN**:   This May 20, 2003 invoice from A.B. Dick to AT Publishing for DPM2340 supplies is relevant to show AT Publishing was using the DPM2340 even though it had refused to pay for it, or reject it.

**EXHIBIT OOO**:   This May 21, 2003 invoice from A.B. Dick to AT Publishing for DPM2340 supplies is relevant to show AT Publishing was using the DPM2340 but refused to pay for it.  This document, along with Exhibit NNN, are relevant to show AT Publishing was acting consistent with the acceptance OFC Capital claims.

**EXHIBIT QQQ**:   This A.B. Dick sales order signed by Frank Martone is a two-page document provided by AT Publishing bearing bates numbers AT0488-0489.  The production of the document by AT Publishing is sufficient foundation for its admission.

**EXHIBIT SSS**:    This May 7, 2002 letter to Edna Martone was produced by AT Publishing with bates number AT0094 so Ms. Martone presumptively received the letter and read it.  The letter is not hearsay to AT

Publishing. It is relevant to show that Ms. Martone and AT Publishing knew as early as May 7, 2002 that under a finance lease, the failure of the equipment to work does not eliminate the obligation to pay by the terms of the finance lease. Ms. Martone is the treasurer of AT Publishing and married to Frank Martone. The production of this document by AT Publishing is sufficient evidentiary foundation.

**EXHIBIT TTT**:    The composite invoices of Lee Whitten for work he performed on behalf of A.B. Dick for AT Publishing between March 13, 2003 and September 29, 2004 are only relevant up until the date of final acceptance which OFC Capital maintains is March 24, 2003 and relevant in that time to reflect the work performed by Mr. Whitten for service during the training by Ray Seaward and others. These invoices are relevant to dispute testimony offered by a number of Martone family members about service calls on the 4995A press prior to the March 24, 2003 final acceptance. After the March 24, 2003 final acceptance, the invoices are relevant to show AT Publishing's continuing use of the press and DPM2340 and request for service from Mr. Whitten consistent with AT Publishing's operation of the equipment, but continuing refusal to pay under the lease.

## RESPONSE TO DEPOSITION DESIGNATIONS

### Exhibit UUU – Deposition of Ray Seaward

Page 8, line 19 – page 9, line 3 – Testimony regarding Exhibit FF – Notice of Taking Video Deposition of Ray Seaward addressed above.

Page 10, line 3 – line 24 – Testimony of Seaward covering Exhibit GG regarding his experience and how he came to A.B. Dick discussed above.

Page 11, line 23 – line 25 – This testimony that Seaward did not know anybody at OFC Capital is relevant because AT Publishing continues to try to show some link between OFC Capital and A.B. Dick. The testimony eliminates any claim of bias by Seaward in favor of OFC Capital.

Page 15, line 2 – page 17, line 8 – This is testimony of Seaward that involves conversations he had with Frank Martone as to who was to train on the four color press and giving Frank Martone notice as to when Mr.

Seaward would be arriving for the training. This testimony is relevant, just as the testimony regarding the training is relevant, to the issue of acceptance and whether there was sufficient time within which to review the operation of the machine.

Page 17, line 9 – line 11 – This testimony of Seaward merely is what Frank Martone said or did not say and is relevant as a follow-up to previous testimony by Frank Martone that it was inconvenient for Seaward to be at AT Publishing.

Page 18, line 19 – line 24 – This testimony is identification of Exhibit N by Seaward which AT Publishing agreed is admissible.

Page 28, line 4 – line 14 – This is testimony for Exhibit JJ which is a diagram reflecting how jobs are sent to the DPM and was produced by Mr. Seaward in response to his notice of deposition and Seaward said that he prepared the document. AT Publishing had the opportunity to cross-examine on this document which relates directly to equipment purchased.

Page 38, line 18 – line 18 – This communication between Lee Whitten, after he inspected the DPM2340, and Seaward where he said that the problem was only operator error, is admissible under Rule 804(b)(1) covering former testimony as an exception to the hearsay rule.

Page 45, line 4 – line 5 – The question about Greg Martone being trained on the 4995 press is not leading because it is based on previous testimony covered in the previous two pages.

Page 45, line 16 – Same response to objection to leading as immediately above.

Page 47, line 7 – line 15 – The question is straightforward and is not speculative.

Page 47, line 16 – line 20 – This question asks for the opinion of a lay witness pursuant to FRE 701 and, based upon Seaward's experience, is not speculative.

Page 88, line 2 – line 4 – This question is not leading because it follows the testimony of Green regarding the DPM.

OFC CAPITAL'S RESPONSE TO AT PUBLISHING OBJECTIONS TO
OFC TRIAL EXHIBITS
Case No. 3:04-cv-0011-JWS
Page 8 of 18

Page 103, line 9 – line 11 – The question is not speculative because Mr. Seaward actually printed the document referred to which is Exhibit PP. It is not leading because Mr. Seaward had already identified the document as a sheet from a specific AT Publishing job on page 101.

Page 104, line 3 – line 17 – The answer is describing Exhibit PP and is responsive to the question on lines 18 – 19: "Do you know who took the job from you once it was completed?"

Page 123, line 12 – page 124, line 10 – This testimony by Mr. Seaward is not hearsay because it is a description of what he observed by way of actions of some of the Martone family members with Clint Meyer, and a conversation he had with Clint, thereafter, who was an employee of AT Publishing.

Page 129, line 21 – page 130, line 18 – The lay opinion sought from Mr. Seaward here is admissible under FRE 701, both because he has a great deal of experience in training on color presses, was present to train AT Publishing employees on the 4995A press, and spent a week at AT Publishing trying to complete the training, all before the March 24, 2003 date that OFC Capital claims AT Publishing completed acceptance of the equipment. There is no legal conclusion whatever involved in this testimony because it is in essence factual. If it is not, the Court would have already addressed the issue.

OFC Capital does not have any objections to the counter-designations of Ray Seaward's deposition made by AT Publishing.

**Exhibit VVV – Glenn Ashcraft**

Page 18, line 8 – line 10 – The question is not leading because it is referring to a written document in front of the witness.

Page 18, line 11 – page 19, line 1 – The question solicited here had to do with the certificate of acceptance form used by A.B. Dick and Mr. Ashcraft's experience with that form.

Page 22, line 17 – line 22 – The question is not leading, nor speculative because it is testimony expressing A.B. Dick's expectation for a customer to provide an experienced pressman for training.

Page 23, line 17 – page 24, line 2 – The question of whether there was sufficient time for AT Publishing to inspect the equipment after the execution of the March 6 and 7 installation certificates and training by Seaward, is not asking for a legal conclusion, but is factual and based upon Mr. Ashcraft's experience in the business. It is admissible under FRE 701.

Page 27, line 23 – page 28, line 1 – OFC Capital admits this question and answer should be deleted since the question erroneously referred to the DPM instead of the press.

Page 81, line 22 – line 24 – The question is not leading in light of the previous questions regarding the knowledge of a pressman and Mr. Ashcraft was in fact not led, but modified the answer consistent with his experience in the business.

### Counter-designations – Ashcraft

Page 42 – line 11 – Page 44, line 15 – Objections to page 44, lines 14-15, as inquiring into the character of Frank Martone as a businessman in an effort to shore up direct testimony as opposed to rehabilitate pursuant to any recognized rule of evidence. The question is also hearsay and is not covered by any exception and in fact is not covered by Rule 803(21) because it fails to show the prerequisite extensive knowledge of Mr. Martone's reputation in the community as to his "character as a businessman."

Page 44, line 25 – page 45, line 6 – Objection to the solicitation by AT Publishing of Ashcraft's knowledge of the character of Frank Martone on the grounds stated above.

Page 47, line 12 – page 54, line 22 – Object to page 47, line 12-13, as referring to question on character by witness who is not competent to testify to it as a valid exception to the hearsay rule under Rule 803(21) and object to the remainder of the designation because it deals with sales literature and representations by A.B. Dick regarding equipment which is hearsay to OFC Capital and not relevant to the issues in the lawsuit brought by AT

Publishing against OFC Capital.  **If this sales literature and representation type evidence is allowed, OFC Capital would add to Mr. Ashcraft's testimony pages 54, line 23 – 55, line 1, and page 55, line 7 – 9.**

Page 55, line 10 – page 57, line 5 – This testimony quoting, and also soliciting representations that A.B. Dick made or might make in sales cases, is hearsay as to OFC Capital and not relevant to the claims in this case.

Page 57, line 16 – page 62, line 4 – This testimony about the relationship between OFC Capital and A.B. Dick is all right with OFC Capital so long as the following is added to make it complete:  **Page 62, line 5 – page 63, line 8.**

Page 66, line 21 – page 67, line 10 – This designation is okay with OFC Capital.

Page 70, line 5 – page 71, line 21 – Objection to this testimony regarding a letter from Ben Taylor to Frank Martone because Mr. Ashcraft testifies he did not get involved with the 4995 press and did not know anything about the letter at page 71, line 5-7.

Page 78, line 16 – Okay.

**Exhibit WWW – Green**

Page 45, line 1 – line 16 – The testimony is not leading because it makes reference to previous testimony the witness gave, i.e., "They were just nuts that they couldn't edit . . ." and this testimony all involved the loss of training time.  The testimony was not mischaracterizing previous testimony, but characterized it; AT Publishing had the opportunity to cross-examine.

Page 117, line 13 – line 16 – If all references to "test" and "cure" are stricken, OFC has no objection to taking out this testimony, otherwise, the testimony is descriptive of what Mr. Green saw while at AT Publishing.

Page 118, line 11 – line 21 – This is testimony solicited of a lay witness with experience in the subject of the opinion pursuant to FRE 701.

However, if all references to "test" or "cure" after April, 2003, are stricken, there is no objection by OFC to dropping this testimony.

Page 118, line 23 – Page 120, line 6 – Okay to drop this testimony if all references to "test" or "cure" after April, 2003, are stricken and, if not, this testimony is a lay witness opinion properly solicited under FRE 701.

### Counter-designations – Green

Page 89, line 2 - page 90, line 21 – This testimony is okay if the following is added: **Page 90, line 21 – page 100, line 8.** Otherwise, the testimony is incomplete and unfairly prejudicial as providing only part of the testimony.

Page 95, line 6 – line 20 – Okay if following is added: **Page 90, line 21 – Page 100, line 8**, otherwise, the testimony is incomplete and unfairly prejudicial to OFC Capital.

Page 102, line 22 – page 103, page 9 – This testimony as to the number of presses installed by Green is not relevant but, if it is allowed, OFC contends the following should be added: **Page 103, line 10 – page 105, line 12**, to make a complete picture of the testimony. Otherwise, it will be unfairly prejudicial to OFC Capital.

Page 103, line 23 – page 105, line 4 – Okay.

Page 117, line 3 – line 4. Okay.

### **Exhibit XXX – Taylor**

Page 15, line 7- page 16, line 15 – The question asked what the witness observed in the meeting with the Martone family members and the answer relates those observations. OFC Capital is willing to withdraw the entire designation of testimony if all testimony regarding representations by Ben Taylor or other A.B. Dick employees about the operation of the press are also stricken or otherwise withdrawn. Otherwise, the question and answer contained in this designation represent request for and testimony about observations in a meeting; this is not speculation.

Page 18, line 24 – page 22, line 15 – This testimony is relevant in that it covers the A.B. Dick employees who AT Publishing had the numbers for and could call for help with the equipment and Taylor testified to the number of DPMs and 4995 presses he had sold.  OFC Capital is willing to withdraw this designation of testimony if all references to representations by A.B. Dick to AT Publishing regarding the press and DPM are stricken or otherwise withdrawn.  The testimony does show accessibility AT Publishing had to a number of A.B. Dick employees who could be helpful with operation of the equipment.

Page 19, line 14 – line 16 – The question is not leading because it is part and parcel of the previous question and answer set having to do with the availability of A.B. Dick employees to help with the operation of the equipment by telephone consult.  The question is not speculative, nor is the answer, because it is a matter within the purview of Mr. Taylor's experience of service that is provided for customers to whom he sells equipment.

Page 25, line 6 – line 13 – The testimony is certainly not argumentative as the questions were designed to clarify the nature of certain equipment previously testified to as being sent to AT Publishing; the relevance is that Taylor is testifying there was equipment for which AT Publishing did not pay that was covered by the lease from OFC Capital in addition to the $63,000 buyout of the previous lease.

Page 29, line 14 – page 30, line 18 – Taylor specifically testified he had appropriate knowledge to answer the question as to how it would be more effective to train a person on the four color press who already had experience on the two color press.  There is no speculation where Mr. Taylor testified he had appropriate knowledge to answer the question.

Page 30, line 19 – page 31, line 3 – The question is not leading because the question was only "tell us, please."  The answer is not speculative because Taylor testified he had sufficient knowledge to provide the answer and it is relevant because it demonstrates AT Publishing elected to have a person with inferior experience and knowledge about the workings of presses to the operator of the two color press, trained on the 4995A by Ray Seaward.

OFC CAPITAL'S RESPONSE TO AT PUBLISHING OBJECTIONS TO
OFC TRIAL EXHIBITS
Case No. 3:04-cv-0011-JWS
Page 13 of 18

Page 31, line 4 – page 32, line 16 – This testimony covers Exhibit JJJ which AT Publishing has agreed to and is the warranty on the DPM2340 which was given to AT Publishing by OFC Capital in the master lease.

Page 38, line 17 – page 40, line 23 – Page 38, line 17 – 23, is relevant to the customary practice between A.B. Dick and OFC as to how a customer's contact with OFC would be initiated through Glenn Ashcraft. The remainder of the deposition designation can be dropped as irrelevant, but the testimony on Page 38 is relevant so long as AT Publishing intends to demonstrate any relationship at all between OFC and A.B. Dick.

Page 42, line 9 – line 19 – This testimony is not calling for a legal conclusion but a factual conclusion and that is Taylor's testimony about the installation certifications that A.B. Dick relies upon and details what is factually represented by having the certificate signed; the questions were not leading because they did not unfairly suggest an answer but were clarifying of previous testimony.

Page 43, line 21 – page 44, line 11 – There is no speculation because Taylor is testifying about what he knows and about how OFC's underwriting works, which he knows because he remains interested in his customers having access to appropriate financing so they can buy equipment he is selling; there is no assumption of facts not in evidence because of his prior knowledge of this process and he was able to testify as to what the documents were used for and he was subjected to cross examination.

Page 45, line 6 – line 9 – Taylor is still explaining the installation certificate, Martone's signature and factually what the executed certificate represents. The form after all is an A.B. Dick form and Taylor was subject to cross-examination.

Page 46, line 22 – page 47, line 12 – The answer was definitely responsive because it gave an answer by way of example, particularly the example of Ray Seaward calling from AT Publishing and reporting as a matter of course to Taylor; the testimony is admissible under hearsay exceptions 803(24) and 803(1) (present sense impression).

Page 47, line 15 – page 48, line 7 – The testimony by Taylor about his interaction with Seaward in connection with training of Taylor's customers

is relevant because of the remarkable experience Seaward had at AT Publishing and a reiteration of Taylor's confidence in Seaward's abilities.

Page 49, line 21 – page 50, line 3 – The question as to whether Taylor got any call from any Martone or representative of AT Publishing saying they did not want the equipment was not leading since it was consistent with previous testimony, but clarifying. (See lines 8 – 14).

Page 51, line 25 – page 52, line 3 – The question is not leading because it refers to previous testimony regarding the letter Taylor sent to Martone which is not speculative because it asks Taylor essentially to confirm that the letter sets out what was discussed in the conversation.

Page 53, line 8 – line 25 – This question about the letter Taylor sent to Martone merely clarifies his testimony that he told Martone in the telephone conversation Carolyn McClain would be calling from OFC to sign off on the press. It is not speculation because it is based on his telephone conversation with Frank Martone and includes a present sense impression in that conversation. (FRE 803(1)).

Page 57, line 23 – page 58, line 1 – The question actually asks Taylor if he heard any purported "hearsay" and he denied that he had. The question is certainly exempt from a hearsay claim in that the witness is not available and we are dealing with former testimony in which AT Publishing had the right of cross-examination.

Page 63, line 1 – line 16 – The opinion of Taylor regarding the sufficiency of time for AT Publishing to evaluate and inspect the machine is not improper under FRE 701 because he makes very clear he is giving his opinion as a salesman and the opinion is based on facts and not law.

Page 63, line 21 – page 64, line 5 – OFC Capital will withdraw this testimony.

Page 65, line 20 – page 66, line 8 – OFC Capital will withdraw this testimony.

Page 66, line 13 – line 19 – OFC Capital will withdraw this testimony.

OFC CAPITAL'S RESPONSE TO AT PUBLISHING OBJECTIONS TO
OFC TRIAL EXHIBITS
Case No. 3:04-cv-0011-JWS
Page 15 of 18

Page 67, line 8 – line 9 – This question and answer is specifically whether Frank Martone had ever told Taylor he did not want the press and is not leading, but follows the previous question and is clarifying.

Page 69, line 7 – line 17 – The opinion of Mr. Taylor based on the type of equipment in the market is certainly covered by FRE 701 – Lay Opinion. Foundation is laid by his testimony about his experience and deals with representations he made and discussions he had with the Martones ahead of their decision to purchase the equipment he sold them. To the extent that OFC Capital's objection to said representations and to matters that are hearsay to OFC Capital are upheld, this testimony will be withdrawn.

### Counter-designations – Taylor

Page 70, line 22 – page 73, line 13 – Okay.

Page 74, line 21 – page 75, line 1 – Okay.

Page 75, line 8 – page 76, line 12 – OFC Capital objects to this testimony about the Indigo Press particularly where Taylor denies as he does here any involvement with the buyout of the Indigo Press.

Page 78, line 5 – page 80, line 11 – OFC Capital objects to this testimony and the exhibit discussing features of the 4995 press entitled "Productivity" because it involves hearsay representations and other issues to which OFC was not a party and amounts to hearsay without any exception and would result in substantial harm and unfair advantage toward OFC.

Page 81, line 23 – page 83, line 2 – Okay.

Page 84, line 22 – page 86, line 15 – OFC Capital objects to these discussions Taylor had with AT Publishing about any market match which is irrelevant and immaterial to any legitimate issue in this case and are representations that are hearsay as to OFC Capital without any exception.

Page 89, line 5 – page 89, line 22 – Okay.

Page 90, line 16 – page 92, line 5 – OFC objects only to page 19, line 5 – 7, which is the solicitation of character evidence which lacks the

appropriate foundation required under FRE 803(21). Moreover, character evidence is not admissible to prove conduct in conformity therewith as AT Publishing attempts to do in this instance.

 Page 95, line 23 – page 96, line 5 – Okay.

 Page 103, line 2 – page 104, line 8 – Okay.

 Page 113, line 22 – page 116, line 3 – Okay.

 Page 122, line 23 – page 127, line 16 – OFC objects to this testimony regarding the capabilities of the press and what the press could reasonably do because it is irrelevant and immaterial to the legitimate issues of acceptance and sufficient time to inspect in this case and are hearsay without exception as to OFC Capital.

 Page 128, line 13 – Okay.

**Exhibit YYY – Roberts**

 Page 8, line 10 – line 24 – The question as to 'Mr. Roberts' experience with customers' refusal to pay, like Frank Martone claiming the equipment did not work, were rare in Mr. Roberts' experience,' is relevant where he was asked repeatedly by AT Publishing about training policies and terms of collection work performed by OFC Capital.

 Page 10, line 22 – page 20, line 25 – OFC Capital is willing to drop page 15, line 14 – page 17, line 8, but otherwise the testimony included in this designation describes what Craig Roberts did for OFC Capital and this will be covered by Chip Leas at trial.

 Page 22, line 17 – page 24, line 7 – Okay.

           s/ Marion F. Walker
           Marion F. Walker
           Attorney for Defendant OFC Capital

OF COUNSEL:
FORD & HARRISON LLP

OFC TRIAL EXHIBITS
Case No. 3:04-cv-0011-JWS
Page 17 of 18

                          Randall J. Weddle
                          Alaska Bar No. 7206034
                          Attorney for OFC Capital

OF COUNSEL:
HOLMES, WEDDLE & BARCOTT, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that, on the 14th day of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Michael T. Stehle
    Law Office of Michael Stehle, PC
    737 West 5th Ave., Suite 206
    Anchorage, Alaska 99501

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

    Not Applicable.

                          s/ Marion F. Walker
                              Of Counsel

Birmingham:16327.1