Michael T. Stehle
LAW OFFICE OF MICHAEL STEHLE, P.C.
737 W. Fifth Ave., Suite 206
Anchorage, Alaska 99501
Phone:  (907) 677-7877
Fax:     (907) 677-7894
Attorneys for Plaintiff AT Publishing, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| AT PUBLISHING, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>A.B. DICK COMPANY and )<br>OFC CAPITAL, a division of )<br>ALFA FINANCIAL CORPORATION, )<br>) Case No. A04-0011 CV (JWS)<br>Defendants. )<br>_____) | |

**PLAINTIFF'S RESPONSE TO OFC'S SUR-REPLY TO PLAINTIFF'S REPLY REGARDING PLAINTIFF'S EXHIBITS**

Plaintiff filed its exhibits, to which OFC filed objections, to which plaintiff filed a reply, all as called for in the Court's pre-trial order.  OFC then filed sur-reply, which is not called for in the pre-trial order, which OFC confusingly denominated OFC CAPITAL'S REPLY TO AT PUBLISHING REPLY TO OFC CAPITAL'S OBJECTIONS AND COUNTER-DESIGNATIONS TO OFC'S COUNTER-DESIGNATIONS OF TESTIMONY.  Because this document is not permitted by the pre-trial order it should be stricken.  While plaintiff is inclined to ignore this superfluous pleading, it feels compelled

to respond to new objections and arguments raised for the first time by OFC therein.

AT Publishing again notes that OFC appears to believe that evidence that contradicts its position is not relevant. For instance, it continuously argues that evidence proffered by plaintiff which shows that the press was not conforming is not relevant to any issue being litigated between plaintiff and OFC. It argues that such evidence would only be relevant on claims litigated with A.B. Dick. This is false.

Despite the fact that A.B. Dick is no longer an active participant in this litigation, it is still an integral player in the factual and legal relationship between OFC and AT Publishing. And OFC knows this; the vast majority of the witnesses it is calling at trial are A.B. Dick employees. And the factual issue it hopes to establish with those witnesses is that the equipment worked fine; i.e., that the equipment was conforming.

One of the central issues in this case is whether AT Publishing accepted or rejected the equipment. It is undisputed that in early June 2003 Mike Mills, representing AT Publishing, wrote a letter expressly notifying A.B. Dick and OFC that AT Publishing had rejected the equipment. Under the applicable law, a lessee may reject tendered goods if they fail in any respect *to conform* to the lease contract. U.C.C § 2A-509. In that case AT Publishing, the putative lessee, owes nothing to OFC, the putative lessor, because the lease does not commence. Thus, acceptance or rejection is a factual issue, and rejection is premised upon the fact that the goods were not conforming.

OFC wants to ignore the above and start from the premise that AT Publishing accepted the equipment. It essentially wants to assume that it won its summary judgment motion. It again argues, as it did on summary judgment, that the lease required AT

PLAINTIFF'S RESPONSE TO OFC'S SUR-REPLY
Case No. A01-0011 CV (JWS)
Page 2 of 8

Publishing to reject the equipment within 10 days of delivery. But as noted by the Court in denying OFC's motion for summary judgment, OFC had not even signed the lease within 10 days of delivery. No training had taken place. A.B. Dick had not yet sent operators to show how the equipment worked, and AT Publishing had not yet had an opportunity to test the equipment. Acceptance or rejection is one of the central issues in the case to be decided by the jury. And rejection is premised upon the fact that the goods were not conforming.

Thus, whether the goods were or were not conforming is relevant. Indeed, plaintiff notes that the vast majority of the testimony designated by OFC is directed to this issue. OFC has designated pages of testimony that it claims shows that the equipment worked well and that AT Publishing supposedly deliberately sabotaged the testing or training on the equipment. It argues that AT Publishing's claims that the equipment was not working properly are false or not truthful. Obviously AT Publishing is able to rebut that supposed evidence with its own evidence that the equipment was not conforming and that its objections regarding the equipment were truthful. That evidence includes evidence of what the equipment was supposed to be capable of doing (i.e. evidence establishing performance parameters or criteria) as well as evidence tending to show whether the equipment met the performance parameters. If, however, OFC is willing to stipulate that the equipment was not conforming, then plaintiff agrees that all such evidence offered by both sides would not be relevant on a disputed issue, because the issue would no longer be disputed. But to date, OFC has not admitted that the equipment was a "lemon" and so the issue is disputed.

Similarly, whether AT Publishing can be deemed to have impliedly accepted the equipment by not timely rejecting it is an inherently factual determination. AT Publishing had a right "to put the product to its intended use," and to test and verify "its capability to perform as intended." *Colonial pacific Leasing Corp. v. J.W.C.J.R. Corp.,* 977 P.2d 541, 545 (1999). Evidence of how the equipment was intended to perform, therefore, is relevant. For what purpose was AT Publishing seeking the equipment? Was it replacing other equipment? What knowledge did the vendor have regarding AT Publishing's needs? What did the vendor claim that the equipment would do? Evidence on all of those issues is relevant on the issue of whether or not the equipment performed *as intended*. Again, if OFC will stipulate that the equipment did not perform *as intended*, the issues for trial can be substantially narrowed, but to date it has not done so.

Similarly, evidence of testing and verifying the equipment's performance is relevant. How was it tested? Did AT Publishing have an opportunity to put it to its intended use? What happened when it attempted to put it to its intended use? What happened when the vendor attempted to demonstrate the performance of the equipment? Did the vendor indicate a desire to further demonstrate or cure the performance of the equipment? Again, unless and until OFC stipulates that the equipment did not perform as intended, evidence of how it performed is relevant and admissible.

Finally, OFC attempts to gloss over other ways in which A.B. Dick is a factually and legally relevant party in the dispute between OFC and AT Publishing, even if it is no longer an active party in the litigation. Defendant's exhibit W, which is admitted by the parties, is a contract between OFC and A.B. Dick. AT Publishing is not a party to that

contract and yet that contract caused OFC to advance money to A.B. Dick for which OFC now attempts to hold AT Publishing legally accountable. It is AT Publishing's position that OFC agreed to act as A.B.Dick's financier, knowing A.B. Dick's precarious financial position, and that this caused OFC to improperly attempt to prematurely close the lease with AT Publishing in an attempt to recoup that money.

In addition, OFC's position in this litigation is that the lease commenced, that AT Publishing defaulted, and that the lease provides OFC certain remedies upon default. One of those remedies is the right to repossess the equipment. The lease, defendant's exhibit F, provides that the lessor or *its agent* may repossess the equipment. It is undisputed that A.B. Dick, not OFC, took the equipment back. Either it did so because the lease had not yet commenced and OFC was not the owner of the equipment, or A.B. Dick was acting as OFC's agent. Again, OFC denies this agency relationship and yet its denial does not make it so. It is a factual determination for the jury. Time and again OFC objects to the relevancy of documents making arguments that assume that it filed and won motions for summary judgment or motions in limine that were never filed.

Exhibits 1-5: Having originally misrepresented the relevant discovery request, OFC now erroneously alleges that AT Publishing's response was late. This is untrue. Plaintiff's discovery responses to OFC's February 15, 2006 discovery requests were timely served on March 21, 2006. Of course, OFC ignored those responses and did not seek to examine the boxes of waste for more than 1 year. The fact that OFC waited until May 2007 to request to view these documents is not the fault of AT Publishing. OFC's own lack of diligence is not a reason to exclude otherwise relevant evidence.

PLAINTIFF'S RESPONSE TO OFC'S SUR-REPLY
Case No. A01-0011 CV (JWS)
Page 5 of 8

While OFC is not the manufacturer of the goods and does not warranty them, whether the goods were or were not conforming is relevant to the claims asserted between AT Publishing and OFC.

Exhibits 11-25, 36-39, 40-41: Again, OFC wants to admit documents concerning the lease on the Indigo press where those documents advance its arguments, and exclude evidence concerning the Indigo press where it hurts its arguments. Why AT Publishing agreed to acquire the equipment at issue is relevant on the issue of whether it performed as intended. And OFC's claim that it did not backtrack with regard to exhibits 15 and 24, originally offered by OFC as its exhibits BB and DD, is exposed by the attached email from Joyce Eckstrand, the paralegal at Holmes, Weddle & Barcott working on this case. Ms. Eckstrand was at the meeting of the parties to go over exhibits. She took notes on the agreement of the parties with regard to Exhibits. Following that meeting she emailed her notes regarding plaintiff's exhibits. Ms. Eckstrand's notes demonstrate that defendant agreed that exhibits 15 and 24 would be admitted. Exhibit 1. In addition, OFC has designated witness testimony concerning both exhibits. Indeed, it "offered" those exhibits into evidence during the depositions. OFC has not objected to the authenticity or foundation for those exhibits. Its relevancy objections are not well founded for all of the reasons articulated herein.

Exhibits 6-10, 47-58, 74-81: Ms. Eckstrand's notes again belie defendant's attempt to backtrack with regard to exhibits 58 and 74. According to her notes, which agree with plaintiff's own notes, defendant agreed that those documents were admitted. Exhibit 1. With regard to exhibit 81, defendant mistakenly claims that the exhibit concerns events

PLAINTIFF'S RESPONSE TO OFC'S SUR-REPLY
Case No. A01-0011 CV (JWS)
Page 6 of 8

after the spring 2003 time period. This is false. The document and events it describes preceded that time period. It is relevant to show that OFC knew that A.B. Dick was financially troubled when it agreed to advance money to A.B. Dick on lease finance transactions before the lessee had received or accepted the equipment. The other documents all go to the issue of whether the equipment was conforming, the foundation for AT Publishing's rejection of the equipment, and/or A.B. Dick's attempt to cure.

      Finally, despite OFC's protestations to the contrary, it is undisputed that A.B. Dick acted as OFC's agent in certain respects. The scope of that agency relationship is a factual issue to be determined by the jury.

DATED this 23rd day of May, 2007, at Anchorage, Alaska.

                              s/ Michael T. Stehle
                              Michael T. Stehle, ABA No. 9106054

**Certificate of Service**

I hereby certify that on May 23, 2007
a true and correct copy of the foregoing was
electronically mailed to the following:

Patrick Gilmore
acgef@acglaw.com, pbg@acglaw.com, dap@acglaw.com.

PLAINTIFF'S RESPONSE TO OFC'S SUR-REPLY
Case No. A01-0011 CV (JWS)
Page 7 of 8

Marion Walker
mfwalker@fordharrison.com, mwilkens@fordharrison.com, dbivins@fordharrison.com.

Randy Weddle
rweddle@hwb-law.com,        bfontaine@hwb-law.com,        jekstrand@hwb-law.com, kwarne@hwb-law.com.

s/ Michael T. Stehle
Michael T. Stehle