Randall J. Weddle, Esq.
HOLMES WEDDLE & BARCOTT, PC
701 W. 8th Avenue, Suite 700
Anchorage, Alaska 99501
Phone: (907)274-0666
Fax: (907)277-4657

Marion F. Walker
FORD & HARRISON LLP
2100 Third Avenue North, Suite 400
Birmingham, Alabama  35203
Phone:     (205) 244-5916
Fax:       (205) 244-5901

Attorney for Defendant OFC Capital, a division of ALFA Financial Corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| AT PUBLISHING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:04-cv-0011-JWS |
| ) | |
| A.B. DICK COMPANY and OFC ) | |
| CAPITAL, a division of ALFA ) | |
| FINANCIAL CORPORATION, ) | |
| ) | |
| Defendants. ) | |

### OFC CAPITAL'S SUR-REPLY TO AT PUBLISHING'S REPLY TO OFC OBJECTIONS TO PLAINTIFF COUNTER-DESIGNATIONS OF DEPOSITION TESTIMONY

NOW COMES OFC Capital and, in light of the substantive arguments as to the "issues" of the case and claims of AT Publishing in its Reply to OFC objections, says as follows:

1.      **The claim of "conformity" by AT Publishing.**  While AT Publishing has sporadically peppered its writings, in preparation of this case, with suggestions that OFC Capital, as a finance lessor, had a duty to first deliver and second to deliver "conforming" goods to AT Publishing, those suggestions are simply erroneous.  Not once has AT Publishing cited to any authority, in contract or law, in which this duty has been assigned to, or undertaken by OFC Capital.  In fact, the Master Lease and Schedules are to the contrary.  Paragraph 4 provides there are no warranties whatever and that AT Publishing specifically selected the equipment it instructed OFC to purchase.  Paragraph 5 specifically provides that AT Publishing "shall arrange directly" with A.B. Dick for the delivery and acceptance of the equipment "in accordance with the supplier's requirements."

AT Publishing cannot point to any duty OFC Capital had to deliver equipment that conformed with either AT Publishing's expectations, or representations made by A.B. Dick sales reps.  In Paragraph 4 of the Master

Lease, AT Publishing specifically acknowledged that OFC was "not the manufacturer of the Equipment nor the manufacturer's agent or dealer."

OFC Capital agrees that not one, but THE central issue in the case is whether AT Publishing accepted or rejected the equipment, which is informed by an analysis of whether AT Publishing had a reasonable opportunity to inspect and test the equipment. In advancing the affirmative answer to this question, OFC Capital is focusing on the month of March, 2003, in which the equipment was installed, training was provided and, as OFC claims, plainly accepted by Frank Martone. If Frank Martone did not accept the equipment during this period of time, then the question arises as to whether he rejected it. These are questions for the jury. The evidence competent to answer the question for the jury does not involve whether the equipment worked the way AT Publishing expected.

OFC Capital was not party to any representations A.B. Dick and AT Publishing made to each other, nor can it be held liable for any defect in the equipment which it did not manufacture, and only ordered at the behest of AT Publishing. If the equipment did not work, all AT Publishing had to do was advise OFC Capital not to pay A.B. Dick. So the question is whether or not AT Publishing had a reasonable time to see whether or not the

equipment worked and if it seasonably informed OFC, before it was contractually or legally required to contact OFC about beginning the terms of the Lease Schedules.

OFC Capital suspects AT Publishing is fixated on the issue of "conformity" as a result of focusing on *Ga. Code Ann.* § 11-2A-516 concerning revocation. But even in that context, AT Publishing is misinterpreting what is provided for there. The definition of "'conforming' goods or performance under a lease contract means goods or performance that are in accordance with the obligations under the lease contract." *Ga. Code Ann.*, § 11-2A-103(d).

The lease contract refers to the "supplier's invoice." Hence, "conformity" so far as the lease contract is concerned, has to do with the actual delivery, installation, inspection and acceptance of the equipment identified on the invoice, and not whether it worked in a particular way, met expectations, or representations. This point is made clear in the UCC Comment 1 to §11-2A-516 which says: "Subsection (2) creates a special rule for finance leases, precluding revocation if acceptance is made with knowledge of non-conformity with respect to the lease agreement, as opposed to the supply agreement; this is not inequitable as the lessee has a

direct claim against the supplier. Section 2A-209(1). Revocation of acceptance of a finance lease is permitted if the lessee's acceptance was without discovery of the non-conformity (with respect to the lease agreement, not the supply agreement) and was reasonably induced by the lessor's assurances. Section 2A-517(1)(b). If the lessor does not exclude or modify warranties to the lessee, then revocation after acceptance is a possibility." OFC and AT Publishing specifically agreed there would be no warranties between them whatever.

OFC Capital does not contest AT Publishing's legal right "to put the product to its intended use," and/or to test and verify "its capability to perform as intended," as set out in *Colonial Pacific Leasing Corp. v. J.W.C.J.R. Corp.*, 977 Pac.2d 541, 545 (1999), but the question then becomes whether AT Publishing actually did this, and if it did and found the equipment did not perform as intended, then its obligations under the lease are clear and there will be or should be a written notice to OFC with objections to the equipment which was reasonably and/or seasonably delivered. AT Publishing continues to want to talk about its disappointment with the equipment with the hope of suggesting there was no acceptance of the lease schedules. These were not signed by OFC Capital for almost two

weeks after AT Publishing signed the A.B. Dick certificates of installation and acceptance. Hence, the evidence should focus on what happened during that time.

2. OFC Capital denies that hearsay exceptions fall under objections to the form of the question.

3. The response to the objections set forth by AT Publishing do not provide any substantive basis for not upholding the objections, most specifically, because AT Publishing's emphasis on the "conformity" of the equipment to the supplier representations being the heart of the case, is simply incorrect and AT Publishing knows that OFC Capital had nothing to do with making any representations about the equipment, nor operating the equipment, nor doing anything else with the equipment except paying for it upon AT Publishing's direction.

4. OFC Capital continues to insist that the character evidence AT Publishing is attempting to present through Mr. Taylor and Mr. Ashcraft is not admissible for the reasons originally stated.

5. As to the presentation of the counter-designations, OFC will amend its original designation and include these counter-designations as part

of its presentation thereby eliminating AT Publishing's objections to the counter-designations.

s/ Marion F. Walker
Marion F. Walker
Attorney for Defendant OFC Capital

OF COUNSEL:
FORD & HARRISON LLP

Randall J. Weddle
Alaska Bar No. 7206034
Attorney for OFC Capital

OF COUNSEL:
HOLMES, WEDDLE & BARCOTT, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that, on the 29th day of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Michael T. Stehle
> Law Office of Michael Stehle, PC
> 737 West 5th Ave., Suite 206
> Anchorage, Alaska 99501

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

> Not Applicable.

s/ Marion F. Walker
Of Counsel

Birmingham:16573.1