Randall J. Weddle, Esq.
HOLMES WEDDLE & BARCOTT, PC
701 W. 8th Avenue, Suite 700
Anchorage, Alaska 99501
Phone:   (907)274-0666
Fax:       (907)277-4657

Marion F. Walker
FORD & HARRISON LLP
2100 Third Avenue North, Suite 400
Birmingham, Alabama  35203
Phone:   (205) 244-5916
Fax:       (205) 244-5901

Attorneys for Defendant OFC Capital, a division of ALFA Financial Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| A.T. PUBLISHING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:04-cv-0011-JWS |
| ) | |
| A.B. DICK COMPANY and OFC ) | |
| CAPITAL, a division of ALFA ) | |
| FINANCIAL CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**MOTION TO RECONSIDER RULINGS ON EXHIBIT LISTS
AND OBJECTIONS SUBMITTED BY THE PARTIES**

NOW COMES OFC Capital, by and through its attorneys, and moves the court to reconsider its rulings on OFC Capital's objections to AT Publishing's proposed Exhibit List on the following grounds and for the following reasons:

1. <u>Rulings on Exhibits of AT Publishing</u>

**Exhibits:**

OFC was allowed to view the Exhibits represented by 1-5 on May 15, 2007, but AT Publishing's attorney still did not know when the documents were used or printed and said he would get with his clients to find out; OFC still has not been informed of the dates of printing, if indeed, those dates can be determined, except by a date printed upon the item or paper, which occurs in some few cases.

**1 and 2**: These rubberized plates have no date and no information as to their creation has been provided. The plates are not competent evidence to inform whether AT Publishing had a reasonable opportunity to test and inspect the Equipment before acceptance or rejection was required by the Lease Contract, because the terms of the Lease Contract, which includes the representations on the Delivery and Acceptance Certificates, regardless of the date they were signed, provides that acceptance by AT

Publishing represents the Equipment is in good working condition. To the extent it was not in good working order, AT Publishing misrepresented that fact to OFC.

The "reasonable opportunity" is informed by the nature of the Equipment, but OFC justifiedly relied upon the March 6 and 7, 2003 "Installation Activation Certificates" signed by AT Publishing before calling for a verbal approval to pay the invoices and begin the leases on March 24, 2003. It is not disputed that A.B. Dick provided training on the press by Ray Seaward for a week after installation and Frank Martone testified under oath he received complaints about its operation and knew the press had some problems after the first week of training (F. Martone dep. pp.44-47). He admits he did not report this to OFC. Whatever the plates tagged as Exhibits 1 and 2 represent about the quality, or operation of the Equipment, OFC is relieved of any warranty or representation liability about how it would operate. Allowing exhibits to suggest to the jury that it did not operate properly, or AT Publishing did not get the quality it expected or that was represented, deprives OFC of the benefit of its bargain and allows AT Publishing to recover warranties it knowingly disclaimed as consideration for OFC entering into the Lease Contract to provide funding. AT Publishing

specifically acknowledged it selected the Equipment and that OFC had nothing to do with respect to the Equipment in Paragraph 4 of the Lease Contract.

    **3 – 10**:  These exhibits are boxes of paper considered waste from the press and are generally dated in 2004 thereby apparently representing efforts by AT Publishing and A.B. Dick to settle their dispute in reconciling the operation of the press with AT Publishing's expectations, or representations A.B. Dick made about the press.  These efforts began after AT Publishing sued A.B. Dick and OFC Capital in June 2003.  OFC Capital had already received an acceptance to proceed with the lease and, in reliance upon AT Publishing's representation, did so.  These thousands of pieces of paper have nothing to do with whether AT Publishing had a reasonable opportunity to tell if the Equipment worked during the period after the Installation Certificates were signed until Frank Martone signed off on the lease.  In fact, in its answer to OFC's claim for rent and other remedies under the Lease Contract, AT Publishing admits acceptance occurred and claimed it was entitled to revocation of acceptance, which is not allowed under a finance lease.  Ga. Code § 11-2A-407.

**11-25, 36-39, 40 & 41**:   OFC Capital had no hand in AT Publishing's lease of the Indigo Press, yet AT Publishing seeks to introduce documents relating disappointment AT Publishing had with the press.  There is no probative value to AT Publishing's claim that that how that press worked, or did not, had any relevance to the reasonable opportunity AT Publishing had to inspect different Equipment, a year later, in March 2003. There is likewise no probative value to these documents because of the fact OFC Capital agreed to include the $63,000 pay-off on that press as part of the Lease Contract with AT Publishing.  OFC did agree with AT Publishing that the mention of the prior press and the letters from A.B. Dick that related to how it viewed training and how a finance lease worked are relevant for the information they imparted to AT Publishing.  To allow AT Publishing to hash out representations A.B. Dick made to it before the purchase of the Indigo Press, the course of its use and AT Publishing's belief that the press did not meet its expectations lends nothing to this lawsuit involving only AT Publishing and OFC Capital, and will irreparably harm and cause OFC to suffer a lack of due process in instilling in the jury's mind the spectre of poor performance by A.B. Dick, who is not a party in the case, with OFC

and for which there were no responsibilities with regard to the Equipment under the Lease Contract.

**47-58 & 74-80:** The court's ruling allowing these exhibits, identified by AT Publishing with the "attempted cure" which was a part of settlement efforts between AT Publishing and a party no longer in this case, is based upon AT Publishing's claim "that as lessor, OFC had an obligation to tender conforming goods to ATP, the lessee." Plaintiff's Reply to Objection, p. 6. There is no citation to this argument and it is simply not correct in the instant or any finance lease. The admission of such documents amounts to a deprivation to OFC of its bargain, and reformation of the Lease Contract, which has been sought and cannot be legally sanctioned.

Under Ga. Code §§ 11-2A-212 and 213, implied warranties do not apply to finance leases. Under Ga. Code § 11-2A-214, the parties to a Lease Contract can effectively disclaim and waive all warranties and representations and any duty (presumed or real) of a lessor with respect to the goods made the subject of the lease. *Wells Fargo Bank Minnesota, N.A. v. Brooks America Mortgage Corp.*, 2004 U.S. Dist. LEXIS 18573 *31 (S.D. N.Y. 2004); *Leasetec Corp. v. Orient Systems, Inc.*, 85 F. Supp. 2d 1310, 1315 (1999)(disclaimers uniformly enforced); *Colonial Pacific Leasing*

*Corp. v. McNatt, et al*, 268 Ga. 265, 486 S.E. 2d 804,808 (1997). In Paragraph 4 of the Lease Contract, AT Publishing specifically acknowledged OFC was not the manufacturer, nor its agent and that AT Publishing selected the equipment, entered into the supply agreement and absolved OFC of all duties, responsibility, warranties, or representations, among other things, regarding the Equipment whatsoever, in appropriately bold and capitalized language.

AT Publishing's answer admits acceptance and requests revocation, which is not allowed under a finance lease. So, any discussion of efforts to settle or cure that took place between the lessee and supplier cannot be fairly addressed to this defense or otherwise presented to suggest OFC had any duty regarding the Equipment, other than paying for it.

AT Publishing's rambling assertions about OFC using A.B. Dick as an agent for any reason[1] with regard to AT Publishing cites to no legal authority and has no basis in fact or law. Without referring to where in the Lease Contract or any statute there appears any obligation OFC had "to tender conforming goods," AT Publishing merely announced, without any

---

[1] A.B. Dick did pick up the equipment and resell it for OFC after AT Publishing failed to settle the case and pay OFC. This was merely performing a service, as opposed to a common agency relationship.

reference to allegations that put OFC on notice in this lawsuit, that OFC is being accused of being an agent, in derogation of the plain meaning of the Lease Contract. There is no duty owed by OFC in the Lease Contract to deliver goods, or to attempt any cure, which it naturally, and, as admitted by AT Publishing, had no ability to do. For instance, AT Publishing persists in referring to A.B. Dick as OFC's "agent/vendor." Plaintiff's Reply to OFC's Objections, p. 8. This is incorrect and has never been an allegation in this lawsuit, nor is it a defense by AT Publishing to the claims OFC has brought under the Lease Contract. Even the reference to an agency, which is denied by OFC, in Paragraph 9 of the Amended Complaint does not allege the duties AT Publishing now claim attach to OFC. AT Publishing has not cited to any relevant authority for any argument it makes regarding OFC's duty or liability for any cure, or, more rightly, failure to settle the lawsuit. Ga. Code § 11-1-102 allows parties to a lease contract to vary the terms from provisions of the UCC, so the first reference in resolving disputes between parties must be to their intent as determined from their agreement. *See Moreland Auto Stop, Inc. v. TSC Leasing Corp.*, 216 Ga. App. 438, 454 S.E. 2d 626, 628 (1995).

The very nature of a finance lease requires the lessee to look to the supplier for warranties and actions for misrepresentation.  That is why AT Publishing sued A.B. Dick in this lawsuit and claimed in the 3rd, 4th and 5th causes of action that it relied upon representations A.B. Dick made, and made claims for breach of warranty against A.B. Dick, and not OFC.  This is an utter surprise to have A.B. Dick alleged to be OFC's agent in its Lease Contract, in derogation of Paragraph 4, with AT Publishing and there is no reasonable way OFC can fairly defend a new claim which is asserted against a non-party to the lawsuit.  If OFC had received fair warning of this allegation, a Motion in Limine would have been filed.  Any exhibits regarding efforts to settle, or cure, between AT Publishing and A.B. Dick, regardless of whether OFC was kept informed of those efforts, will serve to only associate OFC as a target of AT Publishing's ultimate disappointment with the Equipment in an effort to try to demonstrate AT Publishing does not owe money under the Lease Contract because the Equipment did not meet its expectations.  The expected result is a lack of due process to OFC, as well as the introduction of evidence, with no probative value, but irreparable harm to OFC and its rights and obligations under the Lease Contract.

**81**:   These are financial statements, dated July, 2003 of the parent company of A.B. Dick that were produced over objection and under a Protective Order.  The introduction of the financials of a non-party has no relevance to any issue in this case whatever.  Neither party before the court is named in this document, they are confidential and they do not provide any probative value to any relevant issue and can only serve to confuse the issues and the jury to OFC's detriment.

2.   Rulings on Exhibits of OFC Capital

**Exhibits**

**RR**:   This email from Greg Martone should have been produced by AT Publishing in the course of discovery, but was not.  The email acknowledges a lease was in existence with OFC Capital as of April 11, 2003 before AT Publishing claims it rejected the Equipment, and can be offered with the other email streams redacted from it.  This is the only written document that exists from AT Publishing that mentions any problem with the Equipment and shows Greg Martone's antipathy toward the Equipment.  AT Publishing merely claimed the email was "hearsay within hearsay" and was unable to address the exceptions of admission against interest; and it is not hearsay as to AT Publishing – it is an out of court

communication the lessee had with the supplier about the operation of the Equipment during the time AT Publishing suggests it was testing and inspection the Equipment. Not only does the email fail to claim there was not enough time to evaluate the Equipment, it specifies certain problems he identified with it. This is the only written communication to do so. At the best, OFC requests the Court withhold a ruling until the evidence is presented.

**SS**: To the extent the question of a "reasonable opportunity to inspect and test" is an issue in the case, this past recollection recorded an exception to the hearsay rule FRE 803(5) by the A.B. Dick trainer reflects the extent to which AT Publishing took advantage of that opportunity and falls within an exception to the hearsay rule. At the least, OFC requests the Court withhold its ruling until Ray Seaward testifies to this document.

**VV &YY:** These emails by and between A.B. Dick employees deal with efforts to satisfy AT Publishing with the Equipment and reflect upon AT Publishing's efforts to take advantage of the opportunity to test and inspect the Equipment before the time for acceptance. To the extent they refer to conversations with AT Publishing, they are the only evidence OFC Capital possibly has to counter or explain the complaints about the

Equipment AT Publishing never made to OFC, but for which it seeks to hold OFC responsible in defense of its obligation to make lease payments.

    3.    To the extent the court does not alter its rulings on exhibits regarding efforts to settle or cure, OFC designates the entire deposition of Claudine Aquilon, excepting the attorneys' banter therein.

    4.    To the extent the court declines to alter its ruling on exhibits regarding the Indigo Press, OFC Capital designates the entire deposition of Burt Green for testimony.

WHEREFORE PREMISES CONSIDERED, OFC Capital moves the court to re-consider the rulings on Exhibits of the parties for trial, and sustain its objection to those exhibits objected to by OFC for the reasons stated herein and in previous filings and overrule objections to OFC exhibits herein identified.

                                  s/ Marion F. Walker
                                  Marion F. Walker
                                  Attorney for Defendant OFC Capital

OF COUNSEL:
FORD & HARRISON LLP

                                  Randall J. Weddle
                                  Alaska Bar No. 7206034
                                  Attorney for OFC Capital

OF COUNSEL:
HOLMES, WEDDLE & BARCOTT, P.C.

**CERTIFICATE OF SERVICE**

    I hereby certify that, on the 1st day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Michael T. Stehle
> Law Office of Michael Stehle, PC
> 737 West 5th Ave., Suite 206
> Anchorage, Alaska 99501

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

> Not Applicable.

                                                s/ Marion F. Walker
                                                  Of Counsel

Birmingham:16638.1