Randall J. Weddle, Esq.
HOLMES WEDDLE & BARCOTT, PC
701 W. 8th Avenue, Suite 700
Anchorage, Alaska 99501
Phone: (907)274-0666
Fax: (907)277-4657

Marion F. Walker
FORD & HARRISON LLP
2100 Third Avenue North, Suite 400
Birmingham, Alabama 35203
Phone: (205) 244-5916
Fax: (205) 244-5901

Attorney for Defendant OFC Capital, a wholly-owned subsidiary of Mid-Country Financial Corporation

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | | |
|---|---|---|
| **AT PUBLISHING, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:04-cv-0011-JWS** |
| | ) | |
| **A.B. DICK COMPANY and OFC CAPITAL, a division of ALFA FINANCIAL CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>OFC CAPITAL'S PRE-TRIAL BRIEF</u>**

I. INTRODUCTION

OFC Capital has completed this brief in accordance with the Court's trial preparation Order and without the benefit of knowing all arguments AT Publishing plans to make at trial. Best efforts have been used to cover all expected claims and to cover those in the counter-claim.

This case arose when AT Publishing filed a lawsuit in Alaska state court in June, 2003, against A.B. Dick and OFC Capital. A.B. Dick has been dismissed, without prejudice, by the court *sua sponte*, following a bankruptcy and sale. A contractual relationship arose between the parties in November, 2002, with the execution by AT Publishing of a Master finance lease following AT Publishing's application to OFC for financing of printing equipment ("Equipment") it had ordered from A.B. Dick. Two Lease Schedules, the Equipment and incorporating the Master Lease were fully executed as of March 24, 2003, the day OFC received authorization from AT Publishing to pay A.B. Dick for the Equipment and begin the leases. OFC contends AT Publishing admitted to acceptance in its Amended Complaint and Answer to Counterclaim.

The court entered an Order on summary judgment on August 30, 2004 and made the following rulings which are the law of the case:

1. The parties agree Georgia law applies (p. 6).

2. The Master Lease is a finance lease (p. 11).

3. The lessor (OFC) does not incur any warranty liability to the lessee (AT Publishing) under the finance lease (p. 11).

4. According to the terms of the Master Lease, the Equipment's condition and operation does not affect the lessee's (AT Publishing's) obligation to make payments (p. 11).

5. The signed Delivery and Acceptance Receipts by themselves fail to establish acceptance under the UCC because AT Publishing did not have possession when Frank Martone signed these receipts (p. 15).

6. OFC is not subject to liability for any warranty regarding the suitability of the Equipment for AT Publishing's purposes (p. 16).

The questions for the jury are whether AT Publishing was afforded a reasonable opportunity to inspect and test the equipment; if so, the jury must also decide whether

there was an express acceptance or rejection by Frank Martone on March 29, 2003. If not, there is a question for the court as to whether, according to the terms of the Lease Contract, AT Publishing accepted the Equipment by failing to make an effective rejection.

The further questions of law to be decided by the court from the terms of the Master Lease are: the parties' agreement as to a reasonable time for lessee to accept or reject the equipment; determine whether sufficient evidence exists to submit any question of agency between A.B. Dick and OFC Capital to a jury[1]; and the amount of the liquidated damages due under the Lease Contract. By operation of law, no revocation of a finance lease is permitted. Ga. Code § 11-2A-407 and comments.

It is undisputed the parties entered into a finance lease, the construction or interpretation of which is a question of law for the court, unless an ambiguity exists. The Georgia Code is instructive, stating: "The cardinal rule of construction [of contracts] is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." *OCGA § 13-2-3*. The intent of the parties comes from a consideration of the entire agreement where the provisions therein are interpreted so as to harmonize with each other. *Friedman v. Friedman*, 259 Ga. 530, 532(3), 384 So. 2d 641 (1989). "However, courts are not at liberty to revise a contract while professing to construe it." *Petroziella v. United States Leasing Corp.*, 176 Ga. App. 858, 338 So. 2d 63, 66 (1985).

---

[1] OFC Capital identifies the "agency" claim as an issue only because AT Publishing submitted it and OFC Capital will argue it is not an issue, nor a defense set up by AT Publishing to OFC's counterclaim.

A finance lease involves three parties: the lessee who selects the equipment from the supplier and the lessor who, upon lessee's entering into a lease contract, purchases the equipment from the supplier for delivery to lessee. Any negotiations, representations or other issues regarding the price, performance, quality or durability of the equipment or goods is handled between the lessee and the supplier. "Moreover, a finance lessor often has neither the opportunity nor the expertise to inspect the goods in order to discover defects in them. Given the limited function of the lessor, the lessee relies almost entirely on the supplier for representations, covenants, and warranties." *Colonial Pacific Leasing Corp. v. McNatt*, 268 Ga. 265, 486 So. 2d 804, 807 (1997) quoting Edwin E. Huddleston III *Old Wine in New Bottles: UCC Article 2(A) Leases*, 39 Ala. Rev. 615, 660 (1988). Because the lessor deals largely in paper and not in goods, the lessee logically has to look to the supplier for breaches of warranty or promises, while the lessor expects to be paid, even though the equipment may prove to be defective or totally unsuitable for the lessee's business needs. 2 J. White and R. Summers, *Uniform Commercial Code* § 13-3(a), 4th ed. 1995).[2] Upon lessee's acceptance of the goods, "the promises under the least contract become irrevocable and independent…" Ga. Code § 11-2A-407(1).

II.   ACCEPTANCE OR REJECTION UNDER THE FINANCE LEASE

There is no dispute that the finance lease controlling the legal relationship between the parties was entered into by sophisticated businessmen who intended to be bound by the terms therein. "Generally, the federal courts are not here to protect

---

[2] These authors previously explained by way of an example that: "If the lessee should order an aircraft which is unsuitable or defective, this is not the lessor's problem. The lessor's responsibility is merely to provide the money, not to instruct the lessee like a wayward child concerning a suitable purchase. . . .Absent contrary agreement, even if [for example] our Boeing 747 explodes into small pieces in flight and is completely uninsured, lessee's obligation to pay continues." 1A J. White and R. Summers, *Uniform Commercial Code*, § 4-3, p. 25 (3rd ed. 1981).

sophisticated business actors from each other, and in the absence of fraud or other sufficient cause for doing so, we will not reform the contract between two such parties. *See Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1150 (11th Cir. 2001) ('[T]he parties to a contract have the right to define the terms of that contract.')." Indeed, the right to contract is constitutionally sanctioned. U.S. Constitution, Section 10, Art. I. *See W.B. Worthen Co. v. Thomas*, 292 U.S. 426, 54 S. Ct. 816, 78 L. Ed. 1344 (1934); *Petroziello*, 338 S.E. 2d at 65; *McNatt*, 486 S.E. 2d at 807-08 ("Georgia case law generally upholds the bargains struck by the parties, as long as the contract is not the product of fraud) (*OCGA § 13-4-60*), or is not violative of the public policy of this state.")

Whether the Lease Schedules, which incorporate the Master Lease and other transaction documents, associated with the specific printing equipment contained on the Sales Order AT Publishing signed with A.B. Dick, were accepted is the factual question for resolution. This question is informed by the terms of the Master Lease. In particular, in determining what is "acceptance," "rejection" and a "reasonable time," the intention of the parties, gleaned from the terms of the contract, is controlling. *See Ga. Code § 1-102(3)* allowing parties to vary the effect of the provisions in the statute by agreement. Beyond the resolution by the jury of whether there was a "reasonable time to inspect," and ultimately an express acceptance, the court is charged with applying unambiguous terms of the Lease Contract.

    A.    <u>Acceptance</u>

        1.    <u>The Master Lease Provides for Acceptance</u>

In ¶ 5 the parties specifically agreed AT Publishing would contact A.B. Dick directly to arrange "for delivery and acceptance of the Equipment in accordance with the

Supplier's requirements." AT Publishing was required to act "promptly" in inspecting the Equipment after delivery. The parties intended the process of delivery, inspection and acceptance to move with dispatch, as they provided in ¶ 23 that "[T]ime is of the essence of this Lease and each Schedule."

The "Delivery and Acceptance Receipt" provided by OFC to AT Publishing for each Lease Schedule recites what the parties intended as "acceptance" between them for the Leases. The OFC form requires the Lessee to sign the form certifying that "all the equipment described in the referenced Lease Agreement [between the parties] is in accordance with the terms of the lease, has been delivered, inspected, installed, is in good working condition, and accepted by the undersigned as satisfactory . . . ." These forms were unaccountably signed by Frank Martone for AT Publishing before the equipment was actually delivered, installed or tested.

Paragraph 5 provides the "Lessor shall also be entitled to conclusively rely on any and all verbal representations issued by Lessee with respect to the foregoing matters [dealing with acceptance]." It was also commercially reasonable for OFC to rely upon the A.B. Dick Installation Activation Certificates executed by Andy and Frank Martone on March 6 and 7, 2003. *See Wells Fargo Bank Mn., N.A. v. Brooks America Mortgage Corp.*, 2004 U.S. Dist. LEXIS 18573 at *34.

The parties agreed that after AT Publishing "promptly" inspected the Equipment following delivery, and within ten (10) days of delivery of substantially all of the Equipment, AT Publishing was obliged to provide OFC with a completed Delivery and Acceptance certificate, or a written notice of "any proper objection to the Equipment." (¶ 5, Master Lease). The parties agreed that ten (10) days was a reasonable time within

which AT Publishing was required to directly accept or reject the Equipment. There is nothing in the Master Lease to abrogate this provision of time for acceptance or rejection.

If AT Publishing had a reasonable opportunity to inspect the Equipment, which goes along with its duty to inspect promptly, the Lease Contract provides it thereafter was required to accept by executing the acceptance form, or provide a written notice of "proper objections" within ten (10) days. OFC contends a reasonable opportunity to inspect and test the equipment occurred but AT Publishing did not take full advantage of the opportunity.

The Delivery and Acceptance forms provide part of the Lease Contract. AT Publishing's acceptance of the Equipment acknowledged to OFC it was in good working condition and was accepted as satisfactory. This is a reasonable provision in a finance lease that cannot be varied by subsequent interpretation. If AT Publishing failed to take the specified actions regarding acceptance or rejection, the parties specifically agreed, as most Lease Contracts provide so as not to leave open-ended situations, that OFC could presume acceptance and that OFC was authorized to pay A.B. Dick and start the lease. ¶ 5, Master Lease Agreement.

The inspection and testing was to confirm or deny the Equipment was in "good working order." The ten (10) days for AT Publishing to provide notice of acceptance of rejection began running after AT Publishing was trained on the Equipment and allowed to use it for at least a week. *See Colonial Pacific Leasing Corp. v. J.W.C.J.R. Corp.*, 977 P.2d 541, 547 (Ut. App. 1999) quoting 2A Hawkins and Miller § 2A-509:08, at 780-81.

2.  Georgia UCC Acceptance

OFC Capital contends its Lease Contract, as defined by Ga. Code § 11-2A-103(l) unambiguously expresses the parties' intent with respect to acceptance and rejection of the Equipment, with the acknowledgment that AT Publishing's obligation to inspect the goods "promptly" after delivery, is necessarily interpreted to allow for the installation, training and use of the Equipment ("a reasonable opportunity to inspect") prior to the time for accepting or rejecting the Equipment. The unambiguous terms of the Lease Contract are consistent with Ga. Code sections under Article 2A dealing with acceptance and rejection.

The lease contract between the parties is "effective and enforceable according to its terms between the parties, . . ." The exception to this rule is "where there is a specific rule to the contrary in this Article." Ga. Code § 11-2A-301, cmt. 1. The definitions provided in Ga. Code § 11-2-301 are applicable for interpretation of the Master Lease and Lease Schedules, and the general definitions at Ga. Code § 11-2A-103 are persuasive, if not thoroughly applicable, where the term is not otherwise addressed in Article 2A, and the interpretation does not change the intent of the parties. While the parties' agreement clearly defines how AT Publishing was to accept or reject the Equipment (¶ 5), OFC references the Ga. Code to demonstrate the terms agreed to are within the statute.

Ga. Code § 11-2A-515 – **Acceptance of goods**, provides two alternatives as to when a lessee accepts goods "after the lessee has a reasonable opportunity to inspect the goods." First is action by the lessee "that signifies to the lessor or the Supplier that the goods are conforming or that the lessee will take or retain them in spite of their

nonconformity;" or secondly, "[T]he lessee fails to make an effective rejection of the goods." An "effective rejection" is defined at Ga. Code § 11-2A-509(2) as one where the lessee rejects "within a reasonable time after tender or delivery of the goods and the lessee seasonably notifies the lessor." This Section is read with the Master Lease ¶ 5 and informs AT Publishing's duty to "promptly inspect" as having a reasonable opportunity to inspect and test the Equipment before the time for acceptance or rejection begins to run.

OFC acknowledges that acceptance under the UCC "assumes an act beyond merely taking possession of the goods." *J.W.C.J.R. Corp.*, *supra*, 977 P.2d at 545. Finance leases contemplate a lessee takes possession before acceptance and that is the reason the Master Lease is executed before any equipment is delivered and followed with a verbal authorization. This is standard in the industry.

While Ga. Code § 11-2A-515(1) is read in conjunction with the Lease Contract to interpret the obligation there to "promptly inspect," the statutory reference in subparagraph (a) to "goods are conforming" or "their nonconformity," is not applicable to the Lease contract here where any issue of "conformity" *vel non* is defined in the Delivery and Acceptance Certificate, part of the Lease Contract, as "good working order." Whether the Equipment was in "good working order" was a question AT Publishing was required to answer for OFC Capital – the only party to the three way transaction that had never and still has never even seen the Equipment.

Under § 11-2A-515, "'conforming' goods or performance under a lease contract means goods or performance that are in accordance with the obligations under the lease contract." Ga. Code § 11-2A-103(d). The definition of "lease contract," "finance lease,"

"lessor," "lessee" and "supplier," among others, that are provided in this Ga. Code section all apply. In this case "conformity" is defined by the parties.

OFC Capital looked to AT Publishing to advise when the lease should begin. The wording of the OFC Delivery and Acceptance Receipt clearly reflects the parties contemplated the equipment would be in working condition when AT Publishing authorized payment. Otherwise, AT Publishing had an obligation to OFC Capital to advise of any problems, and to directly provide written objections to the Equipment.

AT Publishing was run by sophisticated business people who entered into the Lease Contract with OFC Capital that is not ambiguous. *Petroziello*, 33 S.E. 2d at 860-61 and citations therein.

    B.    <u>Rejection</u>

        1.    <u>Master Lease Provides Time for Rejection</u>

AT Publishing had an affirmative duty to reject the Equipment if it was not in good working condition. This legal duty under the Lease Contract could not be satisfied by a failure to act. Even if AT Publishing was trying to work out any problems with A.B. Dick, it had a legal obligation to communicate in writing any objections or problems to OFC. "The affirmative duty to reject on pain of being deemed to have accepted does not arise until the time given the lessee to inspect has ended." *J.W.C.J.R. Corp.*, 977 P.2d at 544 quoting 2A Hawkland and Miller § 2A-509:08, at 780-81 with emphasis and without citations and footnotes. But when any problems arose, AT Publishing was obliged to give notice pursuant to Ga. Code § 11-1-201(26) and include any specific objections, or waive them, as charged in Ga. Code § 11-2-605, and the terms of Paragraph 5. This contractual provision is consistent with statutory law.

2.   <u>Ga Code UCC – Rejection</u>

Section 11-2A-515(1)(b) provides for acceptance if "(b) [T]he lessee fails to make an effective rejection of the goods." Section 11-2A-509(2) mandates: "Rejection of goods is ineffective unless it is within a reasonable time after tender or delivery of the goods and the lessee seasonably notifies the lessor." The intention of the parties was plain that AT Publishing would notify OFC within ten (10) days of a reasonable time to inspect the goods, whether it was accepting or rejecting the Equipment. *See G.E. Capital Corp. v. Nat'l Tractor Trailer School, Inc.*, 667 N.Y.S. 2d at 619-20. OFC agrees and directs the court's attention to *Bricknell v. B&S Enters.*, 160 Ga. App. 307, 287 S.E. 2d 310 (1981). There the plaintiff had no right to reject goods for nonconformance after being given an ample opportunity to inspect the car to see if it had an operating air-conditioner and radio before taking possession and signing the bill of sale and financing documents.

The questions of whether AT Publishing had a reasonable opportunity to inspect and test the Equipment, and whether Frank Martone expressly accepted the leases and authorized payment be made to A.B. Dick on March 24, 2003, are factual questions for the jury. These findings then will become the basis for the court determining from the parties' agreement, whether there was an effective acceptance or rejection within the time provided and according to the manner agreed in the terms of the Master Lease Agreement.

OFC contends any introduction of evidence to try to demonstrate the Equipment did not meet its expectations, or the representations of A.B. Dick is not competent, is irrelevant, and is hearsay without an exception as to OFC. Moreover, OFC will be

deprived of the benefit of its bargain in the Master Lease and deprived of due process if such evidence is allowed. As to the period of time after the Installation Certificates were signed and March 24, 2003 when the leases began, OFC submits evidence of the operation of the Equipment is admissible for demonstrating there was a reasonable opportunity to inspect to see if the Equipment was in good working order, but not beyond that time. OFC contends there was no revocation of acceptance; revocation is not allowed pursuant to § 11-2A-407 or under any other theory not contained in the terms of the Master Lease.

III.   WARRANTIES

The nature of a finance lease mandates a transfer of warranties from the purchase of goods from the supplier by the lessor to the lessee. Indeed, Ga. Code § 11-2A-103(g)(iii)(c) provides a part of the definition.

The law of the case recognizes there is no warranty or representation liability owed by OFC to AT Publishing. The only warranties or actions for representations AT Publishing had in the Equipment transaction were those agreed to with A.B. Dick in the terms of the supply agreement listed on the back of the Sales Order. AT Publishing is trying to avoid this ruling by claiming A.B. Dick was OFC's agent. *See* Amended Complaint, ¶ 9; Reply to OFC Exhibit objections (doc 135). AT Publishing asserts, without citation to authority, that OFC had a duty to deliver conforming goods as part of its Master Lease Agreement, or because of the allegation of agency. This claim is in derogation of the court's order and not supported by any legal authority. *See Leasetec Corp. v. Orient Systems, Inc.*, 85 F. Supp. 2d 1310, 1316 (S.D. Fl. 1999) (applying Article 2A) (the law supports warranty disclaimers); Ga. Code § 11-2A-209, cmt. 1:

"The function performed by the lessor in a finance lease is extremely limited. Section 2A-103(1)(g). The lessee looks to the supplier of the goods for warranties and the like or, in some cases as to warranties, to the manufacturer if a warranty made by that person is passed on." A disclaimer of warranties and representations, clearly expressed in the bargain struck by the parties, is effective under Georgia law to prevent the lessee from avoiding its obligation to pay because the equipment does not work, or does not work as represented, as AT Publishing claims here. *McNatt*, 486 S.E. 2d at 808 citing *Petroziello*, 176 Ga. App. at 860.

There is no contention whatever that Paragraph 4 regarding "no warranties," or Paragraph 3, the "hell or high water" clause, both clauses standard in finance leases, were imposed on Frank Martone by fraud. OFC did nothing to induce Frank Martone to enter into the Master Lease for AT Publishing. No allegation of fraud is leveled at OFC.

In the absence of fraud on the part of or imputed to a lessor, a contractual obligation to make rental payments is valid. *McNatt*, 486 S.E. 2d at 808. *Woods v. Advanta Leasing Corp.*, 201 Ga. App. 844(1), 412 S.E. 2d 607 (1991); *See Colorado Interstate Corp. v. CIT Group/Equipment Fin.*, 993 F.2d 743, 749, (10th Cir. 1993); *Holcomb v. Commercial Credit Serv. Corp.*, 180 Ga. App. 451, 349 S.E. 2d 523 (1986).

The only claims of fraud are against a non-party. In order to hold OFC liable for any A.B. Dick warranties or representations, AT Publishing must be able to prove fraud against A.B. Dick. That is not possible with A.B. Dick not before the court. Any evidence tending to prove any fraud such as misrepresentations about former equipment, or the Equipment subject to the leases against A.B. Dick, will unfairly associate OFC with some complaint about A.B. Dick and deny OFC a fair trial and due process of law.

Alternatively, the Lease Contract plainly denies any agency, and no legal authority supports the claim. The act of "financing the equipment" does not create an agency of any kind. The business relationship between A.B. Dick and OFC Capital – involving referrals or providing forms – does not create that synergy of interest, nor identity of purpose necessary to establish a lawful principal-agent relationship. *See Whetstone Candy Company, Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir. 2003). In Georgia there must be a representation of agency and justifiable reliance thereon before an apparent agency can be created. *Kirchen v. Gateway Cmty. Serv. Bd.*, 2006 U.S. App. LEXIS 31877, *17 (11th Cir. Ga. Dec. 28, 2006); *See McNatt*, 486 S.E. 2d at 808-09; *Woods v. Advanta Leasing Corp.*, 201 Ga. App. 844, 412 S.E. 2d 607, 608 (Ct. App. 1991); *Gulf Winds, Inc. v. First Union Bank*, 187 Ga. App. 383, 370 S.E. 2d 508 (Ct. App. 1988); *Holcomb v. Commercial Credit Servs. Corp.*, 180 Ga. App. 451, 349 S.E. 2d 532, 524 (1986).

The allegations of AT Publishing are plainly distinguishable from the facts found to create a supplier-lessor agency in *Potomac Leasing Co. v. Thrasher*, 181 Ga. App. 883(1), 354 S.E. 2d 210 (1987) where the supplier's employees were trained to negotiate finance leases and complete the forms for the finance lessor. Additionally, any reliance on the holding arising from the facts presented in *Tri-Continental Leasing Corp. v. Burns*, 710 S.W. 2d 605 (Ct. App. Tx. 1986) is misplaced. The facts surrounding the supplier's employee's solicitation of a finance lease, and the lessor's later acceptance, that showed agency were inapposite to the facts in this case. The only wrong leveled at OFC, as an affirmative defense to the counter-claim, is that it failed "to cure defects," yet no duty was articulated. Any and all allegations of fraud are against A.B. Dick, a non-party to

this case. AT Publishing seeks to prove against a non-party as an excuse for non-payment by introducing evidence: (1) about the prior press it had financed with A.B. Dick; (2) the representations about what the Equipment it asked OFC to finance would do; and (3) the efforts to settle, the lawsuit filed June 2003, it calls a "cure" which includes acts and documents from the year 2004. Such evidence is not admissible in the case against OFC, is irrelevant, has no probative value but irreparable harm to OFC and is hearsay without an exception as to OFC.

IV.  LIQUIDATED DAMAGES PROVISION

This section is merely placed in this Brief as background for an award by the Court to OFC on the Lease Contract. The liquidated damages provisions in the Lease Contract is consistent with Ga. Code § 11-2A-504. AT Publishing voluntarily entered into the Lease Contract which contains a liquidated damages clause that is "reasonable in light of the then anticipated harm caused by the default or other act or omission" that could be reasonably viewed from the beginning of the contract. *Summerhill Neighborhood Development Corp. v. Telerent Leasing Corp.*, 242 Ga. App. 142, 528 S.E. 2d 889, 891 (2000). The enforceability of a liquidated damages clause is a question of law for the court. *Sun v. Merecedes-Benz Credit Corp.*, 254 Ga. App. 463, 562 S.E. 2d 714, 716 (2002); *Jamsky v. HPFC, Inc.*, 238 Ga. App. 447, 519 S.E. 2d 246 (1999); *Carter v. Tokai Financial Services, Inc.*, 231 Ga. App. 755, 500 S.E. 2d 638, 640 (1999) (parties' provision for calculation of liquidated damages controls award of damages subject to *OCGA* § 11-2A-504(1)).

The liquidated damages provision is enforceable where: (1) the injury from a breach is difficult or impossible to accurately estimate at the beginning of the contract;

(2) parties intend to provide for damages as opposed to a penalty; and (3) stipulated sum is a reasonable pre-estimate of probable loss. At the beginning of the contract, it was not possible to accurately estimate what the loss would be upon a default by AT Publishing, where, if the agreement had been followed, payments would have been completed by now. But the reality is AT Publishing has never made one payment and OFC Capital has been deprived of the use of the money it paid on AT Publishing's behalf for four years. Paragraph 14(d) of the Lease Contract provides specifically that the damages to be recovered are "not as a penalty, but herein liquidated for all purposes . . . ." The reduction of future rents discounted to present value has been shown to establish a reasonable estimate of probable loss. *Jamsky*, 519 S.E. 2d at 247; *Telerent Leasing Corp.*, 528 S.E. 2d at 892.

V.   NO UNCONSCIONABILITY IN TERMS OF MASTER LEASE

There is no unconscionable term in the Lease Contract as a matter of law.

Agreements entered into by parties reasonably knowledgeable about its implications are ordinarily enforceable, even if they may be one-sided. *Wells Fargo Bank*, 2004 U.S. Dist. LEXIS at *29; *Leasetec Corp.*, 85 F. Supp. 2d at 1318; *IBM Credit Corp. v. United Home for Aged Hebrews*, 1994 U.S. Dist. LEXIS 2886 at *73 (S.D. N.Y. Mar. 3, 1994), *vacated on other grounds* by 848 F. Supp. 495 (1994). AT Publishing neither disputes it sent an application for a finance lease to OFC, nor claims it was in an inferior bargaining position, nor that OFC was the only lessor available to finance the Equipment. *Jenkins v. First AM. Cash Advance of Ga., LLC*, 400 F.3d 868, 875 (11th Cir. (Ga.) 2005); *NEC Techs, Inc. v. Nelson*, 267 Ga. 390, 478 S.E. 2d 769, 771-72 (Ga. 1996).

VI.   CONCLUSION

The Master Lease controls all obligations to perform between the parties, even though the AT Publishing duty to "promptly inspect," includes a reasonable opportunity to inspect which the court has ruled is a jury question even though OFC contends the period between the execution of the Installation Activation Certificates and the March 24, 2003 beginning of the leases, afforded a reasonable opportunity to inspect and test the Equipment.  The second question for the jury is whether there was an acceptance by Frank Martone on March 24, 2003.  If not, the jury must determine if a written rejection was provided OFC Capital within the ten (10) day period the parties agreed to for accepting or rejecting the Equipment.  In all other respects, there is no genuine issue as to any material fact that is not covered by the unambiguous terms of the Lease Contract which are not unconscionable, but enforceable as to every term.

                                                                                    s/ Marion F. Walker
                                                                                    Marion F. Walker
                                                                                    Attorney for Defendant OFC Capital

OF COUNSEL:
FORD & HARRISON LLP

                                                                                    Randall J. Weddle
                                                                                    Alaska Bar No. 7206034
                                                                                    Attorney for OFC Capital

OF COUNSEL:
HOLMES, WEDDLE & BARCOTT, P.C.

**CERTIFICATE OF SERVICE**

      I hereby certify that, on the 4th day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Michael T. Stehle
>Law Office of Michael Stehle, PC
>737 West 5th Ave., Suite 206
>Anchorage, Alaska 99501

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

>Not Applicable.

>                    s/ Marion F. Walker
>                    Of Counsel

Birmingham:16619.2