Randall J. Weddle, Esq.
HOLMES WEDDLE & BARCOTT, PC
701 W. 8th Avenue, Suite 700
Anchorage, Alaska 99501
Phone:    (907) 274-0666
Fax:        (907) 277-4657

Marion F. Walker
FORD & HARRISON LLP
2100 Third Avenue North, Suite 400
Birmingham, Alabama  35203
Phone:    (205) 244-5916
Fax:        (205) 244-5901

Attorney for Defendant OFC Capital, a wholly-owned subsidiary of Mid-Country Financial Corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| AT PUBLISHING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:04-cv-0011-JWS |
| | ) | |
| A.B. DICK COMPANY and OFC CAPITAL, a wholly-owned Subsidiary of MidCountry Financial Corp., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### BRIEF IN SUPPORT OF MOTION TO RECONSIDER RULING ALLOWING ADDITIONAL ISSUES ANNOUNCED BY AT PUBLISHING TO BE PART OF THE CASE

NOW COMES, OFC Capital and files this Brief in Support of its

Motion to Reconsider the court's ruling allowing additional issues advanced

by AT Publishing. OFC Capital also incorporates the pre-trial brief it filed on June 4, 2007.

The court's Order denying Summary Judgment in August, 2004 made a finding that the Master Lease entered into by the parties is a finance lease. Pursuant to the Master Lease and, as a matter of law in the case of finance lease, the court also determined there are no warranties or representations that OFC Capital made to AT Publishing. OFC Capital fairly relied upon these findings in conducting its discovery over the past few years in preparation of this case.

I.  <u>WARRANTIES</u>

The nature of a finance lease mandates a transfer of warranties from the purchase of goods from the supplier by the lessor to the lessee. Indeed, Ga. Code § 11-2A-103(g)(iii)(c) provides a part of the definition:

> The lessee, before signing the lease contract, receives an accurate and complete statement designating the promises and warranties, any disclaimers of warranties, limitations or modifications of remedies, or liquidating damages, including those of a third party, such as a manufacturer of the goods, provided to the lessor by the person supplying the goods or the right to possession and use of the goods.

In Paragraph 4 of the Master Lease, these very words are used and AT Publishing specifically, thoroughly and in big, bold letters acknowledged OFC was "not the manufacturer of the Equipment nor the manufacturer's

agent or dealer;" that it had selected the Equipment; and that OFC had not made any warranty or representation of any kind about the Equipment. There are no implied warranties in finances leases. *See*, Ga. Code §§ 11-2A-212, 213; *Griffith v. Medical Rental Supply of Albany, Ga.*, 244 Ga. App. 120, 122, 554 S.E. 2d 859, 861 (2002) (No warranty or representation flows from lessor where lessee relying on its own skill to select equipment); *U.S. Achievement Academy, LLC v. Pitney Bowes*, 2004 U.S. Dist. LEXIS 29238, *5-8 (E.D. Ky., July 23, 2004) (quoting 2 J. White & R. Summers *Uniform Commercial Code* 5 (4th ed. 1995) (Dismissing suit against finance lessor, the court said:

> In a finance lease, "the finance lessee…is relying upon the manufacturer…to provide the promised goods and stand by its promises and warranties. The [lessor] is only as finance lessor and deals largely in paper, rather than goods."

The only warranties or actions for representations AT Publishing had in the Equipment transaction were those agreed to with A.B. Dick in the terms of the supply agreement listed on the back of the Sales Order.

There are two places upon where AT Publishing claims A.B. Dick was OFC's agent. The first is the Amended Complaint, ¶ 9. AT Publishing claims A.B. Dick routinely recommended OFC as a financing source, provided "forms" (otherwise not defined) and touted OFC as capable of

providing financing for A.B. Dick customers. Against this innocuous background, AT Publishing claims an agency as follows: "By financing the equipment, OFC Capital acted in a way that showed it intended to assume responsibility for what A.B. Dick did once OFC Capital learned of all A.B. Dick's acts on its behalf." Secondly, in the Reply to OFC Exhibit objections (doc 135), AT Publishing asserts, without citation to authority, that OFC had a duty to deliver conforming goods as part of its Master Lease Agreement, or because of the above allegation of agency.

To this claim, OFC says two things: (1) under the Lease Contract the parties specifically agreed OFC did not warrant or represent anything with regard to the Equipment; and (2) the arguments and allegations by AT Publishing that OFC was an agent of A.B. Dick are not sufficient as a matter of law to create an agency, or even a jury question as to the alleged agency.

In a case reviewing a 'no warranty' lease clause in a finance lease that is less expansive than the one in this case, the court in *Leasetec Corp. v. Orient Systems, Inc.*, 85 F. Supp. 2d 1310, 1316 (S.D. Fl. 1999) (applying Article 2A) held the law supports warranty disclaimers. *See* Ga. Code § 11-2A-209, cmt. 1: "The function performed by the lessor in a finance lease is extremely limited. Section 2A-103(1)(g). The lessee looks to the supplier

of the goods for warranties and the like or, in some cases as to warranties, to the manufacturer if a warranty made by that person is passed on." A disclaimer of warranties and representations, clearly expressed in the bargain struck by the parties, is effective under Georgia law to prevent the lessee from avoiding its obligation to pay because the equipment does not work, or does not work as represented, as AT Publishing claims here. *McNatt*, 486 S.E. 2d at 808 citing *Petroziello*, 176 Ga. App. at 860.

1. <u>AT Publishing Is Bound To Its Agreement</u>

Georgia case law generally upholds the agreement of the parties so long as the contract was not procured by fraud. OCGA § 13-4-60.

AT Publishing walked away from its obligation and now, desperate to avoid paying, after accepting the good faith performance of OFC, finds there is no refuge in any legal authority for its failure to perform. However, there is no contention whatever that Paragraph 4 regarding "no warranties," or Paragraph 3, the "hell or high water" clause, both clauses standard in finance leases, were imposed on Frank Martone by fraud. AT Publishing suggests, but does not specifically allege in its Amended Complaint, that it was fraudulently induced to enter into the Sales Order agreement by and with A.B. Dick, and because OFC was recommended by A.B. Dick, but actually

financed the purchase at AT Publishing's request, A.B. Dick is OFC's agent and all warranty and representation disclaimers fail. This argument is legally fallacious. No allegation of fraud is leveled at OFC.

In the absence of fraud on the part of or imputed to a lessor, a contractual obligation to make rental payments is valid. *McNatt*, 486 S.E. 2d at 808. *Woods v. Advanta Leasing Corp.*, 201 Ga. App. 844(1), 412 S.E. 2d 607 (1991); *See Holcomb v. Commercial Credit Serv. Corp.*, 180 Ga. App. 451, 349 S.E. 2d 523 (1986). The Tenth Circuit in *Colorado Interstate Corp. v. CIT Group/Equipment Fin.*, 993 F.2d 743, 749, the court explained:

> Under the hell or high water provision, the lessee undertakes to pay rentals . . . once the lessee has formally accepted the property . . . whether the property functions satisfactorily, is useful to the lessee, is suitable for the purpose intended, or is lost, stolen, condemned, or destroyed, and whether the lessee has any right of offset against the lessor or the lenders, is irrelevant. In short, rent payments continue to come hell or high water, without any reduction or offset, even if the lessee is wrongfully dispossessed of the equipment by the lessor . . . .

To the same effect, that a lessee's duty to make lease payments is distinct from a lessor's or vendor's/manufacturer's breach of duty to perform, see the following: *Lyon Financial Services, Inc. v. Young Vending Services, et al.*, 2003 WL 221 77597 *3 (Minn. App.) (unpublished opinion that notes the "hell or high water" provision "underscores the distinguishing characteristic of a finance lease"); *Great America Leasing Corp. v. Star*

*Photo Lab, Inc.*, 672 N.W. 2d 502, 506 (Ia. App. 2003) (following acceptance, obligation to pay exists despite dissatisfaction with equipment); *J.W.C.J.R. Corp.*, 977 P.2d at 549-50; *G.E. Capital Corp.*, 667 N.Y.S. 2d at 618-19; *McNatt*, 486 S.E. 2d at 808; *Leasetec Corp.*, 85 F. Supp. at 1316. *See generally* 2 J. White & R. Summers *Uniform Commercial Code* § 13-3(a) (4th ed. 1995) where the authors make clear the finance lessor deals largely in paper so that it is not sensible to treat a lessor as a seller with warranty liability, so a finance lessor may lawfully expect to be paid whether the equipment proves to be defective, or totally unsuitable for the lessee's particular business.  It is only warranty liability that connotes any right or responsibility to "cure."

    Regardless of AT Publishing's expectations, whether arising from warranty or A.B. Dick representations, its obligation to pay OFC Capital remains unconditional and absolute in accordance with Paragraph 4 of the Lease Contract and the express provisions of the Ga. Code based upon the UCC.

2.  There Is No Agency As A Matter Of Law

a.  Hollow Allegations of Agency

There have been a number of attempts of lessees to avoid finance lease obligations by attempting to collapse the "no warranty" clause and defeat the "hell or high water" clause by claiming a lessor-supplier agency that imputes the supplier warranties originally negotiated with the lessee to the lessor and therefore allows testimony or consideration of the working condition of equipment to impact upon the obligation to pay rentals. The following are the references in the Amended Complaint addressing an alleged agency between A.B. Dick and OFC:

P.4; ¶ 9:    A.B. Dick's prior financing branch, A.B. Dick Capital, having closed, A.B. Dick routinely recommends OFC Capital as a financing source for companies interested in A.B. Dick products, provides OFC Capital financing forms to its customers, and represents on its website that a dedicated team of OFC Capital employees with knowledge of A.B. Dick's products provide a variety of financing arrangements for A.B. Dick customers. A.B. Dick acted as an agent for OFC Capital. By financing the equipment, OFC Capital acted in a way that showed it intended to assume responsibility for what A.B. Dick did once OFC Capital learned of all A.B. Dick's acts on its behalf.

P. 12, ¶ 49:    In addition to being entitled to rescission of the contract because AT Publishing did not accept and seasonably rejected nonconforming equipment, AT Publishing is entitled to rescission of the financing agreement on

grounds of fraud and misrepresentation by OFC Capital's agent, A.B. Dick.

None of these allegations of agency, even if taken as true, are sufficient in law to create a lawful agency, or even a question of fact as to whether an agency existed between A.B. Dick and OFC Capital. The only form of OFC that A.B. Dick provided for AT Publishing was an Application. Frank Martone could have tossed it and used one of the many leasing companies he has used before.

### b.  Claimed Wrongdoer Not Before Court

The only claims of fraud are against a non-party. In order to hold OFC liable for any A.B. Dick warranties or representations, AT Publishing must be able to prove fraud against A.B. Dick. That is not possible with A.B. Dick not before the court. Any evidence tending to prove any fraud against A.B. Dick will deny OFC a fair trial and due process of law and this is why: AT Publishing will be allowed to try and attribute its claim that the AB Dick representations, which OFC certainly could not and did not have any interest in, to OFC and, regardless of the plain meaning of the Master Lease terms, representing the bargain struck by and between the parties, hold OFC liable for the operation of the equipment through a failure to properly

deliver, or repair, or as not entitled to payment. This is not what the parties agreed to and these issues are not ones the parties to this case have litigated.

### c. Legal Requirement for Agency Not Met

Alternatively, the Lease Contract plainly denies any agency, and no legal authority supports an opposing claim. The act of "financing the equipment" does not create an agency of any kind. The business relationship between A.B. Dick and OFC Capital – involving referrals or providing forms – does not create that synergy of interest, nor identity of purpose necessary to establish a lawful principal-agent relationship. *See Whetstone Candy Company, Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir. 2003) holding: "For actual authority to exist such that the principal is bound, there must be an agency relationship, which requires: (1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the understanding; and (3) control by the principal over the actions of the agent." While the "appearance" of agency can be created where a principal knowingly allows an agent to act as if authorized, such an agency cannot be created "from the subjective understanding of the person dealing with the purported agent." 351 F.3d at 1078 quoting *Ja Dan, Inc. v. L-J, Inc.*, 898 F. Supp. 894, 900 (S.D. Fla. 1995). In Georgia there

must be a representation of agency and justifiable reliance thereon before an apparent agency can be created. *Kirchen v. Gateway Cmty. Serv. Bd.*, 2006 U.S. App. LEXIS 31877, *17 (11th Cir. Ga. Dec. 28, 2006).

In a finance lease context, the lessee claimed the supplier was the lessor's agent in an attempt to avoid the obligation to make lease payments in *Holcomb v. Commercial Credit Servs. Corp.*, 180 Ga. App. 451, 349 S.E. 2d 532, 524 (1986). The court held an agency could not arise from a mere assumption, nor an inference from the actions of the purported agent. *See McNatt*, 486 S.E. 2d at 808-09; *Woods v. Advanta Leasing Corp.*, 201 Ga. App. 844, 412 S.E. 2d 607, 608 (Ct. App. 1991); *Gulf Winds, Inc. v. First Union Bank*, 187 Ga. App. 383, 370 S.E. 2d 508 (Ct. App. 1988). At this stage of the case, however, AT Publishing has apparently abandoned its complaint allegations about OFC merely financing the transaction, and asserts, with reference only to the UCC, not UCC Article 2A, or any Ga. Code provision relating to finance leases, that OFC had a duty to deliver conforming goods as a "seller." AT Publishing is failing to discern between sales, or lease of goods and finance leases.

Even in the context of a finance lease, the allegations of AT Publishing are plainly distinguishable from the facts found to create a

supplier-lessor agency in *Potomac Leasing Co. v. Thrasher*, 181 Ga. App. 883(1), 354 S.E. 2d 210 (1987) where the supplier's employees were trained to negotiate finance leases and complete the forms for the finance lessor. Additionally, any reliance on the holding arising from the facts about agency presented in *Tri-Continental Leasing Corp. v. Burns*, 710 S.W. 2d 605 (Ct. App. Tx. 1986) is misplaced. The facts surrounding the supplier's employee's solicitation of a finance lease, and the lessor's later acceptance, that the court found showed agency were: (1) suggesting favorable tax effect; (2) presenting lease form of lessor; (3) negotiating, or otherwise setting terms and rent; and (4) filling in the lessor's form for Burns to execute in the same setting. The court's holding turned on its finding that the disclaimer of warranties provision in the lease was unconscionable and could not be used to defeat a claim of lack of consideration. It was this trial court finding that left the lessor exposed to commercial warranties and representation liability. In fact, the court noted the "substantial distinction" between the facts and holding in a previous case (*Southwest Park Outpatient Surgery, Ltd. v. Chandler Leasing Division*, 572 S.W. 2d 53 (Tex. Civ. App – Houston [1st Dist.] 1978) where the disclaimer provision insulated the lessor from warranty liability on summary judgment, even

though evidence showed the equipment did not meet its intended function. On Rehearing, the *Burns* court announced that the *Chandler* case and its principles were still good law.

There is no agency between A.B. Dick and OFC Capital in this case, as a matter of law, so no jury question is, or can be, presented on agency to impute any fraud of A.B. Dick to OFC Capital. AT Publishing alleges nothing more than that A.B. Dick "directed use," "recommended use" and "provided OFC Capital financing forms to its customers." Amended Complaint, p. 4, ¶ 9. The allegations and any evidence before the court today show AT Publishing does not allege A.B. Dick negotiated any terms, filled out any forms, or otherwise acted on the part of OFC in financing the Equipment. It never claims OFC ratified any representation about the Equipment. Rather, the only wrong leveled at OFC, as an affirmative defense to the counter-claim, is that it failed "to cure defects," yet no duty was articulated. Any and all allegations of fraud are against A.B. Dick, a non-party to this case. AT Publishing is not allowed to prove fraud against a non-party for purposes of imposing liability upon a party in derogation of the plain terms of its written agreement. That is what AT Publishing seeks to do in bringing in evidence: (1) about the prior press it had financed with

A.B. Dick; (2) the representations about what the Equipment it asked OFC to finance would do; and (3) the efforts to settle, the lawsuit, it calls a "cure." The allegations and any evidence before the court today show, as a matter of law, no agency arose between A.B. Dick and OFC Capital in connection with the lease of Equipment. *McNatt*, 486 S.E. 2d at 808. OFC Capital would have filed a Motion in Limine on these matters but did not because of the prior ruling of the court and the fact ATP had not advanced these positions at that time.

AT Publishing in the last few weeks of the pendency of this case, is seeking to have the court consider AB Dick was an agent of OFC based upon a theory that OFC had a duty to deliver conforming goods, even though AT Publishing specifically agreed in Paragraph 5 of the Master Lease that it would have to work out delivery with AB Dick. Any warranty about delivery was agreed to by AT Publishing and AB Dick before OFC was asked to finance the transaction. OFC did not have such a duty and had no liability for any problems with the operation of the equipment, particularly as it differed from AT Publishing's expectations. To force OFC to defend a duty it did not have for the sake of preserving its right to be paid,

is a reformation of the Master Lease that was never requested, and for which no proper legal foundation exist.

OFC Capital has participated in the preparation of the documents and designation of testimony, as well as trying to work with AT Publishing's attorney to help iron out issues and positions ahead of the pre-trial conference. At no time did OFC consider it was waiving any claims, nor permitting others, that are not pled or legally pled, ahead of the conference. With the change in designations on depositions, the allowance, or not of exhibits ahead of trial and the uncertainty of the issues to be tried, OFC finds there may be a need to reassess the exhibits and deposition designations depending upon what the issues before the jury will be. OFC continues its objection to offering any portions of the testimony of a witness it calls that are designated as testimony to be offered by AT Publishing.

II.   CONCLUSION.

The Master Lease, and the existing relationship AT Publishing had with AB Dick, before OFC was asked to finance the transaction, make plain there was no agency relationship whatsoever between OFC and AB Dick regarding AT Publishing, except when settlement efforts failed and OFC repossessed the equipment with AB Disk's help. AT Publishing's effort to

impose warranty duties, liabilities, or rights, as to "cure," has no basis in the allegations it brought in this case, its Answer to OFC's Counterclaim, the plain meaning of the terms of the Master Lease, nor to any statutory provision applicable to interpret the Master Lease. OFC respectfully requests the court reconsider its ruling and deny AT Publishing's effort to interject new and unsubstantiated issues into this case.

                                                    Respectfully submitted,

                                                    s/ Marion F. Walker
                                                    Marion F. Walker
                                                    Attorney for Defendant OFC Capital

OF COUNSEL:
FORD & HARRISON LLP

                                                    Randall J. Weddle
                                                    Alaska Bar No. 7206034
                                                    Attorney for Defendant OFC Capital

OF COUNSEL:
HOLMES, WEDDLE & BARCOTT, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that, on the 6th day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Michael T. Stehle
>Law Office of Michael Stehle, PC
>737 West 5th Ave., Suite 206
>Anchorage, Alaska 99501

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

>Not Applicable.

>s/ Marion F. Walker
>Of Counsel

Birmingham:16712.1