**ANKSTON, GRONNING, O'HARA,
SEDOR, MILLS, GIVENS & HEAPHEY**
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
ROBERT B. ATWOOD BUILDING
550 W. 7TH AVENUE, SUITE 1800
ANCHORAGE, ALASKA 99501
(907) 276-1711
FACSIMILE (907) 279-5358

WILLIAM M. BANKSTON
LEA E. FILIPPI
JON T. GIVENS
CHRIS D. GRONNING
CHRISTOPHER J. HEAPHEY
MICHAEL R. MILLS

BARBRA Z. NAULT
STEVEN T. O'HARA
JOHN M. SEDOR
BRIAN J. STIBITZ
THOMAS V. WANG, JR.

December 15, 2003

Jeffrey S. Herden, Esq.
General Counsel and Secretary
A.B. Dick Company
7400 Caldwell Avenue
Niles, Illinois 60714-4690

**via facsimile**

Re: A.T. Publishing & Printing v/ A.B. Dick Company and OFC Capital
Our File No.: A-3889-01

Dear Jeff:

I received your November 11, 2003, letter responding to A.T. Publishing's proposed settlement and have reviewed the technical aspects of AB Dick's position with our client. Although there are a few details yet to resolve, I think we are moving closer to a potential resolution and hope we can continue working together to reach a workable deal.

I would like to address the legal and factual issues you raise and then respond to AB Dick's latest proposal with respect to the technical operating parameters. First, I respectfully disagree with your suggestion that there is a need to litigate the forum and choice of law issues before liability and damages can be addressed. Under Alaska law, there are statutory limits on the power of parties to a commercial lease to indicate choice of law and choice of forum provisions in the lease. In particular, if the choice of law provision in the lease purports to elect the law of a jurisdiction other than the jurisdiction in which the lessee resides at the time the lease becomes enforceable or in which the goods are to be used, the choice is not enforceable. See Alaska Statute 45.12.106(a). Likewise, if the parties "chose" a forum that would not otherwise have jurisdiction over the lessee, the choice is not enforceable. See Alaska Statute 45.12.106(b); Alaska Statute 45.01.105. These provisions are squarely on point in this case.

Deft. Ex 52

ATP 000575

Attachment 8 p. 1

Jeffrey S. Herden
December 15, 2003
Page 2

Second, while I appreciate that publishing is an art which can be affected by a variety of factors, if the equipment itself is not operational or cannot perform as represented, these other variables are irrelevant. Obviously there are significant differences between our clients' views of what happened during AB Dick's prior attempts to make the press system functional. A.T. Publishing denies that its personnel were uncooperative or unavailable. Nonetheless, for purposes of this cure opportunity, A.T. Publishing believes it will be in everyone's best interest if AB Dick personnel perform all functions (pre-press through press operation) without the participation of A.T. Publishing personnel. Assuming AB Dick can demonstrate the press system is fully functional with its own personnel, A.T. Publishing will then make arrangements for its people to be trained as necessary. This approach will avoid any blame of A.T. Publishing employees if the press cannot be made to perform up to the agreed upon parameters.

With regard to the specific technical parameters under discussion, I believe we have reached an agreement on nearly all of the criteria. I reviewed your comments and questions with Frank Martone and have the following response:

1. Agreed: 500 impressions (up to four (4) colors per impression) per 30 minutes, with the press able to transition and continue the pace for at least 12 sets of 500 impressions within six (6) hours. This does not include time necessary to punch the plates or time spent changing paper stock. A.T. Publishing typically produces products at a Register of .001, which represents the standard in the industry. However, for purposes of this press, A.T. Publishing is willing to accept a slightly lower standard of .003 or better.

2. A.T. Publishing is not willing to eliminate all parameters with respect to "make ready" volume. One of the significant problems with this press system is the excess amount of waste generated during the "make ready" process. A.T. Publishing will accept a maximum of 75 sheets per color on a four color job (i.e., a total of 300 sheets for the make ready). This figure should address your concern with respect to color adjustments and paper in the press and is more than generous considering the press was intended for short run jobs of approximately 500 pieces.

3. Agreed: press must do 175 LPI (lines per inch/line screen) on a 95% dot range based on the plate manufacturer's specifications.

Jeffrey S. Herden
December 15, 2003
Page 3

    4.    Agreed: a minimum of 2400 DPI (dots per inch/resolution).

    5.    A.T. Publishing believes this parameter is self-explanatory and reasonable. Total ink coverage of at least 280% equals 4 colors at 70% per color.

    6.    Agreed: the press must be able to produce bleed coverage on an 11 x 17 sheet of paper using 1/8" color bars.

    7.    Agreed: A.T. Publishing will accept AB Dick's offer to include Post Script Level 3 with the system.

    8.    A.T. Publishing will not agree to eliminate this parameter because there must be some testing pattern to determine the effectiveness of ink coverage. Color must match ICC profiles, using some industry standard. GATF test form is one option. SWOP test pattern is another option. Please specify AB Dick's preference.

    9.    Agreed: in the interest of moving forward, A.T. Publishing will drop its request that AB Dick demonstrate the press is capable of printing envelopes during this cure opportunity.

    You should know that A.T. Publishing has not attempted to use the press system since AB Dick last had personnel on scene. The equipment has been sitting idle and unplugged since AB Dick technicians left Anchorage. A.T. Publishing is willing to allow technicians from AB Dick to inspect or do whatever preparatory work is necessary with the press before the test period of five (5) business days begins.

    Finally, I noted that your letter does not specifically address the proposed settlement agreement, a copy of which with the altered parameters is again attached to this letter. Please understand that A.T. Publishing will proceed to grant AB Dick's request for one final cure opportunity <u>only</u> if it has assurances that in the event the equipment does not perform as agreed, the transaction will be undone as set forth in the agreement. Recall that A.T. Publishing is walking away from significant damages even in this scenario. It is therefore essential that we enter into a written agreement before proceeding. Again, I have no problems with clarifying or minor changes to the agreement, but there must be an express understanding on this issue among all parties.

ATP 000577

Attachment 8 p 3

Jeffrey S. Herden
December 15, 2003
Page 4

I look forward to hearing from you soon.

Sincerely,

BANKSTON, GRONNING, O'HARA,
SEDOR, MILLS, GIVENS & HEAPHEY, PC

Barbra Z. Nault

BZN/jmv
Enclosure
cc:   Frank Martone
      Claudine Acquillon, OFC Capital (via fax)
A3889\01\LETTERS\LTRherdenBZN1

ATP 000578

Attachment 8 p 4