Michael T. Stehle
LAW OFFICE OF MICHAEL STEHLE, P.C.
737 W. Fifth Ave., Suite 206
Anchorage, Alaska 99501
Phone:  (907) 677-7877
Fax:     (907) 677-7894
Attorneys for Defendant AT Publishing, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| OFC CAPITAL, a division of<br>ALFA FINANCIAL CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>AT PUBLISHING, INC.,<br><br>    Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. A04-0011 CV (JWS)<br>)<br>) |

**DEFENDANT'S OBJECTIONS TO DRAFT JURY INSTRUCTIONS DATED JUNE 21, 2007, AND PROPOSED AMENDMENTS AND SUBSTITUIONS THERETO**

**Draft Instruction No. 1:**  No objection.

**Draft Instruction No. 2:**  No objection.

**Draft Instruction No. 3:**  No objection.

**Draft Instruction No. 4:**  No objection.

**Draft Instruction No. 5:**  No objection.

**Draft Instruction No. 6:**  Objection.  Defendant objects to Instruction No. 6 because the third paragraph misstates the law.  After acceptance, the UCC affords the right of revocation of acceptance to a finance lessee under certain circumstances set forth in § 2A-

517.  As the official comment to the UCC explains:

> Subsection (2) creates a special rule for finance leases, precluding revocation if acceptance is made with knowledge of nonconformity with respect to the lease agreement . . . . Revocation of acceptance of a finance lease is permitted if the lessee's acceptance was without discovery of the nonconformity (with respect to the lease agreement, not the supply agreement) and was reasonably induced by the lessor's assurances. . . . Revocation of acceptance is not prohibited even after the lessee's promise has become irrevocable and independent.

UCC § 2A-516 cmt. 1, *in* 1C *Uniform Laws Annotated*, at 770 (2004).

**Draft Instruction No. 7:**  Objection.  Instruction 7 misstates the law about what constitutes the contract or finance lease.  The instruction erroneously limits the contract to "the Master Lease Agreement, which included two schedules, one for the DPM 2340 plate maker and one for the 4995A four color printing press," and that taken "together constitute the finance lease in this case."  The term "contract" under 2A of the UCC is much broader than simply the words used in documents by the lessee and lessor:

> The term "contract" is in turn defined broadly to include more than the words used by the lessee and the lessor.  "'Contract' means the total legal obligation which results from the parties' agreement as affected by this Act and any other applicable rules of law." (Emphasis added).  By defining "contract" to include the "agreement" of the parties, the UCC makes usage of the trade, as well as course of performance and course of dealing, relevant because "agreement" is defined in section 1-201(3) to include those matters and "other circumstances."
>
>         *   *       *
>
> In addition, section 2A-202 allows the showing of usage of trade to supplement and explain an express term of the contract relating to the same matter.

3 William D. Hawkland & Frederick H. Miller, *Uniform Commercial Code Series* § 2A-

OBJECTIONS TO DRAFT JURY INSTRUCTIONS,
AND AMENDMENTS AND SUBSTITUTIONS
Case No. A01-0011 CV (JWS)
Page 2 of 17

509:01, at 764 (2000).

In addition, the comment to the analogous provision of section 2-301 in Article 2 gives meaning to the statement in section 2A-301 of Article 2A that a "lease contract is effective and enforceable according to its terms."

> In order to determine what is "in accordance with the contract" under this Article usage of trade, course of dealing and performance, and the general background of circumstances must be given due consideration in conjunction with the lay meaning of the words used to define the scope of the conditions and duties.

3 William D. Hawkland & Frederick H. Miller, *Uniform Commercial Code Series* § 2A-509:01, at 765-66 (2000) (quoting comment to UCC § 2-301).

Instruction No. 7 therefore misstates the law in stating that only these three documents constitute the "finance lease." Instruction No. 7 should instead state that "usage of trade, course of dealing and performance, and the general background of circumstances must be given due consideration in conjunction with the lay meaning of the words used" in written documents.

**Draft Instruction No. 8:** Objection. Instruction No. 8 erroneously omits a lessee's right of revocation and fails to include OFC's burden to prove that AT Publishing had a duty to begin making lease payments. While the Court has later included an instruction on OFC's burden to prove that payments became due, it omits that burden here. The instruction should read; "In order to prevail on its claim, OFC Capital must prove by a preponderance of the evidence that AT Publishing accepted the Leased Equipment, that the term of the lease had commenced and lease payments became due, and that AT Publishing failed to

make the lease payments." The last paragraph should include an additional sentence that AT Publishing alternatively claims that it rightfully revoked acceptance.

**Draft Instruction No. 9:** Objection. Draft Instruction No. 9 misstates the law regarding the relationship between the statutory provisions in Article 2A of the UCC, as adopted in Georgia, and the terms of a lease contract. In its Order on summary judgment dated August 27, 2004, the Court properly ruled that the substantive rights and protections in Article 2A, *.e.g,* § 2A-515, preempts contrary lease terms that would circumscribe such rights. Order at 12 ("While Article 2A provisions preserve the parties' freedom of contract, courts have recognized the U.C.C.'s application.") The Order quoted § 2A-301 which provides that "*[e]xcept as otherwise provided in this chapter*, a lease contract is effective and enforceable according to its terms between the parties . . . ." Order at 12, n.46 (emphasis in original). This ruling both established the law of the case and is legally correct.

The UCC's official comment to § 2A-301 explains that it creates a general rule that a lease contract is enforceable unless the lease terms are contrary to the rights and protections afforded under statutory provisions in Article 2A.

> This section establishes a general rule regarding the validity and enforceability of a lease contract. The lease contract is effective and enforceable between the parties and against third parties. *Exceptions to this general rule arise where there is a specific rule to the contrary in this Article.*

UCC § 2A-301 cmt. 1, *in* 1C *Uniform Laws Annotated*, at 715 (2004).

Leading commentators on the UCC further explain that this statutory provision

expressly provides that lease terms may not curtail specific statutory rights and protections set forth in Article 2A:

> Section 2A-301 is therefore essentially residual. It applies only to the extent that other provisions of the Uniform Commercial Code, primarily contained in Article 2A, or other superior rules of law, such as a consumer protection law under section 2A-104, do not establish contrary rules. . . . Unless one is familiar with these other rules that cut across or otherwise limit the effectiveness of the lease agreement, one might believe that freedom of contract would prevail in all situations.
>
>     *   *   *
>
> In short, although section 2A-301 establishes as a base that the lease agreement between the lessee and the lessor will be effective to delineate their rights and responsibilities, not only as between them and third parties such as purchasers and creditors, other Article 2A provisions (and other provisions elsewhere throughout the Code and in other law) limit or qualify this freedom of contract base.

3 William D. Hawkland & Frederick H. Miller, *Uniform Commercial Code Series* § 2A-301:02, at 395, 396 (2000). Article 2A provides specific substantive rights to a lessee entitling it to reject nonconforming goods (§ 2A-509), entitling it to a reasonable opportunity to inspect goods prior to any acceptance (§ 2A-515), and entitling it to revocation of acceptance under certain circumstances (§ 2A-517). These statutory rights under the UCC preempt any contrary lease provisions which might curtail them.

      As written, paragraph 5 of the Master Lease Agreement would curtail a lessee's right to a reasonable opportunity to inspect the goods, and is therefore preempted by Section 2A-515. While Section 2A-515 expressly states that a lessee must be afforded a *reasonable* opportunity to inspect the goods, which varies with the circumstances, paragraph 5 of the lease attempts to strictly limit the lessee's opportunity to inspect to 10

days after delivery regardless of the circumstances.  Reasonableness is a question of fact for the jury.  One need only consider whether a Lessor's attempt to limit a Lessee's opportunity to inspect to 1 day after delivery would be reasonable to see the incongruity between artificial deadlines imposed by the Lessor, with the UCC's grant of a reasonable opportunity.  Instruction No. 9 therefore misstates the applicable law.  The jury should be instructed that a lessee has a reasonable time to inspect the goods following delivery.

Only page two of Instruction No. 9, which states the governing law of acceptance under section 2A-515, should be given.  Moreover, this portion of Instruction No. 9 (or AT's Proposed Instruction No. 7 which also states the elements) should be given in conjunction with defendant's supplemental instruction No. 9.1 below which provides the definition of "reasonable opportunity to inspect."  The Ninth Circuit has held that a defendant in a civil action is entitled to instruction on a defense theory if it has a basis in the law and in the record.  *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987).  Defendant's proposed instructions regarding acceptance and a reasonable opportunity to inspect are grounded in section 2A-515 and the case law construing it, and in the testimony of Carolyn McClain.  Defendant is therefore entitled to such instructions.

**Draft Instruction No. 10:**  Objection.  The first paragraph of Instruction No. 10 misstates the law.  The applicable law does not require a lessee like AT Publishing to "install" equipment like a complex printing press, and the evidence in the record regarding trade custom is to the contrary.  In addition, a reasonable opportunity to inspect includes the right to put the product to its intended use or for testing to verify its capability to perform

as intended. This is the language set forth by the Court in its ruling on summary judgment which establishes the law of the case and is legally correct.

Paragraph 2 of Instruction No. 10 is consistent with the Court's order on summary judgment dated August 27, 2004 establishing the law of the case, and is legally correct.

Defendant's Proposed Instruction No. 7.1 below should be given instead, with the inclusion of Paragraph 2 in Draft Instruction No. 10. A defendant in a civil action is entitled to instruction on a defense theory if it has a basis in the law and in the record. *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987).

**Draft Instruction No. 11:** Objection. Draft Instruction No. 11 misstates the law because it omits AT Publishing's right of revocation. See objection to instruction No. 6 above.

**Draft Instruction No. 12:** Objection. Draft Instruction No. 12 misstates the law regarding rejection. As discussed in the Objection to Draft Instruction No. 9 above, rejection is a substantive statutory right and protection afforded a lessee and which therefore preempts any contrary lease terms. As written, the instruction states that a Lessor could limit a Lessee's time to reject to an arbitrarily short time following delivery regardless of the circumstances. Instead, under Article 2A, a rejection is effective if AT Publishing rejected the equipment within a *reasonable* time after its delivery and seasonably notified OFC Capital or its agents of the rejection. U.C.C. § 2A-509, O.C.G. § 11-21-509, AS 45.12.509.

The duration of the reasonable time in which AT Publishing has the right to reject will vary with the circumstances. *Colonial Pac. Leasing Corp. v. J.W.CJ.R. Corp.*, 977

P.2d 541, 547 (Utah App. 1999) (quoting 2A William D. Hawkland & Frederick H. Miller, *Uniform Commercial Code Series* § 2A-509:08, at 780-81 (1993)). AT Publishing has a reasonable opportunity to inspect the equipment, that is, to put the equipment to its intended use or to test to verify its capability to perform as intended, before it will be considered to have accepted it. *Id.* The affirmative duty to reject on pain of being considered to have accepted does not arise until the time given to AT Publishing to inspect has ended. *Id.*

Final rejection may come a considerable time after delivery if there has been a continuing series of complaints, negotiations, and attempted repairs prior to the formal notice of rejection. James J. White & Robert S. Summers, *Uniform Commercial Code* § 8-3, at 320 nn. 23 & 24 (5th ed. 2000) ("the policy [of giving an opportunity for cure and minmizing losses] is met if there has been a continuing series of complaints, negotiations, and attempted repairs prior to the formal rejection or revocation. This is so even though the formal notice comes a considerable time after the sale.")

Defendant's Proposed Instructions Nos. 3.1 and 4.1 neutrally and properly state the law of rejection and cure, which extends the time for any final rejection, and should be given instead. A defendant in a civil action is entitled to instruction on a defense theory if it has a basis in the law and in the record. *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987).

**Draft Instruction No. 13:** Objection. Draft Instruction No. 13 misstates the law of agency. An agency relationship may also exist under the law on the basis of apparent

authority. AT Proposed Instruction No. 2 neutrally and properly states the law of agency and should be given instead in conjunction with Defendant's Proposed Instruction No. 2.1 below, which also states the law on this point. A defendant in a civil action is entitled to instruction on a defense theory if it has a basis in the law and in the record. *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987).

**Draft Instruction No. 14:** Objection. Draft Instruction No. 14 misstates the law of agency in that it narrowly defines agency in terms of "acceptance or rejection." In the context of finance leases, courts have explained that "a person may be an agent in some respects but not others, for some purposes and not others." *Siemens Credit Corp. v. Kakos*, 1995 WL 29618, at *5 (N.D. Ill. 1995).

The evidence shows that OFC Capital initially demanded that AB Dick repay it after AT Publishing rejected the equipment, but then assented to AB Dick attempting to cure the nonconforming equipment instead. AB Dick then damaged this equipment and apparently lowered it resale value in doing so. AB Dick then repossessed and resold the equipment for OFC Capital, and expressly acted as its agent under the terms of OFC's own Master Lease Agreement. AB Dick may therefore be OFC's agent for purposes other than just "acceptance or rejection."

AT Proposed Instruction No. 2 and Defendant's Proposed Instruction No. 2.1 properly state the law and should be given instead. A defendant in a civil action is entitled to instruction on a defense theory if it has a basis in the law and in the record. *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987).

**Draft Instruction No. 15:** No objection.

**Draft Instruction No. 16:** No objection.

**Draft Instruction No. 17:** No objection.

**Draft Instruction No. 18:** No objection.

**Draft Instruction No. 19:** Objection. Plaintiff objects and preserves its argument that the liquidated damages clause is an unenforceable penalty clause. Moreover, instructions on damages should include the instruction on mitigation of damages set forth in the parties' Joint Statement of Issues. AT Publishing's Proposed Instruction No. 12 should be given with any damages instruction. A defendant in a civil action is entitled to instruction on a defense theory if it has a basis in the law and in the record. *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987).

**Draft Instruction No. 20:** Objection. The instruction should advise the jury that, if six jurors cannot answer "yes" to any question on the special verdict form, the answer is "no" consistent with the burden of proof and burden of persuasion imposed on the plaintiff. "[I]if the evidence is evenly balanced, such that a decision on the point cannot be made one way or the other, then the party with the burden of persuasion loses." *Lovell by and through Lovell v. Poway Unified Sch. Distr.*, 90 F.3d 367, 373 (9th Cir. 1996).

**Draft Instruction No. 21:** No objection.

**Draft Instruction No. 22:** Objection. The instruction should advise the jury that, if six jurors cannot answer "yes" to any question on the special verdict form, the answer is "no" consistent with the burden of proof and burden of persuasion imposed on the plaintiff.

"[I]if the evidence is evenly balanced, such that a decision on the point cannot be made one way or the other, then the party with the burden of persuasion loses." *Lovell by and through Lovell v. Poway Unified Sch. Distr.*, 90 F.3d 367, 373 (9th Cir. 1996).

**Additional Objections:**  Defendant further objects to the Draft Instruction packet because it fails to provide any instruction on revocation of acceptance under section 2A-517.  After acceptance, revocation of acceptance is a substantive right and protection afforded lessees under Article 2A and preempts any lease provision to the contrary as discussed in the Objection to Draft Instruction No. 6 above.  As the official comment to the UCC explains:

> Subsection (2) creates a special rule for finance leases, precluding revocation if acceptance is made with knowledge of nonconformity with respect to the lease agreement . . . .  Revocation of acceptance of a finance lease is permitted if the lessee's acceptance was without discovery of the nonconformity (with respect to the lease agreement, not the supply agreement) and was reasonably induced by the lessor's assurances. . . . Revocation of acceptance is not prohibited even after the lessee's promise has become irrevocable and independent.

UCC § 2A-516 cmt. 1, *in* 1C *Uniform Laws Annotated*, at 770 (2004).

**PLAINTIFF'S PROPOSED AMENDMENTS AND SUBSTITUTIONS:**


DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 7.1
(Modifies and replaces AT's Instr. No. 7)

Taking possession of the equipment is not determinative of acceptance, nor is the signing of a form acceptance before receipt of the equipment, nor the making of a lease payment.  A reasonable to inspect must allow an opportunity to put the equipment to its intended use or must allow for testing to verify its capability to perform as intended.

As a matter of law, AT Publishing could not accept the Leased Equipment before its delivery because AT Publishing could not have had a reasonable opportunity to inspect the Leased Equipment prior to its delivery.  The acceptance certificates signed by AT Publishing prior to delivery of the Leased Equipment therefore cannot by themselves establish that AT Publishing accepted the Leased Equipment.

*Colonial Pac. Leasing Corp. v. J.W.CJ.R. Corp.*, 977 P.2d 541, 545 (Utah App. 1999) ("Taking possession of the goods is not determinative of acceptance, nor is the signing of a form acceptance before receipt of the goods, nor the making of a lease payment. 'A reasonable time to inspect under the UCC must allow an opportunity to put the product to its intended use, or for testing to verify its capability to perform as intended.'")

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 2.1
(Supplements AT's Instr. No. 2)

Language in lease documents that no agency relationship existed, and denials of an agency relationship by witnesses of a leasing company, are not necessarily conclusive as to whether such an agency relationship existed. A person may be an agent in some respects but not others, and for some purposes but not others.

*Potomac Leasing Corp. v. Thrasher,* 354 S.E.2d 210, 212 (Ga. App. 1987) (in context of finance lease, "The denial by [lessor's] witnesses of an agency relationship and the language in [lessor's] lease documents that the [supplier] did not occupy the status of its agent are not necessarily conclusive as to the non-existence of such a relationship."); *Colonial Pac. Leasing Corp. v. McNatt,* 486 S.E.2d 804, 808 (Ga. 1997) (recognizing above rule of law in *Thrasher* remains good law); *Siemens Credit Corp. v. Kakos,* 1995 WL 29618, at *5 (N.D. Ill. 1995) (in context of finance lease, "a person may be an agent in some respects but not others, for some purposes and not others.")

OBJECTIONS TO DRAFT JURY INSTRUCTIONS,
AND AMENDMENTS AND SUBSTITUTIONS
Case No. A01-0011 CV (JWS)
Page 13 of 17

<u>DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 3.1</u>
(Modifies and replaces AT's Instr. No. 3)

AT Publishing claims that it rejected the equipment because it did not work as intended, or in other words, the equipment was nonconforming. AT Publishing may reject the delivered equipment if it fails in any respect to conform to the lease contract. A rejection is effective if AT Publishing rejected the equipment within a reasonable time after its delivery and seasonably notified OFC Capital or its agents of the rejection.

The duration of the reasonable time in which AT Publishing has the right to reject will vary with the circumstances. AT Publishing has a reasonable opportunity to inspect the equipment, that is, to put the equipment to its intended use or to test to verify its capability to perform as intended, before it will be considered to have accepted it. The affirmative duty to reject on pain of being considered to have accepted does not arise until the time given to AT Publishing to inspect has ended.

Final rejection may come a considerable time after delivery if there has been a continuing series of complaints, negotiations, and attempted repairs prior to the formal notice of rejection.

U.C.C. § 2A-509, O.C.G. § 11-21-509, AS 45.12.509; *Colonial Pac. Leasing Corp. v. J.W.CJ.R. Corp.,* 977 P.2d 541, 547 (Utah App. 1999) (quoting 2A William D. Hawkland & Frederick H. Miller, *Uniform Commercial Code Series* § 2A-509:08, at 780-81 (1993)); James J. White & Robert S. Summers, *Uniform Commercial Code* § 8-3, at 320 nn. 23 & 24 (5th ed. 2000) ("the policy [of giving an opportunity for cure and minmizing losses] is met if there has been a continuing series of complaints, negotiations, and attempted repairs prior to the formal rejection or revocation. This is so even though the formal notice comes a considerable time after the sale.")

OBJECTIONS TO DRAFT JURY INSTRUCTIONS,
AND AMENDMENTS AND SUBSTITUTIONS
Case No. A01-0011 CV (JWS)
Page 14 of 17

<u>DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 4.1</u>
(Modifies and replaces AT's Instr. No. 4)

If the equipment delivered by OFC Capital or A.B. Dick was rejected because it was nonconforming and the time for performance had not yet expired, OFC Capital or A.B. Dick may seasonably notify AT Publishing of the intention to cure and may then make a conforming delivery within the time provided in the lease contract.

It is reasonable for a lessee to believe a nonconformity will be cured where the supplier or lessor states that they will cure. Suppliers and lessors cannot delay rejection or revocation indefinitely by standing by to cure every defect that has or will emerge. Final rejection or revocation may be justified when the lessee loses confidence in the equipment.

James J. White & Robert S. Summers, *Uniform Commercial Code* § 8-4, at 326, 327 nn. 6, 7, & 9 (5th ed. 2000) ("[W]here a whole series of defects arises seriatim, the seller cannot bar revocation indefinitely simply by repairing, and standing by to repair every defect that has or will emerge. As one court put it, there comes a time where "enough is enough." And even if the repairs are not so numerous as to fall in the "enough is enough" category, they may justify revocation when the buyer loses confidence in the goods, or as it is sometimes put, the buyer's "faith is shaken."; "[W]hen is it reasonable for the buyer to believe that the nonconformity would be cured. The most obvious case is where the seller states that it will cure.")

OBJECTIONS TO DRAFT JURY INSTRUCTIONS,
AND AMENDMENTS AND SUBSTITUTIONS
Case No. A01-0011 CV (JWS)
Page 15 of 17

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 8.1
(Supplements AT's Instr. No. 8)

Revocation may come long after delivery and still be timely where the delay is attributable to efforts to repair the equipment, and there has been a continuing series of complaints, negotiations, and attempted repairs prior to the formal notice of rejection. Changes in the condition of the equipment caused by accidental damage which are then fully repaired are not substantial changes in the condition of the equipment.

James J. White & Robert S. Summers, *Uniform Commercial Code* § 8-4, at 328 nn. 16, 19, & 20 (5th ed. 2000) ("Especially where the delay is attributable to efforts to repair the goods, the revocation may even come long after sale and still be timely."; "But reasonable changes due to good faith efforts by the buyer to make the goods usable generally do not bar revocation; neither do changes (e.g. accident damage to a car) which the buyer has fully repaired . . . . Continued use while awaiting an attempted cure does not necessarily equate to a substantial change."); White & Summers, *supra* § 8-3, at 320 nn. 23 & 24 ("the policy [of giving an opportunity for cure and minimizing losses] is met if there has been a continuing series of complaints, negotiations, and attempted repairs prior to the formal rejection or revocation. This is so even though the formal notice comes a considerable time after the sale.")*Colonial Pac. Leasing Corp. v. J.W.CJ.R. Corp.,* 977 P.2d 541, 544 (Utah App. 1999) (courts look to case law construing provisions of UCC Article 2 in interpreting Article 2A because it is generally accepted these Articles are analogous, and citing commentators in footnote 1 to that effect)

DATED this 21st day of June, 2007, at Anchorage, Alaska.

s/ Michael T. Stehle
Michael T. Stehle, ABA No. 9106054

**Certificate of Service**

I hereby certify that on June 21, 2007
a true and correct copy of the foregoing was
electronically mailed to the following:

Marion Walker
mfwalker@fordharrison.com, mwilkens@fordharrison.com, dbivins@fordharrison.com.

Randy Weddle
rweddle@hwb-law.com,     bfontaine@hwb-law.com,     jekstrand@hwb-law.com,
kwarne@hwb-law.com.

s/ Michael T. Stehle
Michael T. Stehle