Randall J. Weddle, Esq.
HOLMES WEDDLE & BARCOTT, PC
701 W. 8th Avenue, Suite 700
Anchorage, Alaska 99501
Phone: (907)274-0666
Fax: (907)277-4657

Marion F. Walker
FORD & HARRISON LLP
2100 Third Avenue North, Suite 400
Birmingham, Alabama  35203
Phone: (205) 244-5916
Fax:            (205) 244-5901

Attorney for Plaintiff OFC Capital, a division of Mid-Country Bank

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| **OFC CAPITAL, a division of** ) | |
| **MID-COUNTRY BANK** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | USDC No. 3:04-cv-0011 (JWS) |
| ) | |
| **A.T. PUBLISHING, INC.** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

_____

**PLAINTIFF OFC CAPITAL'S MOTION FOR JUDGMENT**
**AS A MATTER OF LAW PURSUANT TO RULE 50(a)**
_____

Now Comes Plaintiff, OFC Capital, Inc. ("OFC"), at the close of Defendant's

evidence and pursuant to FRCP 50, and moves the Court to enter judgment as a matter of

law in its favor for the following independent reasons.

I. **JUDGMENT AS A MATTER OF LAW STANDARD**

Rule 50(a)(1) of the Federal Rules of Civil Procedure, using terminology to replace the former "directed verdict" and "judgment notwithstanding the verdict" categories, provides:

> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

A party may make such a motion at any time before the case is submitted to the jury and may renew it after trial in conjunction with a new trial motion, all of which OFC has done here. Fed. R. Civ. P. 50(a)(2), 50(b).

II. **SEPARATE AND INDEPENDENT GROUNDS FOR JUDGMENT AS A MATTER OF LAW AGAINST DEFENDANT**

**FIRST GROUND**

Judgment as a matter of law on OFC's claim for breach of the Master Lease Contract and Schedules thereto ("Lease Contract") is due to be granted because the evidence shows that AT Publishing accepted the Lease Contract and breached it by failing to make the required payments.

AT Publishing accepted the Lease Contract and is bound by its terms. Acceptance is a finite element of an enforceable contract. First, AT Publishing failed to plead a defense of non-acceptance of the Lease Contract as a defense, thereby waiving the right to assert it. *See* Fed.R.Civ.P. 8(c). Second, AT Publishing's Amended Complaint and Answer to OFC's counterclaim admits acceptance. In paragraph 11 of its

Amended Complaint, AT Publishing avers that OFC paid A.B. Dick over $300,000.00 for the equipment at issue. This averment affirms that AT Publishing knew that it had not rejected the equipment and that it was bound by the terms of the Lease Contract to make payments to OFC. Third, in pleading rescission of the Lease Contract in its Amended Complaint, AT Publishing inherently admits acceptance of it. Fourth, AT Publishing's trial testimony admits acceptance of the Lease Contract. AT Publishing CEO Frank Martone testified at trial that he had hired an attorney to "get him out of the lease." This is an implicit admission that he had already accepted the Lease Contract on behalf of AT Publishing and that AT Publishing is bound its terms. Martone's testimony shows that he believed the only way he could get the company out of the Lease Contract was if his attorney could somehow get it rescinded or revoked.

After accepting the terms of the Lease Contract, AT Publishing breached key provisions and defaulted on them. Paragraph 13 of the Master Lease Contract defines multiple "Events of Default," including failure to pay, come "hell or high water." AT Publishing defaulted by its failure to make lease payments to OFC as they came due under the Master Lease. AT Publishing's belief that it was justified in doing so is irrelevant. Judgment as a matter of law against AT Publishing is due to be entered because AT Publishing accepted the Lease Contract and breached it through non-payment.

**SECOND GROUND**

AT Publishing cannot prevail on an argument that it rejected the Lease Contract. First, AT Publishing waived rejection of the Lease Contract as an affirmative defense by failing to plead it in its Answer to OFC's Counter-Claim or as a "claim" in its Amended

Complaint.[1]  Second, even if AT Publishing had advised AB Dick of "problems" with the equipment, AT Publishing utterly failed to prove in any respect that it provided a rejection of the equipment by "written objections" as required in paragraph 5 of the Master Lease.

The Lease Contract unambiguously set out the intentions of the parties as to "acceptance," "rejection" and a "reasonable time," such that its language is controlling. See Ga. Code § 1-102(3).  Therefore, to reject the Lease Contract, AT Publishing must have timely inspected the equipment, and, if it found the equipment to be non-conforming, it must have submitted to OFC its written objections to the Lease Contract and must have done so within a reasonable time.  AT Publishing did not.  In fact, CEO Frank Martone clearly testified that he never rejected the Lease Contract or the equipment.  Furthermore, the Lease Contract provided that written notice of rejection must be made within ten (10) days following inspection of the equipment.  It is undisputed, and CEO Frank Martone confirmed, that the equipment was fully installed and that training had been provided to AT Publishing employees <u>17 days</u> before Carolyn McLain of OFC ever called [to ask if OFC could pay the supplier, A.B. Dick.]  Seventeen days is clearly a reasonable time for the inspection and testing necessary to know if the equipment works.  Mr. Martone testified that it only took a matter of hours to determine if the press worked correctly.  This admission undisputedly demonstrates that AT Publishing had a reasonable opportunity for inspection of the equipment.

---

[1] AT Publishing plead an affirmative defense that it rejected the equipment but not that it rejected the Lease Contract or that it notified OFC of its rejection within a reasonable time according to the terms of the Lease Contract.

OFC CAPITAL'S MOTION FOR JUDGMENT AS A MATTER OF LAW
Case No. 3:04-cv-0011-JWS
Page 4 of 9

AT Publishing wrongly claims that its <u>failure</u> to taken any action regarding the equipment satisfies the legal duty to communicate rejection of the Lease Contract to OFC. Inaction does not equate to rejection of the Lease Contract. Paragraph 5 of the Lease Contract provides lessee must actually provide written objections to OFC within 10 days of inspection of the equipment, or OFC may conclusively presume specific acceptance as stated in the Master Lease. The purported efforts to "cure" which OFC contends were nothing more than efforts to settle a lawsuit, do not forgive, nor waive, nor extend AT Publishing's obligation to act affirmatively if rejection was intended. AT Publishing had the burden of proving rejection and failed to do so. <u>See</u> Ga. Code § 11-1-201(26); Ga. Code § 11-2A-509; Ga. Code § 11-2A-516(3); and the terms of Paragraph 5, Master Lease.

## THIRD GROUND

AT Publishing did not plead as an affirmative defense in its Answer to the Counter-Claim or as a claim in its Amended Complaint that OFC owed it any warranties or representations about the condition of the equipment or that its obligation to pay OFC was affected by the condition of the equipment itself. Each schedule in the Lease Contract is a finance lease (a fact to which AT Publishing acknowledged in paragraphs 5 and 11 of its Amended Complaint), and the Lease Contract contains a "hell or high water" clause. See Lease Contract, paragraph 4. Because the transaction is a classic finance lease, the lessor has no input on the goods being transferred between the other two parties to the transaction. Basically, OFC's role is that of the bank, and A.B. Dick's role is that of the retailer seller. As a consequence, the finance lessor has no responsibility whatsoever for the condition of the property transferred, and it had no

obligation to deliver conforming goods. See *Gen. Elec. Capital Corp. v. Nat'l Tractor Trailer Sch., Inc.*, 667 N.Y.S.2d 614, 618-19 (N.Y. Sup. Ct. 1997) (citations omitted).

The law of the case recognizes there is no warranty or representation liability owed by OFC to AT Publishing. Only A.B. Dick owed warranties to AT Publishing in the equipment transaction, as stated in the supply agreement listed on the back of the Sales Order. Furthermore, paragraph 4 of the Lease Contract explicitly articulates the absence of warranty by OFC to AT Publishing, and AT Publishing's acceptance of the Lease Contract explicitly acknowledges that OFC had no input on the selection of the Equipment and would have no responsibility for its condition. The Lease Contract expressly assigned from OFC to AT Publishing any and all warranties attached to the Equipment. Judgment as a matter of law on OFC's claim for breach of the Master Lease Contract and Schedules thereto is therefore due to be entered against AT Publishing on the grounds that AT Publishing's breach of warranty defense fails.

## FOURTH GROUND

AT Publishing cannot escape the terms of the Lease Contract based on an agency theory. AT Publishing has asserted the defense that A.B. Dick breached the Lease Contract by failing to provide conforming goods and that, because A.B. Dick was acting as an agent of OFC, OFC also breached the Lease Contract in the same manner, thereby releasing AT Publishing from its terms. The Lease Contract plainly denies any agency, and the straightforward act of financing the equipment does not create an agency relationship between A.B. Dick and OFC Capital. *See Colonial Pacific Leasing Corp. v. McNatt*, 268 Ga. 265, 486 So. 2d 804, 807 (1997). Providing referrals and sharing forms does not create a synergy of interest or identity of purpose necessary to establish a lawful

principal-agent relationship. *See Whetstone Candy Company, Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir. 2003). The allegations of AT Publishing are plainly distinguishable from the facts found to create a supplier-lessor agency in *Potomac Leasing Co. v. Thrasher*, 181 Ga. App. 883(1), 354 S.E. 2d 210 (1987) (supplier's employees were trained to negotiate finance leases and complete the forms for the finance lessor.) AT Publishing has presented no evidence to show that A.B. Dick has acted as an agent for OFC, and Frank Martone specifically admitted to the court that he had no knowledge of any such evidence. Furthermore, the "hell or high water clause" requires AT Publishing to pay OFC under the terms of the Lease Contract, regardless of any acts it claims were done by AB Dick as its agent. AT Publishing's agency defense fails, and judgment as a matter of law is due to be entered against it on this ground.

## FIFTH GROUND

AT Publishing cannot escape the terms of the Lease Contract because OFC failed to "cure" defects in the Equipment. AT Publishing claims it owes no duty to pay OFC because of A.B. Dick's alleged failure to supply conforming goods or to cure defects in non-conforming goods. However, the cure of defects in leased equipment has nothing to do with a finance lessor. Once AT Publishing accepted the Lease Contract, any attempts at cure by A.B. Dick do not affect OFC's financial relationship with AT Publishing. Indeed, the Lease Contract places no duty on OFC to present conforming goods or to cure defects. AT Publishing introduced evidence about: (1) the prior press it had financed with A.B. Dick; (2) the representations about what the Equipment could do; and (3) the efforts to settle the lawsuit filed June 2003, which it calls a "cure." This evidence is

irrelevant because OFC owes no such duties to AT Publishing, and judgment as a matter of law is due to be entered against AT Publishing.

## SIXTH GROUND

AT Publishing is in default of the Lease Contract and is due to pay to OFC all amounts recoverable under paragraph 14 of the Master Lease Contract, which shall include:

> an amount equal to the sum of (i) any accrued and unpaid Lease Payments as of the date of demand plus interest at the rate of eighteen percent (18%) per annum; (ii) the present value of all future Lease Payment reserved in the such Schedule(s) and contracted to be paid over the unexpired term of such Schedule(s) discounted at a rate of 6 percent per annum (hereinafter the "Agreed Discount Rate"); (iii) all commercially reasonable costs and expenses incurred by Lessor in any representation, recovery, storage, repair, sale, re-lease or other disposition of the Equipment including reasonable attorneys' fees; (iv) the present value of the agreed upon or estimated residual value of the Equipment (as of the expiration of the relevant Schedule) discounted at the Agreed Discount Rate; and (v) Lessee's obligations under any indemnity issued hereunder, if then determinable, plus interest at eighteen percent (18%) per annum.

There was no evidence to refute the calculation of the liquidated damages clause contained in the Lease Contract provided by Mr. Leas of OFC in the amount of $418,237.91. There is no genuine issue as to any material fact as to this calculation or the entitlement of OFC to these damages. Hence, OFC Capital is entitled to a judgment as a matter of law in the amount of $418,237.91.

WHEREFORE, premises considered, Plaintiff prays the Court enter judgment as a matter of law as to all of the above claims for there is no genuine issue as to any material fact following the receipt of evidence in this case.

Dated this 22nd day of June 2007.

          s/ Marion F. Walker
          Marion F. Walker
          Attorney for Plaintiff OFC Capital

OF COUNSEL:
FORD & HARRISON LLP

          By: s/ Randall J. Weddle
          Randall J. Weddle
          701 West 8th Avenue, Suite 700
          Anchorage, Alaska 99501
          Phone: (907) 274-0666
          Fax: (907) 277-4657
          Rweddle@anc.hwb-law.com
          Alaska Bar No. 7206034

LOCAL COUNSEL:
HOLMES, WEDDLE & BARCOTT, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that, on the 22nd day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Michael T. Stehle
    Law Office of Michael Stehle, PC
    737 West 5th Ave., Suite 206
    Anchorage, Alaska 99501

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

    Not Applicable.

          s/ Randall J. Weddle
          Randall J. Weddle

X:\4103\18823\pld\MtnJudgment.062207.DOC