Michael T. Stehle
LAW OFFICE OF MICHAEL STEHLE, P.C.
737 W. Fifth Ave., Suite 206
Anchorage, Alaska 99501
Phone:  (907) 677-7877
Fax:     (907) 677-7894
Attorneys for Defendant AT Publishing, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| OFC CAPITAL, a division of<br>ALFA FINANCIAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AT PUBLISHING, INC., | ) | |
| | ) | Case No. A04-0011 CV (JWS) |
| Defendant. | ) | |
| _____ | ) | |

## MOTION AND MEMORANDUM REGARDING JURY INSTRUCTIONS ON REVOCATION OF ACCEPTANCE

Pursuant to the Court's request in Chambers on June 22, 2007, Defendant AT

Publishing has taken the jury instruction packet edited by the Court on that date and

included instructions on revocation of acceptance.[1]  The instructions on revocation of

acceptance are Nos. 19 & 20, and other preceding instructions have been revised to include

mention to revocation of acceptance without otherwise changing their substance.  The

---

[1] Defendant AT Publishing preserves its objections to the Court's edited jury instruction
packet to the extent these instructions differ from (1) the proposed jury instructions filed
by AT Publishing on June 4, 2007 and (2) AT Publishing's Objections to the Court's Draft
Instructions and Proposed Substitute Instructions filed on June 22, 2007.

Court also requested that Defendant file this memorandum in support of these jury instructions on revocation of acceptance.

The parties included revocation of acceptance in their Joint Statement of Issues previously filed with this Court, and also set forth the elements for revocation of acceptance in that Joint Statement of Issues. AT Publishing then included these elements for revocation of acceptance in its Proposed Jury Instruction No. 8 filed with this Court on June 4, 2007. (Docket 155, at p. 9) Revocation of acceptance is therefore squarely at issue, and is supported by the governing law, *i.e.*, the UCC as adopted in Georgia.

Section 2A-517(1)(b)&(4)[2] of the UCC affords a finance lessee the substantive statutory right to revocation of acceptance. This statutory right, as well as the other statutory rights granted lessee's in Article 2A, limit the freedom of contract and preempt lease terms to the contrary. In its Order on summary judgment dated August 27, 2004, this Court properly ruled that the substantive rights and protections in Article 2A preempt contrary lease terms that would circumscribe such rights. Order at 12 ("While Article 2A provisions preserve the parties' freedom of contract, courts have recognized the U.C.C.'s application.") In support of this ruling, this Court quoted § 2A-301 which provides that "*[e]xcept as otherwise provided in this Article*, a lease contract is effective and enforceable according to its terms between the parties . . . ." Order as 12, n.46 (emphasis in original).

The UCC's Official Comment to § 2A-301 explains that it creates a general rule that a lease contract is enforceable unless the lease terms are contrary to the rights and protections afforded under statutory provisions in Article 2A.

MOTION AND MEMORANDUM REGARDING JURY INSTRUCTIONS
ON REVOCATION OF ACCEPTANCE
Case No. A01-0011 CV (JWS)
Page 2 of 10

This section establishes a general rule regarding the validity and enforceability of a lease contract. The lease contract is effective and enforceable between the parties and against third parties. <u>Exceptions to this general rule arise where there is a specific rule to the contrary in this Article</u>.

UCC § 2A-301 cmt. 1, *in* 1C *Uniform Laws Annotated*, at 715 (2004) (emphasis added).[3]

Thus, where the UCC grants a statutory right of revocation that right may not be abrogated by contract.

The UCC sets up a basic structure to protect certain rights of lessees as well as to protect certain rights of lessors. The protections granted to the lessor surround its right to receive payments once goods have been accepted. The protections granted to the lessee

---

[2] O.C.G. § 11-2A-517(1)(b)&(4).

[3] Leading commentators on the UCC expressly recognize that this statutory provision provides that lease terms may not curtail specific statutory rights and protections set forth in Article 2A:

> Section 2A-301 is therefore essentially residual. It applies only to the extent that other provisions of the Uniform Commercial Code, <u>primarily contained in Article 2A, or other superior rules of law</u>, such as a consumer protection law under section 2A-104, do not establish contrary rules. . . . <u>Unless one is familiar with these other rules that cut across or otherwise limit the effectiveness of the lease agreement, one might believe that freedom of contract would prevail in all situations.</u>

> \*        \*        \*

> In short, although section 2A-301 establishes as a base that the lease agreement between the lessee and the lessor will be effective to delineate their rights and responsibilities, not only as between them and third parties such as purchasers and creditors, <u>other Article 2A provisions (and other provisions elsewhere throughout the Code and in other law) limit or qualify this freedom of contract base</u>.

3 William D. Hawkland & Frederick H. Miller, *Uniform Commercial Code Series* § 2A-301:02, at 395, 396 (2000). Thus, a lease cannot abrogate the statutory protections afforded lessees, which includes a lessee's right to revocation.

MOTION AND MEMORANDUM REGARDING JURY INSTRUCTIONS
ON REVOCATION OF ACCEPTANCE
Case No. A01-0011 CV (JWS)
Page 3 of 10

surround the lessee's right to inspect the goods to ensure that they are in good working condition before being required to accept or reject them. Thus, a lessee does not have to accept nonconforming goods (goods that are not in good working condition); such goods may be rejected. Section 2A-509. And before being required to accept or reject, a lessee has a right to inspect and test the goods to ensure that that are in good working condition and fit for there intended purpose. Section 2A-515.

Once accepted, the lessee is generally bound to keep and pay for the goods. Section 2A-516. However, a lessee cannot be forced to keep and pay for nonconforming goods if acceptance was made without knowledge of the nonconformity, and the lessee's acceptance was reasonably induced by the lessor's assurances. Section 2A-517(1)(b) ("A lessee may revoke acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to the lessee if the lessee has accepted it . . . without discovery of the nonconformity [and] the lessee's acceptance was reasonably induced [ ] by the lessor's assurances . . . ."). Thus, for example, if after delivery and installation but before the lessee has had a reasonable opportunity to inspect the goods and discover a nonconformity, the lessor requests the lessee to sign an acceptance certificate assuring the lessee that it merely signifies delivery and not acceptance, or that the lessor will cure any later discovered nonconformity, any acceptance reasonably induced by such assurances is revocable. In such a case the lessee accepted the goods without discovery of the nonconformity and the acceptance was reasonably induced by the lessor's assurances. Section 2A-517(1)(b).

---

Where the goods are nonconforming and the lessee rightfully rejects them or justifiably revokes acceptance of them, the lessor is deemed to have breached the lease contract and the lessee may cancel the contract. While the lessor is not the party that *physically* delivers or supplies the goods, it is the party that *tenders* those goods under the lease contract; the goods are delivered to and installed on the lessee's property, and remain on the property for the term of the lease, pursuant to the terms of the lease contract. The goods are not there for any other reason or pursuant to any other contract. The lease contract is the contract pursuant to which the goods are tendered to the lessee. Thus, where the goods are not in good working condition the lessor is said to have tendered nonconforming goods under the lease contract and the lessor is, therefore, in breach of the lease contract. Section 2A-508 ("If a lessor fails to deliver the goods in conformity to the lease contract (section 2A-509) or repudiates the lease contract (section 2A-402), or a lessee rightfully rejects the goods (section 2A-509), or justifiably revokes acceptance of the goods (section 2A-517), then with respect to the goods involved . . . the lessor is in default under the lease contract and the lessee may:(a) cancel the lease contract.").

A lessee's excusal from having to pay for nonconforming goods that were rightfully rejected or for which acceptance was justifiably revoked, is expressly recognized in section 2A-516 which sets forth the effect of acceptance. Section 2A-516 provides in pertinent part:

> (1) A lessee must pay rent for any goods accepted in accordance with the lease contract, with due allowance for goods rightfully rejected or not delivered.

MOTION AND MEMORANDUM REGARDING JURY INSTRUCTIONS
ON REVOCATION OF ACCEPTANCE
Case No. A01-0011 CV (JWS)
Page 5 of 10

(2) A lessee's acceptance of goods precludes rejection of the goods accepted.  In the case of a finance lease, *if made with knowledge of a nonconformity*, acceptance may not be revoked because of it.

The comments to section 2A-516 make explicit that revocation of a finance lease *is permitted* if acceptance was made without knowledge of the nonconformity and acceptance was reasonably induced by the lessor's assurances.   UCC § 2A-516 cmt. 1.

Moreover, the lessee's right to reject a finance lease is expressly recognized in the comments to section 2A-407 dealing with the irrevocable nature of finance leases.  Comment 1 provides: "This section extends the benefits of the classic 'hell or high water' clause to a finance lease that is not a consumer lease. . . . The provisions of this section remain subject to the obligation of good faith (sections 2A-103(4) and 1-203), *and the lessee's revocation of acceptance* (Section 2A-517)."  Thus, there should be no question that a lessee has a right to revoke acceptance of a finance lease in certain circumstances.

As set forth in the parties' Joint Statement of Issues, a finance lessee has the right to revocation of acceptance under in Section 2A-517(1)(b)&(4) if four elements are satisfied:

(1) the nonconformity of the goods substantially impaired its value to the lessee,

(2) the lessee accepted the equipment without discovery of the nonconformity,

(3) the  acceptance was reasonably induced by the assurances of the lessor, and

(4) the revocation of acceptance occurred within a reasonable time after the lessee discovered or should have discovered the ground for it and before any substantial

MOTION AND MEMORANDUM REGARDING JURY INSTRUCTIONS
ON REVOCATION OF ACCEPTANCE
Case No. A01-0011 CV (JWS)
Page 6 of 10

change in condition of the equipment which is not caused by the nonconformity. Revocation is effective once the lessee notifies the lessor.

UCC § 2A-517(1)(b)&(4), O.C.G. § 11-2A-517(1)(b)&(4).  These are the same four elements set forth in AT Publishing's Proposed Jury Instruction No. 8 filed on June 4, 2007 (Docket 155, at p.9), and also set forth in Instruction No. 19 filed on June 25, 2007 pursuant to the Court's request in Chambers on June 22, 2007.

Both rejection and revocation have "time" elements.  That is, rejection or revocation must be made seasonally or within a reasonable time after discovery of the nonconformity.  The timing of any revocation is inexorably linked to the supplier's and the lessor's right to cure.  Section 2A-513 permits either or both the supplier and/or lessor to attempt to cure nonconforming equipment rejected by the lessee.  Thus, any final rejection or revocation may come months after the initial delivery, the delay caused in part by a supplier's request to cure.  Instruction No. 20 filed on June 25, 2007 includes factors that leading commentators have indicated should be considered in determining both these timing issues as well as whether element (4) above regarding changed condition is satisfied.

· "[T]hat policy [of giving an opportunity for cure and minimizing losses] is met if there has been a continuing series of complaints, negotiations, and attempted repairs prior to the formal rejection or revocation.  This is so even though the formal notice comes a considerable time after the sale."  James J. White & Robert S. Summers, *Uniform Commercial Code, Hornbook Series,* § 8-3, at 320 n. 23 (5th ed. 2000).

· "Especially where the delay is attributable to efforts to repair the goods, the revocation may even come long after sale and still be timely."  White & Summers, *supra* § 8-4, at 328 n. 16 (5th ed. 2000).

MOTION AND MEMORANDUM REGARDING JURY INSTRUCTIONS
ON REVOCATION OF ACCEPTANCE
Case No. A01-0011 CV (JWS)
Page 7 of 10

• "[R]easonable changes due to good faith efforts by the buyer to make the goods usable generally do not bar revocation; neither do changes (e.g. accident damage to a car) which the buyer has fully repaired . . . ."  White & Summers, *supra* § 8-4, at 328 n. 18.

AT Publishing notes that these quotes concern revocation under Article 2, but that courts look to the analogous provisions of Article 2 in construing Article 2A.  *Colonial Pac. Leasing Corp. v. J.W.CJ.R. Corp.,* 977 P.2d 541, 544 (Utah App. 1999).  "Sections 2A-508 through 2A-517 are relatively straightforward modifications of the Article 2 rules on rejection, cure, revocation, acceptance and the like.  *Id.* at 544 n.1 (quoting James J. White & Robert S. Summers, *Uniform Commercial Code, Practitioners Treatise Series,* §§ 14-1 and –2, at 24-28 (4th ed. 1995)).

These instructions are therefore supported in law, and the evidence in the record further supports these jury instructions.  There is evidence from which the jury could find that AB Dick was OFC's agent for purposes of acceptance or rejection.  OFC has itself testified and argued that it required AB Dick to provide the IWAC's and that OFC was entitled to rely on such documents to signal acceptance.  There is also evidence that AT Publishing was induced to sign the certificates based upon the assurance that it signified only delivery, not acceptance.  Thus the jury could find that AT Publishing's acceptance was reasonably induced by OFC's (agent's) assurances.  There is also evidence that at the time of the alleged acceptance AT Publishing did not know of the nonconformity.  The evidence also shows that the nonconformity substantially impaired its value to AT Publishing.  Finally, although the evidence is disputed about whether Ray Seaward or Clint Seyer is responsible for the wrench that damaged the equipment, the evidence shows that

MOTION AND MEMORANDUM REGARDING JURY INSTRUCTIONS
ON REVOCATION OF ACCEPTANCE
Case No. A01-0011 CV (JWS)
Page 8 of 10

the damaged cylinder was fully repaired by AB Dick personnel so that there was no substantial change in its condition. Moreover, any change in condition was caused by the nonconformity. The problems with the press are what necessitated the repairs in the first instance. Accordingly because a defendant in a civil action is entitled to instruction on a defense theory if it has a basis in the law and in the record, *Hasbrouck v. Texaco, Inc.,* 842 F.2d 1034, 1044 (9th Cir. 1987), it would be reversible error to not instruct on revocation.

Finally, without limiting or waiving its other or previous objections defendant again sets forth several issues which, if not corrected, will result in reversible error. First, defendant is entitled to an instruction on mitigation. Mitigation is applicable even where the parties expressly provide for remedies upon default. For instance, a landlord and tenant may agree for remedies to a landlord upon the tenant's default, but any subsequent claim for damages is still subject to the duty to mitigate. So too, there is evidence in the present case from which the jury could find that OFC has failed to mitigate its damages and failure to instruct on mitigation is reversible error.

Section 2A-210 provides that any affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise. On nearly identical facts, where the supplier solicits the lease business for the lessor, the Georgia courts have affirmed a lessor's liability under section 2A-210 for the affirmations or promises of the supplier. Such express warranties may exist whether the lessee accepts or rejects the equipment. Thus, it is conceivable that the jury could find that AT Publishing

MOTION AND MEMORANDUM REGARDING JURY INSTRUCTIONS
ON REVOCATION OF ACCEPTANCE
Case No. A01-0011 CV (JWS)
Page 9 of 10

accepted the goods but also that OFC was liable for express warranties of its agent AB

Dick.  Thus, failure to instruct on this theory is reversible error.

Instruction No. 17 dealing with agency is a misstatement of the law.  It implies that

OFC and AB Dick could enter into an undisclosed agency relationship whereby AB Dick

solicits AT Publishing's signature on the AB Dick IWAC, without disclosing that it was

doing so for the benefit of OFC, and that would bind AT Publishing to OFC.  Giving this

instruction without modification is reversible error.  To the extent the Court is unwilling to

modify this instruction, defendant withdraws its request for the instruction as it believes it

is an incorrect statement of the law and would amount to reversible error.

DATED this 25th day of June, 2007, at Anchorage, Alaska.


s/ Michael T. Stehle_____
Michael T. Stehle, ABA No. 9106054


**Certificate of Service**

I hereby certify that on June 25, 2007
a true and correct copy of the foregoing was
electronically mailed to the following:

Marion Walker
mfwalker@fordharrison.com,  mwilkens@fordharrison.com,  dbivins@fordharrison.com.

Randy Weddle
rweddle@hwb-law.com,          bfontaine@hwb-law.com,          jekstrand@hwb-law.com,
kwarne@hwb-law.com.


s/ Michael T. Stehle_____
Michael T. Stehle


MOTION AND MEMORANDUM REGARDING JURY INSTRUCTIONS
ON REVOCATION OF ACCEPTANCE
Case No. A01-0011 CV (JWS)
Page 10 of 10