Randall J. Weddle, Esq.
HOLMES WEDDLE & BARCOTT, PC
701 W. 8th Avenue, Suite 700
Anchorage, Alaska 99501
Phone: (907)274-0666
Fax: (907)277-4657

Marion F. Walker
FORD & HARRISON LLP
2100 Third Avenue North, Suite 400
Birmingham, Alabama  35203
Phone: (205) 244-5916
Fax:             (205) 244-5901

Attorney for Plaintiff OFC Capital, a division of Mid-Country Bank

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| **OFC CAPITAL, a division of MID-COUNTRY BANK** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**A.T. PUBLISHING, INC.** )<br>)<br>)<br>**Defendant.** ) | **USDC No. 3:04-cv-0011 (JWS)** |

_____

**OFC CAPITAL OPPOSITION AND MEMORANDUM REGARDING AT PUBLISHING'S PROPOSED JURY INSTRUCTIONS ON REVOCATION OF ACCEPTANCE**

_____

In one of the two charge conferences the court held with counsel for the parties,

AT Publishing's continuous insistence that OFC Capital had an obligation to deliver

"conforming good" pursuant to the Lease Agreement, prompted the court to request AT

Publishing provide suggested jury instructions and a memorandum to justify its position. This opposition is filed in response to AT Publishing's submission.

  I.  <u>Joint Statement of Issues</u>.

AT Publishing included a claim of revocation of acceptance in its answer to OFC Capital's counter-claim. With the court's pretrial instruction for the parties to develop a joint statement of issues, OFC Capital agreed, at AT Publishing's insistence, that all issues, whether for the court or the jury, be included. Seeing no contrary authority in the pretrial order, OFC Capital agreed for a number of questions, most of which were questions for the court, to be included. The question of revocation in a finance lease was one of those issues. The statement of law taken from Georgia Code § 11-2A-517 is correct, but not applicable in this case.

  II.  <u>Revocation Under the Finance Lease.</u>

  A.  Paragraph Four of the Master Lease reads as follows:

> **NO WARRANTIES**. Lessee acknowledges that Lessor is not the manufacturer of the Equipment nor the manufacture's agent or dealer. Lessee further acknowledges that it has selected the Equipment listed in each Schedule and has made all determinations as to the size, design and capacity thereof, and that Lessee has selected the Supplier from whom Lessor is to purchase the Equipment. **LESSEE FURTHER ACKNOWLEDGES THAT LESSOR HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF THE EQUIPMENT, ITS FITNESS FOR ANY PARTICULAR PURPOSE, THE QUALITY OR CAPACITY OF THE MATERIALS IN THE EQUIPMENT OR WORKMANSHIP IN THE EQUIPMENT, THE ABSENCE OF LATENT DEFECTS, THE ABSENCE OF PATENT OR OTHER INFRINGEMENT, LESSORS' TITLE TO THE EQUIPMENT, COMPLIANCE OF THE EQUIPMENT WITH GOVERNMENTAL OR LEGAL**

> **REQUIREMENTS, NOR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER.** It is agreed that Lessor shall have no obligation to install, erect, test, adjust, repair, or service the Equipment. No defect or unfitness of the Equipment at any time shall relive Lessee of the obligation to pay any lease payment or any other obligation hereunder or under any Schedule. As between Lessor and Lessee, Lessor hereby assigns to Lessee whatever assignable interests Lessor may have in and to any supplier or manufacture's warranty or agreement issued with respect to the Equipment: provided, however, that Lessor shall not incur any duties arising out of any such warranties or agreements. Lessee shall be entitled to enforce any and all rights with respect to such warranties and agreements at its sole cost and expense and in its own name.

While AT Publishing refers to a section regarding revocation and a limitation on the party's right to contract, it provided no citation of authority whatsoever. AT Publishing's failure to provide authority for its arguments has been mentioned by OFC Capital in the past. AT Publishing attempts to distinguish the applicability of Georgia Code § 11-2A-301 addressing the enforceability of lease contracts according to the terms between the parties. This is as a matter of law a general rule. *See cmt. 1*. AT Publishing does not cite to any exception. Comment for (j) to § 11-2A-301 reads:

> Finally, § 2A-311 allows parties to alter the statutory priorities by agreement.

Merely pointing out exceptions to the enforceability of lease contracts exists, does not create an applicable exception in this case.

    B.    <u>Georgia Code § 2A-517(1)(b)(4)</u>.

In the first instance, OFC Capital points to paragraph 15 of the Master Lease entitled **Lessee's Waivers**. This paragraph reads:

> To the extent permitted by applicable law, Lessee hereby waives and (sic) all rights and remedies conferred upon a Lessee by § 2A-508 – 2A-522 of the UCC.

AT Publishing has not in its most current memorandum, nor in any filings submitted to this court leading up to this trial, presented any basis or authority for this court to ignore the parties agreement at paragraph 15 of the Master Lease. As a matter of fact, AT Publishing has failed in any submission whatsoever to refer to the Master Lease in any particular. OFC Capital maintains that AT Publishing has waived applicability of the above-referenced sections so that § 2A-517 is not applicable in this case. AT Publishing has not provided any authority as to why such a waiver is not permitted by law.

Assuming *arguendo*, that sections 11-2A-516, 517 have some applicability in this case, or lessee's waiver of these sections is not permitted, OFC Capital notes that AT Publishing has labored under a misunderstanding of the limited right of revocation a lessee enjoys under a finance lease. To clarify this situation, reference to § 11-2A-516 is helpful. In subparagraph (2) there is the <u>proviso</u> that under a finance lease revocation may be had if acceptance was "made with knowledge of a non-conformity." Comment 1 to that section explains the difference in revocation of acceptance of a "supply contract" and a "lease agreement". To avoid any miscommunication, OFC Capital will take the liberty to quote the entire comment in its entirety.

> Subsection (2) creates a special rule for finance leases, precluding revocation if acceptance is made with knowledge of non-conformity with respect to the lease agreement, as opposed to the supply agreement; this is not inequitable as the lessee has a direct claim against the supplier. § 2A-209(1). Revocation of acceptance of a finance lease is permitted if the lessee's acceptance was without discovery of the non-conformity (with respect to

> the lease agreement, not the supply agreement) and was reasonably induced by the lessor's assurances. § 2A-517(1)(b). Absent exclusion or modification, the lessor under a finance lease makes certain warranties to the lessee. Sections 2A-210 and 2A-211(1). Revocation of acceptance is not prohibited even after the lessee's promise has become irrevocable and independent.[1] § 2A-407 official comment. Where the finance lease creates a security interest, the rule may be to the contrary. *General Electric Credit Corp. of Tennessee v. Ger-Beck Mach. Co.*, 806 F.2d 1207 (3rd Cir. 1986).

§ 11-2A-516, *comments* 1.

    The right of revocation of acceptance of goods set out in § 11-2A-517(1)(b) is still referring to the lease agreement being accepted, as opposed to the supply agreement. A finance lessor is not held to any warranties and paragraph four makes that plain as to OFC Capital in this case. AT Publishing has not addressed this fact at all. What this means is that there is no duty by OFC Capital to "deliver conforming goods", as contended by AT Publishing in submissions to the court and orally in the judge's charge conference. Without a duty to deliver conforming goods, the physical non-conformity or non-operational aspect of any of the goods is simply not within the purview of any acceptance or rejection of the lease agreement. That is why the acceptance of the supply agreement, as evidenced by the installation warranty activation certificates AB Dick asked AT Publishing to sign to evidence the delivery, installation and acceptance of the equipment under the <u>Supply Agreement</u>, must take place before the lessee – AT Publishing begins to have a reasonable opportunity to inspect the equipment. The Lease Agreement, which contains no warranties whatever regarding the operation of the

---

[1] This is referring only to those finance leases where certain warranties to the lessee by the lessor survive which is not the case with the Master Lease between OFC Capital and AT Publishing.

MOTION TO RE-OPEN PLAINTIFF'S REBUTTAL CASE IN ORDER TO RECEIVE EXHIBITS
Case No. 3:04-cv-0011-JWS
Page 5 of 12

equipment, only refers to the equipment listed on the Lease Schedule, that is the actual physical pieces of equipment listed, as opposed to their actual operational condition.

When OFC Capital called on March 24, 2003, and asked Frank Martone if he was ready for the lease to begin and whether or not payment could be made to the supplier, he was being asked to accept the Lease Agreement. Acceptance with respect to OFC Capital under the Master Lease, as the court is well aware, can take place only after AT Publishing had a reasonable opportunity to inspect the equipment. When AB Dick obtained the IWAC's, AT Publishing's opportunity to inspect the press and DPM 2340 began. OFC Capital did not seek acceptance of the Lease Agreement until March 24, 2003. OFC Capital also refers the court to its pretrial brief pages 10-15. *See United States Achievement Academy, LCC v. Pitney Bowes, Inc.*, 48 F. Supp.2d. 389, 405 (E.D. Ky 2006).

The definition of "conforming goods" or performance under Georgia Code § 11-2A-103 is:

> 'Conforming' goods or performance under a lease contract means goods or performance that are in accordance with the obligation under the lease contract.

*See United States Achievement Academy, LCC v. Pitney Bowes, Inc.*, 204 U.S. Dist. Lexis 29238(E.D. Ky) *rev'd on other grounds, at \*13-14*.

Since the IWAC's have been mentioned here, OFC Capital will take the opportunity to bring the court's attention to Georgia Code § 11-1-202 entitled Prima-Fascia Evidence by Third Party Documents which reads:

> A document in due form purporting to be a bill of lading, policy or certificate of insurance, official weigher's or inspectors' certificate, consular invoice, or any other

MOTION TO RE-OPEN PLAINTIFF'S REBUTTAL CASE IN ORDER TO RECEIVE EXHIBITS
Case No. 3:04-cv-0011-JWS
Page 6 of 12

> document authorized or required by the contract to be issued by a third party shall be prima-fascia evidence of its own authenticity and genuineness and of the facts stated in the document by the third-party.

OFC Capital requests that a jury charged to this effect be jury.

AT Publishing's suggestion that AB Dick acted as OFC's agent in getting its own documents signed to evidence its own performance under the Supply Agreement has no basis in fact or law.  OFC Capital disavowed agency both in the Master Lease, in the Purchase Order and through testimony on the stand.  AT Publishing has not offered any evidence whatsoever that there was any agency between AB Dick and OFC Capital for any reason whatsoever.   OFC Capital has objected to any charges concerning agency.

AT Publishing has failed to demonstrate how, assuming *arguendo* § 2A-517 applies despite its waiver under paragraph 15 of the Master Lease, how there was any breach of the Lease Contract when all of the equipment identified to the Master Lease Schedules was in fact delivered and installed at AT Publishing by AB Dick. The only performance obligation OFC Capital had was to pay the supplier when the lessee "signed off" on the lease and instructed OFC to pay.

Nevertheless, AT Publishing continues in its claim that OFC somehow had some responsibility for the operation of the equipment, including some responsibility to cure, if the equipment did not operate satisfactorily.  There is no cite for any of these claims in any document presented by AT Publishing and that is because there is no law to substantiate such a claim.  Georgia Code § 11-2A-513 regarding cure simply does not apply in this case.  For that reason OFC Capital has repeatedly requested the court instruct the jury not to consider any discussion, testimony or evidence regarding "cure"

which in effect were merely settlement negotiations following the filing of the lawsuit. Even if there were not settlement negotiations following the filing of the lawsuit, OFC Capital had no obligation to cure. It may be that AT Publishing was pursuing its right of revocation of the Supply Contract against AB Dick; that in no way affected AT Publishing's obligation to make lease payments to OFC Capital.

AT Publishing states that Sections 2A-508 – 517 have been noted by commentators to be straightforward modifications of Article 2 on rejection, cure, revocation, and acceptance. It is for that reason AT Publishing was specifically asked to waive those provisions in paragraph 15 of the Master Lease and it did so. AT Publishing has failed to identify any authority whatever that would prevent AT Publishing from lawfully waiving these provisions.

   III.   **Agency**.

AB Dick was not an agent of OFC Capital for purposes of acceptance or rejection.

Despite AT Publishing's claim to the contrary, OFC Capital does not operate with agents and did not need anyone to assist with discussions regarding acceptance of the Lease Agreement. In order to afford its lessee a reasonable time to inspect the equipment, OFC Capital requires the supplier, in this case AB Dick, to provide evidence that the lessee (AT Publishing) agreed that the equipment was delivered, installed and accepted from the supplier. With these assurances in hand, OFC Capital was able to provide the reasonable opportunity to inspect the equipment and to call for a sign off on the entire lease transaction after inspection had occurred. That is what happened in this case. AT Publishing has not been able to refute that even on paper or with testimony.

It is interesting that AT Publishing continues to refer to "non-conformity" in its memorandum without ever identifying what the "non-conformity" actually was. No testimony has done so either. A number of witnesses have referred to "problems" and some for the first time have claimed the press never operated at all. This testimony has been directly refuted. Whether it operated or not is simply not a concern of OFC Capital under the Master Lease but is a matter to be addressed with AB Dick. OFC Capital does, however, have concern with the reasonable opportunity to inspect and contends training for one week and another full week with access to operate the equipment is a matter of law sufficient to constitute a reasonable opportunity to inspect. This is especially true where Frank Martone testified that the equipment was not operated at all the second week before he was called by Carol McClain about acceptance of the lease.

The court in *Dealing Leasing* v. *Allen*, 26 Kan. App.2d 744, 754 (Ct. App. 1999) explained that express or implied agency can only be created by the intentions of the principal and agent and not by appearance perceived by a third party or by what a third party should have known. OFC Capital contends the only claim of agency was made by AT Publishing in its amended complaint; the claims of which have all been dismissed by the court. Moreover, the claim of agency in the amended complaint by AT Publishing was merely that OFC Capital's financing of the equipment made it an agent of AB Dick. This was certainly not sufficient to put OFC Capital on notice of any agency with respect to acceptance or rejection, nor to alert it as to what the real claims of agency by AT Publishing were. As OFC Capital pointed out to the court in charge conference, AT Publishing's claims of "agency" continue to evolve as the case progresses and throughout the trial of the case.

Once again with respect to agency, AT Publishing failed to refer to the Master Lease terms in any respect.

IV. **Mitigation**.

AT Publishing took the opportunity in writing the court to once again bring up its claim that mitigation should be considered by the jury. In doing so, AT Publishing once again failed to address the lease provision contained at paragraph 14(i) which reads in the second paragraph:

> Lessee hereby releases Lessor from any obligation it might otherwise have to sell or re-lease the Equipment after any repossession thereof recognizes that Lessor is the owner of the Equipment and has the right to possess and dispose of the Equipment upon termination of the relevant Schedule in any event.

AT Publishing offered no cite for its opposing contention. *See Moreland Auto Shop, Inc. v. TSC Leasing Corp.*, 216 Georgia App. 438, 454 S.E.2d 626, 628 (1995).

V. **Conclusion**.

Given liberty to suggest differing jury charges, AT Publishing submitted changes to the court's proposed charges numbers 7, 9, 12, 19, 20, and 21 to include references to revocation of acceptance. However, AT Publishing failed to identify revocation here with respect to OFC Capital as revocation of the "Lease Agreement" as opposed to the "Supply Agreement" with AB Dick and failed to demonstrate how the limited right applies here. Before any non-functioning part of the equipment can be attributed to OFC Capital, so far as negating the obligation to make lease payments, AT Publishing has to

demonstrate that paragraph 4 regarding complete disclaimer of warranties has no effect. It cannot do that and AT Publishing has never mentioned paragraph 4 of the lease or any paragraph whatsoever.

 Dated this 25th day of June 2007.

            s/ Marion F. Walker
            Marion F. Walker
            Attorney for Plaintiff OFC Capital

OF COUNSEL:
FORD & HARRISON LLP

            By: s/ Randall J. Weddle
            Randall J. Weddle
            701 West 8th Avenue, Suite 700
            Anchorage, Alaska 99501
            Phone: (907) 274-0666
            Fax: (907) 277-4657
            Rweddle@anc.hwb-law.com
            Alaska Bar No. 7206034

LOCAL COUNSEL:
HOLMES, WEDDLE & BARCOTT, P.C

## CERTIFICATE OF SERVICE

I hereby certify that, on the 25th day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Michael T. Stehle
> Law Office of Michael Stehle, PC
> 737 West 5th Ave., Suite 206
> Anchorage, Alaska 99501

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

> Not Applicable.

> s/ Randall J. Weddle
> Randall J. Weddle

X:\4103\18823\pld\MtnReOpen.062507.DOC