Randall J. Weddle, Esq.
HOLMES WEDDLE & BARCOTT, PC
701 W. 8th Avenue, Suite 700
Anchorage, Alaska 99501
Phone:    (907)274-0666
Fax:         (907)277-4657

Marion F. Walker
FORD & HARRISON LLP
2100 Third Avenue North, Suite 400
Birmingham, Alabama  35203
Phone:    (205) 244-5916
Fax:         (205) 244-5901

Attorney for Plaintiff OFC Capital, a wholly-owned subsidiary of Mid-Country Financial Corporation

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| OFC CAPITAL, a division of ALFA FINANCIAL CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>A.T. PUBLISHING, INC.<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 3:04-cv-0011-JWS<br>)<br>)<br>)<br>) |

### RESPONSE TO COURT ORDER REGARDING REPLY TO OPPOSITION TO ATTORNEY FEE PETITION

NOW COMES OFC Capital ("OFC"), by and through its attorney of

record, and for response to the Order of the Court (Doc. 226) and as

addendum to the initial Reply (Doc. 215) says as follows:

I.  **INTRODUCTION**

After successfully prevailing on a counterclaim in this case, OFC filed a petition for attorney fees and costs (Doc. 198) which is now pending before the Court.  OFC's counterclaim was filed when A.T. Publishing initiated an action to declare it had no obligation to OFC and OFC countered with a claim to enforce the lease agreement between the parties.  Defendant disavowed any lease whatsoever and insisted there were questions of fact as to whether a lease existed.  Consequently, Defendant never made any payment pursuant to the lease and disavowed any agreement whatsoever.  The jury found OFC and Defendant had entered into a binding lease and determined the amount of money Defendant was obligated to pay OFC pursuant to the lease.  OFC then prevailed on the claims Defendant filed and also prevailed on the counterclaim.

In its initial reply, OFC relied upon the case of *Cascade Crossing II, LLC v. RadioShack Corp.*, 446 F. Supp. 2d 1348 (N.D. Ga. 2006) for the proposition that not all cases involving leases made *O.C.G.A. § 13-1*-11 applicable to the award of attorneys fees.  (Doc. 215, p. 3).  Since that time the Supreme Court of Georgia received a certified question from the

Eleventh Circuit Court of Appeals[1] that states: "Whether O.C.G.A. 13-1-11 applies to and limits the award of attorneys' fees and costs <u>in this particular case</u> – where the landlord under a commercial lease agreement files suit against a tenant seeking the collection of past due rent, as well as a declaration of other contractual rights of the parties – and, therefore, precludes an award of full attorneys' fees and costs as provided in the lease agreement." (emphasis added)  In answering this question, the Georgia Supreme Court rendered its *en banc* opinion, with three justices dissenting, in *RadioShack Corp. v. Cascade Crossing II, LLC*, 2007 Ga. LEXIS 788 (Ga. 2007) holding: "The statute applies <u>at least where as here</u>, past due rent is recovered, and the only other relief is declaratory and governs the future enforceability or amount of the tenant's rent obligation.  Compare *Insurance Industry Consultants v. Essex Investments,* [249 Ga. App. 837, 844(4), 549 S.E. 2d 788 (Ga. 2001)].  To hold otherwise would create distinctions that have no basis in the statutory language and purpose.  Therefore, *OCGA Section 13-1-11* applies to the lease between Cascade and RadioShack and requires that the certified question posed by the Eleventh Circuit be answered in the affirmative."  *Id.* at *13 (emphasis added).

---

[1] *Cascade Crossing II, LLC v. Radio Shack Corp.*, 480 F.3d 1228, 1332 (11th Cir. 2007).

## II. CIRCUMSTANCES OF THE INSTANT CASE DO NOT FALL WITHIN THE PURPOSE OF THE STATUTE

    A.   <u>The purpose of the statute was to give notice and avoid a penalty on a liquidated evidence of indebtedness.</u>

The statute in question was passed by the Georgia Legislature in the 1890-91 Session and reads as follows:

> <u>13-1-11 Validity and enforcement of obligations to pay attorneys' fees upon notes or other evidence of indebtedness</u>.
>
> (a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions:
>
> (1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness;
>
> (2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interesting owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00;

>   (3)  The holder of the note or other evidence of indebtedness or his attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees.  If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement.  The refusal of a debtor to accept delivery of the notice specified in this paragraph shall be the equivalent of such notice.
>
>   (b)  Obligations to pay attorney's fees contained in security deeds and bills of sale to secure debt shall be subject to this Code section where applicable.

In 1984 the court in *Boddy Enterprises, Inc. v. City of Atlanta*, 171 Ga. App. 551, 320 S.E. 2d 374, 375 (Ga. App. 1984), explained the purpose of *O.C.G.A. Section 13-1-11(a)(3),* having to do with the notification requirement of the statute as follows:

>   The 10-day notice requirement of *O.C.G.A. Section 13-1-11(a)(3)* was designed to apprise a debtor in default under the note or deed of the creditor's intention to bring suit for the full amount due as well as the attorney fees specified in the instrument, and, as analyzed by the Supreme Court, "is clearly intended to require the creditor to give the debtor an opportunity to meet his

obligation without incurring additional expenses of litigation in the nature of attorney fees." (Citations omitted).

This holding is consistent with that of *Demere v. Germania Bank*, 116 Ga. 317, 42 S.E. 488-89 (Ga. 1902) cited by the Georgia Supreme Court in *RadioShack*, 2007 Ga. LEXIS *11 in finding that *Section 13-1-11* should be read broadly enough to include leases. But the Court in *Demere*, in interpreting this very section, and much closer in time to the date of its passage, said a bit more directly what the intent and purpose was in the passage of this section. The *Demere* court held as follows:

> [A]n undertaking to pay attorneys fees in addition to principal and interest is in the nature of an agreement for a penalty, and the statute under consideration is to take away the penalty in certain cases, and is remedial. Then, too, it must be remembered that the cardinal principle in the interpretation of any statute is the intention of the legislature "keeping in view at all times the old law, the evil, and the remedy." Pol. Code, Section 4, par. 9. If necessary to give an act its true intent, courts will even depart from its letter. Before the passage of this act, a stipulation to pay attorneys fees subjected the debtor to a penalty for a failure to pay his indebtedness, even though he honestly could not pay and made no resistance to the creditor's suit. <u>This was the evil at which the act was directed, the remedy being to relieve the debtor from the payment of attorneys fees except where he litigated with the creditor and resisted the suit on grounds which were not in any part upheld,</u>

>   <u>- except where "a plea [was] filed by the defendant
>   and not sustained."</u>  (emphasis added)

It is this statutory intent that is advanced by use of the phrase in subparagraph (a) ". . . [i]f such note or other indebtedness is collected by or through an attorney <u>after maturity</u> . . .".  *O.C.G.A. § 13-1-11(a)(3)* (emphasis added).  This is what the court understood in *Insurance Industry Consultants, Inc. v. Essex Investments, Inc.*, 249 Ga. App. 837, 549 S.E. 2d 788, 794 (Ga. App. 2001) when it held that *O.C.G.A. Section 13-1-11*, while applicable to some actions involving leases, is not applicable to all claims for attorney fees based on lease provisions (citing *Boddy Enterprises, supra*).  The court in *RadioShack* held "the purpose of *O.C.G.A. Section 13-1-11* is to prevent a contractual provision for attorneys fees from constituting a penalty for failure to pay an indebtedness."  2007 Ga. LEXIS at *11 citing *General Electric Credit Corp. of Georgia v. Brooks*, 242 Ga. 109, 113, 249 S.E. 2d 596 (1978).  Most of the legal analysis by the *RadioShack* court was to arrive primarily at its conclusion that *Section 13-1-11* applied to commercial, as well as residential and other non-commercial leases.  This principle is not contested by OFC Capital, except to note the Section is not always applicable every time a Lease is the subject of litigation.

>    B.   The recent case does not change the inapplicability of *O.C.G.A. Section 13-1-11* to the instant case.
>
>         1.   The Georgia Supreme Court in *RadioShack*.

OFC Capital maintains the answer to the certified question provided in *RadioShack* at 2007 Ga. LEXIS 788 *13 does not apply in the instant case to deprive OFC Capital of the benefit of its bargain under the Master Lease it had with A.T. Publishing.  The reason for this is that the certified question only went to the particular facts in the *RadioShack* case where an existing tenant, who did not deny the validity and existence of the lease, who had paid rent and was continuing to pay rent, implicitly acknowledging the validity of the lease, and the court found against these facts that where "past due rent is recovered" and the only other contest has to do with declaratory relief, regarding future enforceability, the statute applies to limit attorney fees.  The question submitted and the Georgia court's response was very clear that the holding applied only to that particular case, based upon the court's reading of the legislative intent.

A.T. Publishing sued OFC Capital to declare there was no enforceable lease and OFC Capital counterclaimed alleging there was indeed an enforceable lease and demanded the benefit of its bargain, including an award of attorney fees, so that the issue of the existence of a lease *vel non*

was joined and presented to the jury for a resolution. There was no "maturity" acknowledged between the parties because A.T. Publishing denied a lease. These facts do not fall within the purpose and intent of the statute, nor the factual background for the holding in *RadioShack* at 2007 Ga. LEXIS 788 *13. The *RadioShack* court did not overrule *Essex Investments* but, in fact, cited it and confirmed its holding as an integral part of the statute itself, because the Legislature had not changed the statute in light of that holding and others. *RadioShack*, 2007 Ga. LEXIS 788 at **4-6. *See City Food Mart, Inc. v. Bell Atlantic Tricon Leasing Corporation*, 218 Ga. App. 57, 460 S.E. 2d 525, 527-28 (1995) where an equipment lessor sued the lessee and personal guarantor following a default and the court held the award of attorney fees was not a penalty but "[t]hese were charges paid by Bell Atlantic for which appellants agreed, in paragraph 9 of the lease, to be responsible." This case is contrasted with the type of case addressed by the statute, which is where the fact of and amount of the indebtedness, plus the interest, is known and not contested after maturity and the debtor does not pay. In that situation the *Demere* court said the Legislature intended to prohibit a creditor from filing after maturity so that the debtor would be

penalized in paying not only principal and interest on an uncontested debt, but attorney fees as well.

>   2.   The issue of notice under the statute is moot in the present case.

It cannot be disputed that the purpose of the statute is to provide notice to a debtor, once the amount due is known, hence the condition precedent "after maturity," so the debtor may satisfy the debt ahead of incurring additional interest costs and attorney fees. Where the lessee initiated the lawsuit, with the intent to avoid its obligations in the lease, and provokes a counterclaim that seeks all damages, in addition to attorney fees and costs, as provided for under the lease, the lessee has received notice, and by his own suit demonstrates his awareness of the claim on the indebtedness and fees.

Those are the facts in this case and A.T. Publishing has known, from the Spring of 2004, when OFC Capital filed its counterclaim, that attorney fees were being sought along with all damages available to it under the lease. A.T. Publishing could have satisfied the demand, if it had not chosen to litigate, and paid less than the fees allowed by the statute. It is a perversion of the statute for A.T. Publishing to defend a lawsuit in which attorney fees and costs are demanded for three and one-half years and then

claim a lack of a 10-day notice avoids and limits attorney fees. Any lack of notice, as A.T. Publishing is now claiming, is in the nature of an affirmative defense which was not set forth in its Answer; likewise it was not set forth as an issue in the joint statement of issues the parties created prior to trial so that, as the court made plain, there would be no surprises in the trial of the case. Rule 16, FRCP allows the court to order the parties to simplify the issues (R. 16(c)(1)) which occurred in this case. (Doc. 117). The Comments to Subdivision (c) read in part:

> Counsel bear a substantial responsibility for assisting the court in identifying the factual issues worthy of trial. If counsel fail to identify an issue to the court, the right to have the issue tried is waived.

The parties specifically discussed the award of attorney fees in the formulation of the joint stipulation of issues. The parties agreed the attorney fees and costs would be submitted with regard to R. 54, not *O.C.G.A. § 13-1-11* which A.T. Publishing did not mention. This fact, likewise, was not present in *RadioShack*. That stipulation removed any application of *O.C.G.A. § 13-1-11* from this case, unless a party is able to feign a stipulation and withdraw it at his advantage, after reliance by the other has occurred.

Contrary to the facts in RadioShack, A.T. Publishing never made one payment under the lease but maintained for four years that no lease existed. OFC Capital is entitled to attorney fees and costs for proving to the jury that a lease did exist, not for recovering rents after maturity of a jointly acknowledge lease.

WHEREFORE, PREMISES CONSIDERED, OFC Capital renews its Petition, as Amended, for attorney fees and costs and prays the Court include additional amounts, as it sees fit, for expedited responses OFC Capital was required to file in connection with the Motion to Stay, and prays this Court will grant any other, further or different relief to which it may be entitled in the premises.

                                s/ Marion F. Walker
                                Marion F. Walker
                                Attorney for Defendant OFC Capital

OF COUNSEL:
FORD & HARRISON LLP

                                Randall J. Weddle
                                Alaska Bar No. 7206034
                                Attorney for OFC Capital

OF COUNSEL:
HOLMES, WEDDLE & BARCOTT, P.C.

# CERTIFICATE OF SERVICE

I hereby certify that, on the 11th day of December, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Michael T. Stehle
> Law Office of Michael Stehle, PC
> 737 West 5th Ave., Suite 206
> Anchorage, Alaska 99501

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

> Not Applicable.

> s/ Marion F. Walker
> Of Counsel